
**Neufeld Scheck & Brustin, LLP**

Tel: [212] 965-9081
Fax: [212] 965-9084

99 Hudson Street, 8th Floor
New York, New York 10013
nsbcivilrights.com

June 12, 2019

Hon. Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      <u>Re: 18-cv-4023, *Rosario v. City of New York*</u>

Dear Judge Schofield:

      Plaintiff writes to oppose Defendants' extraordinary request to brief one of their anticipated *Daubert* motions more than six weeks before the close of expert discovery. D.E. 117. Plaintiff also opposes their improper request, made in a footnote, that the Court either decide their proposed motion in *eight days* or extend the expert discovery schedule indefinitely while the motion is pending. *Id.* at 4 n.5. Defendants do not and cannot cite any reason why this Court should deviate from its scheduling order and grant them an unfair litigation advantage by extending their time to prepare a rebuttal export report and allowing them to tailor that report to the Court's *Daubert* rulings. And their proposal would require two separate rounds of *Daubert* briefing—a departure from the norm that Defendants have not come close to justifying. Plaintiff respectfully asks that the Court deny Defendants' motion and schedule briefing on all *Daubert* motions from both parties after the August 2, 2019 close of expert discovery.

      Defendants do not and cannot challenge the bulk of Dr. Jennifer Dysart's expert testimony. They concede Dr. Dysart's qualifications as an expert witness on eyewitness identification. *See* D.E. 117 at 2. Indeed, Dr. Dysart is one of the most accomplished experts in her field who has trained judges, lawyers, and police officers on the importance of following proper procedures to prevent prejudicial misidentifications. *See* Ex. 1 (Dr. Dysart's CV). Defendants also do not quibble with the *science* of eyewitness identification, which has been the routine subject of expert testimony in this circuit for over 20 years. *See, e.g.*, *United States v. Jordan*, 924 F. Supp. 443, 448–49 (W.D.N.Y. 1996) (holding eyewitness expert testimony was useful for helping jury evaluate the accuracy of eyewitness testimony). Nor can Defendants credibly claim that such testimony would not be relevant here, where Plaintiff spent more than 20 years wrongfully imprisoned due to two eyewitness identifications caused by police misconduct.

      Instead, as they admit, Defendants primarily seek to exclude Dr. Dysart from testifying on proper *police practices*, a subject that her report only briefly touches upon (but on which she is wholly qualified to opine). *See* D.E. 117 at 2 ("The thrust of defendants' issue with Dr. Dysart is not her qualifications as an eyewitness expert, but…as a police practices expert."). Based on the many documents she reviewed, including NYPD training materials and Defendants' own testimony, Dr. Dysart posits that the misconduct alleged would have violated the NYPD's policies and Defendants' training on identification procedures. Those opinions are well within

Dr. Dysart's expertise as an experienced instructor on proper identification procedures and should be admitted. But even if they were not, the vast majority of Dr. Dysart's expert opinions would be unaffected.[1] Defendants' motion, even if granted, would therefore not entirely preclude Dr. Dysart from testifying at trial and would not achieve Defendants' explicitly stated goal of saving the City of New York money by foregoing a rebuttal expert. *See* D.E. 117 at 4 n.5.

Defendants' proposal to brief one *Daubert* motion amid expert discovery while reserving their option of bringing additional *Daubert* motions afterward should be denied. Plaintiff respectfully requests that the Court schedule all *Daubert* briefing from both parties to take place after the close of expert discovery.

Respectfully,

/s/ Richard Sawyer

Richard Sawyer
*Attorney for Plaintiff*
*Richard Rosario*

**CC: All counsel (*Via ECF*)**

---

[1] The remainder of Defendants' kitchen-sink arguments distort specific opinions made in Dr. Dysart's densely argued, 27-page expert report. For example, Defendants wrongly suggest that Dr. Dysart applied her analysis on cross-race identification to both witnesses, whereas her report explicitly stated that it applied only to one. *Compare* D.E. 117 at 3 *with* Ex. 2 (Dysart report) at 13 ("cross-race identification is relevant to the selection of Mr. Rosario *by Mr. Davis*." (emphasis added)).