

| ZACHARY W. CARTER<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **BRACHAH GOYKADOSH**<br>*Assistant Corporation Counsel*<br>bgoykado@law.nyc.gov<br>Phone: (212) 356-3523<br>Fax: (212) 356-1148 |
|---|---|---|

July 16, 2019

**By ECF**
Honorable Lorna G. Schofield
United States District Court Judge
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

    Re:    *Richard Rosario v. City of New York, et al.*, 18 Civ. 4023 (LGS)

Your Honor:

    I am an Assistant Corporation Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and one of the attorneys assigned to the defense in the above-referenced matter. In that capacity, I write to respectfully request that the Court order plaintiff to submit to a neuropsychological examination by a physician of defendants' choice.

    **I.**    **Relevant Background and Procedural History.**

    As the Court is aware, this case where plaintiff computes his damages to be approximately $40 million. Plaintiff alleges that due to the conduct of New York City Police Department detectives—who plaintiff claims *inter alia* maliciously prosecuted him and denied him the right to a fair trial—he was incarcerated for twenty years. As part of his damages, plaintiff claims post-traumatic stress disorder and a traumatic brain injury causing brain damage or dysfunction in the frontal and temporal lobes resulting in minor neurocognitive disorder.

    This case is now in expert discovery. Defendants' expert reports are due on September 5, 2019. (*See* Docket Entry No. 122). As part of expert discovery, defendants requested that plaintiff submit to two examinations: one psychological examination and one neuropsychological examination. More specifically, on July 3, 2019, after the parties conferred, plaintiff agreed to submit to a three-hour psychological examination on July 29, 2019. On July 9, 2019, defendants requested that plaintiff also submit to a neuropsychological examination. The parties conferred by email and by phone regarding this issue. During that conferral, defendants disclosed the name of the physician performing the examination; the proposed time(s) for the

neuropsychological examination;[1] the location of the examination; as well as that the examination would be a neuropsychological examination.  *See* FED. R. CIV. P. 35(a)(2)(B).  Defendants also disclosed that the examination could potentially take up to 8-10 hours, but that this was a longer estimate being provided in an abundance of caution, and that a stronger estimate of timing would be provided closer to the date of the examination.  Defendants did not disclose the specific neuropsychological tests that their expert would conduct, as their expert had not yet chosen what testing she would perform and as she may choose to conduct specific testing at the examination based on the results of other testing.

Plaintiff refuses to submit to this neuropsychological examination.  Plaintiff's position is as follows:  "*Plaintiff will not consent to defendants' proposed neuropsychological examination because defendants have not provided him with the information required under Rule 35.  Specifically, defendants will not identify the tests the rebuttal expert intends to perform or agree to limit their testing to the issues identified by plaintiff's neuropsych expert.*"  Plaintiff has also indicated that he would like the opportunity to respond to this instant motion.  For he reasons described *infra*, plaintiff's position is untenable and should not be indulged by the Court.  The Court should order plaintiff to submit to a neuropsychological examination, in a case where he claims neuropsychological damages.

## II.  Legal Basis for Defendants' Position.

Under Rule 35 of the Federal Rules of Civil Procedure, the Court order may plaintiff, whose neuropsychological condition is in controversy, to submit an examination.  The order may be made "only on a motion for good cause and on notice to all parties and the person to be examined and must specify the time, place, manner, condition, and scope of examination, as well as the person […] who will perform it."  *See* FED. R. CIV. P. 35.  Here, plaintiff does not dispute that there is "good cause" for a neuropsychological examination.[2]  Instead, plaintiff's contention is limited to the scope of the neuropsychological examination, specifically, plaintiff refuses to submit to the neuropsychological examination because defendants have not provided him with a list of testing that the expert may conduct and because defendants will not limit their testing to the tests that plaintiff's doctors conducted.

While the scope of an examination cannot be unlimited, it is within the neuropsychologist's discretion.  For "the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations."  *Gade v. State Farm Mut. Auto. Ins. Co*., No.

---

[1] In an effort to find a mutually-convenient time for the examination, defendants proposed either July 30, 2019 or July 31, 2019.  Defendants proposed these dates because plaintiff would be in New York City for his psychological examination on July 29, 2019.  Furthermore, defendants proposed these dates because plaintiff's counsel had informed defense counsel that plaintiff would be traveling for the month of August.

[2] Plaintiff cannot dispute that there is good cause because where a plaintiff asserts a neuropsychological injury, his purported neuropsychological injury is clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.  *See Longobardi v. United States*, No. 3:12-CV-636 (CSH), 2014 U.S. Dist. LEXIS 146579, at *4-5 (D. Conn. Oct. 15, 2014), citing *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964).

14-cv-00048, 2015 U.S. Dist. LEXIS 193122, at *12 (D. Vt. Jan. 2, 2015), quoting *Abdulwali v. Washington Metro Area Transit Auth.*, 193 F.R.D. 10, 15 (D.D.C. 2000), quoting *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 202 (N.D. Tex. 1995). Therefore, "courts refrain from limit[ing] the manner in which an examination is conducted or the questions asked absent good cause for a protective order." *Gade*, 2015 U.S. Dist. LEXIS 193122, at *12, quoting *Tarte v. United State*s, 249 F.R.D. 856, 860 (S.D. Fla. 2008).

Indeed, as one Court in this Circuit has explained, the manner or conditions of an examination are determinations that "are best left, whenever possible, to the parties in consultation with their respective medical professionals rather than judges" particularly because "Rule 35 is a blunt instrument that requires courts, *ab initio*, to establish parameters that ideally would be capable of change in response to the examiner's findings during the course of the examination." *Johnson v. Fed. Bureau of Prisons*, No. 16-cv-919 (AMD) (CLP), 2017 U.S. Dist. LEXIS 186123, at *13 (E.D.N.Y. Nov. 9, 2017). Moreover, questioning and/or testing cannot always be determined in advance and cannot therefore be restricted. *Shannon v. Ellis*, No. 4:18-CV-00506 JAR, 2018 U.S. Dist. LEXIS 168817, at *7 (E.D. Mo. Oct. 1, 2018), citing 7 MOORE'S FEDERAL PRACTICE, § 35.05 ("Despite its discretion to set terms and conditions, it is unlikely that the court will impose conditions that would unduly restrict the physician's ability to obtain information needed to reach medical conclusions."). The Court should not "impose conditions" that are designed "simply to appease the plaintiff." 7 MOORE'S FEDERAL PRACTICE, § 35.05(4) (2019). The scope of an examination is dependent on the examination itself and cannot be unnecessarily restricted.

Plaintiff's first reason for refusing to consent to an IME—in a case where he has placed his own neuropsychological condition in dispute—is that defendants have failed to identify the tests that will be conducted at the examination. But as defense counsel has conveyed to plaintiff's counsel, the neuropsychological expert had not yet determined what testing she will conduct. Furthermore, upon information and belief, the range of neuropsychological testing can range from the parts of the brain being tested; for instance, the testing depends on whether the neuropsychologist is examining the left hemisphere to right hemisphere to visual and auditory short term and long term memory, sustained attention, focus, verbal skills, such as articulation and prosody and language structure as well as emotional skill, as well as emotional regulation / dysregulation skills, daily functioning, and executive functioning. Plaintiff's expert states that his neuropsychological damage results in episodic neurocognitive symptoms that affect his daily functioning and relationship interactions, difficulty regulating his thoughts, actions, and emotions, and has compromised his ability to work, conduct relationships, and complete goals and self-care tasks. Plaintiff's expert has defined his "impairment" as moderate to severe. Therefore, it is reasonable to explore the full gamut of plaintiff's neuropsychological functioning. Moreover, defendants cannot identify all the tests that their expert may conduct at this juncture. Indeed, the expert may choose to conduct certain tests based on plaintiff's performance and/or responses to other tests during the examination. Thus, defendants cannot identify each and every test that their expert may conduct.

Plaintiff's second reason for refusing to consent is that defendants will not limit themselves to the tests conducted by plaintiff's doctors. The defense experts should not be limited to conducting only the tests that plaintiff's experts may have conducted. As an initial

3

matter, both the reports provided by the doctors who examined plaintiff fail to specify the neuropsychological tests conducted. The report by a clinical psychologist merely states that the psychologist conducted a "battery of neurocognitive tests to assess a full range of brain functions;" a "clinical interview" and that plaintiff responded to a symptom's questionnaire. The report fails to delineate what this "battery" of testing consisted of. Plaintiff's expert report by a psychiatrist is similarly devoid of any specificity. Indeed, the report merely states that plaintiff's retained psychiatrist conducted a "number of neurological screenings," again, failing to list what this "screening" consisted of. After conferring, plaintiff confirmed that the tests conducted by his psychiatric expert were described[3] on two pages of his report and provided defendants with a list of the neuropsychological testing that his clinical psychologist conducted. Regardless, just because plaintiff's doctors strategically chose certain examinations, those strategic choices should not limit defendants' expert. The reason for this, as explained *supra*, is that defendants' expert may choose to conduct certain exams based on plaintiff's performance at the examination. Moreover, defendants' expert is entitled to explore alternate theories for plaintiff's alleged neurocognitive disorder as part of defendants' rebuttal report. Furthermore, defendants have provided their neuropsychologist expert with the list of tests conducted by plaintiff's clinical psychologist and she has confirmed that this testing is incomplete. Defendants are entitled to a full picture of plaintiff's neuropsychological condition as he has placed this condition at issue in this lawsuit. In sum, plaintiff's objections are without merit.

As a final matter, plaintiff does not appear to be contesting that 8 to 10 hours may be an appropriate length of time for a neuropsychological examination. He cannot do so. His own clinical psychologist engaged in an exam that was 8.5 hours. Therefore, an examination that may be within the same time length is reasonable. Regardless, to the extent plaintiff raises any frivolous arguments regarding the potential length of any examination, those arguments should be summarily rejected. This is because "[c]ourts generally do not limit the amount of time an examining physician will have to conduct the examination." *Gade*, 2015 U.S. Dist. LEXIS 193122, at *17 (citing cases). Thus, any objection to the length of the examination should not be entertained by this Court.

### III. Conclusion.

Accordingly, the Court should order plaintiff to submit to a neuropsychological examination. The Court should not indulge plaintiff's obstructionist efforts to stymie defendants' ability to present a defense and conduct expert discovery on plaintiff's neuropsychological condition, which he has placed at issue in this lawsuit.

Thank you for your consideration herein.

                                                Respectfully submitted,

                                                /s/

                                                Brachah Goykadosh
                                                *Assistant Corporation Counsel*
                                                Special Federal Litigation Division

---

[3] The report fails to specify the names of tests. The report describes the tasks the psychiatrist asked plaintiff to do.

4