USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                         :
RICHARD ROSARIO,                 :
                       Plaintiff,  :  18 Civ. 4023 (LGS)
                                         :
           -against-           :  **OPINION AND ORDER**
                                         :
THE CITY OF NEW YORK, ET AL., :
                       Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Richard Rosario seeks damages from the City of New York (the "City") and six New York City Police Department ("NYPD") officers for his alleged wrongful conviction and imprisonment for murder. In 2016, after nearly twenty years in prison, the New York state court vacated Plaintiff's conviction, and the Bronx County District Attorney ("DA's Office") dismissed his indictment. Plaintiff then filed an action in state court, which was removed to this Court, against the City and NYPD officers, alleging: (i) five federal causes of action, under 42 U.S.C. § 1983, for malicious prosecution, denial of a fair trial, failure to intervene and civil rights conspiracy against all individual Defendants, and supervisory liability against Defendant Sergeant Edward Monks and (ii) two state causes of action for malicious prosecution against all individual Defendants and respondeat superior liability against the City.[1] Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c). For the reasons below, the motion is granted in part and denied in part.

---

[1] In Plaintiff's opposition to this motion, Plaintiff voluntarily dismissed additional claims in Counts Six, Eight, Nine and Eleven of the Complaint, which respectively correspond to "his claims for *Monell*, state law intentional and negligent infliction of emotional distress, state law negligence, and his claims under the New York constitution." *See* Dkt. No. 78 at 27 n.8.

## I. BACKGROUND

The following facts are taken from the Complaint, documents integral to the Complaint and documents of which the Court may take judicial notice, including relevant decisions in the underlying state court proceeding. *See* Fed. R. Evid. 201(b)(2); *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 781 n.1 (2d Cir. 2019). The Complaint's allegations are accepted as true, and all reasonable inferences drawn in Plaintiff's favor, for purposes of this motion only. *See Duplan v. City of New York*, 888 F.3d 612, 617 (2d Cir. 2018).

### A. The Shooting and Investigation

Jorge Collazo was shot to death in the Bronx on June 19, 1996, around 1:00 p.m. As he was shot, the shooter exclaimed, "George, this is for you!" At the time, the victim was armed because he a feared a retaliatory killing by friends of a woman whom he had slapped. The shooter jumped into a getaway car driven by an accomplice.

Plaintiff did not know the victim, had never met him and was in Florida at the time of the shooting. When Plaintiff learned that he was wanted for the murder, he voluntarily returned from Florida to New York City, and was arrested on July 1, 1996. Plaintiff was convicted for the murder on December 17, 1998.

At least five NYPD officers, Defendant Detectives Charles Cruger, Joseph Fortunato, Richard Martinez, Irwin Silverman and Gary Whitaker, investigated the murder, under the supervision of Defendant Monks. The officers relied on statements of three eyewitnesses, Jose Diaz, Michael Sanchez and Robert Davis, to identify Plaintiff as the suspect.

Mr. Diaz was a hot dog vendor parked near the scene of the shooting. He was the only witness who saw both the shooter and accomplice. Prior to the shooting, Mr. Diaz sold coffee to both individuals. He then saw them accost the victim and heard gunshots from around the

corner. Defendants Martinez and Whitaker interviewed Mr. Diaz the day after the murder. When they steered Mr. Diaz to Plaintiff's photo in a photobook, Mr. Diaz identified Plaintiff as the shooter. Defendants Martinez and Whitaker conveyed this identification in both written and oral reports to prosecutors, but did not disclose the suggestive circumstances of the identification. At trial, Mr. Diaz was unable to identify Plaintiff in court as the shooter.

Mr. Sanchez was walking with the victim at the time of the shooting. Around thirty minutes later, Mr. Sanchez told another eyewitness, Nicole Torres, that he had not seen the shooter. He also told police that the victim had feared a retaliatory killing. Although Defendant Cruger was aware that Mr. Sanchez had not seen the shooter, Defendant Cruger showed Mr. Sanchez a photobook that included Plaintiff's mugshot. Defendant Cruger was familiar with Plaintiff from police encounters with Plaintiff's brother. He steered Mr. Sanchez to Plaintiff's photograph, and officers also told Mr. Sanchez that both Mr. Diaz and Mr. Davis had identified Plaintiff as the shooter, although Mr. Davis had not yet done so. Mr. Sanchez then identified Plaintiff. Defendant Cruger conveyed the identification to prosecutors in written and oral reports, and testified at a pretrial hearing that he had not directed Mr. Sanchez to any particular photo. Defense counsel received a report that Mr. Sanchez had not seen the shooter, but Mr. Sanchez's name was redacted in the report. At Plaintiff's trial, Mr. Sanchez identified Plaintiff in court as the shooter.

Mr. Davis was sweeping a nearby sidewalk at the time of the shooting. The next day, Mr. Davis reviewed a photobook, but was unable to identify anyone as the shooter or accomplice. After Mr. Sanchez identified Plaintiff to police, Defendants Martinez and Whitaker interviewed Mr. Davis again at his workplace and showed him only two or three photographs, including Plaintiff's. After Defendants Martinez and Whitaker steered Mr. Davis

3

to Plaintiff's photograph, Mr. Davis identified Plaintiff as the shooter. Both Defendants Martinez and Whitaker testified at a pretrial hearing that they did not direct Mr. Davis' attention to Plaintiff's photograph. Defendant Martinez filed a police report stating that Mr. Davis had selected the photograph at the precinct from approximately 200 photographs. In 2016, Mr. Davis told an investigative journalist that Defendants Martinez and Whitaker had showed him only two or three photographs, and that when he "pointed out the guy [Plaintiff] that was supposed to have done it," Defendants told Mr. Davis he was correct. At Plaintiff's trial, Mr. Davis identified Plaintiff in court as the shooter.

The police also interviewed Ms. Torres. Police showed Ms. Torres only Plaintiff's photograph, but she denied that Plaintiff was the shooter. Ms. Torres also told police that the shooter knew the victim because she had heard the shooter name him, "This is for you, George!" The police did not include either piece of information in their report regarding Ms. Torres' interview.

Defendant Monks pressured the other defendants to close the investigation quickly because the shooting had drawn significant public attention and the victim was the son of a New York City transit officer. As a result, the police did not investigate certain aspects of the case -- the officers did not identify the accomplice or his vehicle; ask Plaintiff about the accomplice; investigate the claim that the victim had been fearful of a retaliatory attack, except interview the woman the victim allegedly had slapped; and looked past the fact that Plaintiff had no connection to this woman.

Upon Plaintiff's arrest on July 1, 1996, he maintained his innocence to police. All individual defendants, except Defendant Monks, interrogated him. Plaintiff provided a detailed statement that he had been in Florida at the time of the murder, the names of thirteen alibi

4

witnesses and his Florida addresses. Plaintiff's wife testified that Plaintiff had been in Florida from May 1996 until July 1, 1996. Defendant Silverman also knew that Plaintiff had been in Florida because he interviewed Plaintiff there earlier in the year for an unrelated case.

On the date of the shooting, Plaintiff was about an hour from the closest airport in Orlando, Florida, and a direct flight from Orlando to New York City would have taken two and a half hours. Plaintiff was living with a couple who vividly recalled and testified that Plaintiff had been with them on the date of the shooting, as the woman had gone into labor the same day. Witnesses, including the newborn child's grandfather and neighbors, also interacted with Plaintiff on the day of and the morning after the shooting. Police failed to contact any of Plaintiff's alibi witnesses.

Before trial, the state court denied Plaintiff's motion to suppress the identifications by Mr. Sanchez, Mr. Davis and Mr. Diaz, which Plaintiff argued resulted from undue suggestion. At trial, the prosecution had no physical or forensic evidence that placed Plaintiff at the murder scene, no evidence that Plaintiff knew the victim or accomplice or that he had any motive to kill the victim. Only Mr. Sanchez and Mr. Davis, but not Mr. Diaz, identified Plaintiff as the shooter in court.

### B. Post-Conviction Proceedings

On November 27, 2001, Plaintiff lost the appeal of his conviction in the Appellate Division, First Department, and his application for further appeal to the New York Court of Appeals was denied. *See People v. Rosario*, 769 N.E.2d 367 (2002); *People v. Rosario*, 733 N.Y.S.2d 405 (1st Dep't 2001). In 2008, Plaintiff's habeas corpus petition in this district was denied, and the Second Circuit affirmed. *See Rosario v. Ercole*, 582 F. Supp. 2d 541 (S.D.N.Y. 2008), *aff'd*, 601 F.3d 118 (2d Cir. 2010).

Plaintiff also moved, under the New York Criminal Procedure Law § 440.10, to vacate his judgment. The state court denied one § 440.10 motion on April 4, 2005, which was based on the testimony of Plaintiff's seven alibi witnesses. The court also denied a second § 440.10 motion on March 19, 2015, based on Ms. Torres' eyewitness testimony, but granted Plaintiff leave to appeal the denial.

After Plaintiff filed the appeal, the DA's Office reinvestigated Plaintiff's case. It concluded Plaintiff had not received a fair trial. His conviction was vacated on March 23, 2016, and he was released after nearly twenty years in prison. The DA's Office further concluded on September 26, 2016, that it did not have sufficient evidence to retry and convict Plaintiff, and Plaintiff's indictment was dismissed on November 3, 2016. Plaintiff filed this action on January 29, 2018.

## II. STANDARD

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). The Court accepts as true all the non-moving party's well-pleaded factual allegations and draws all reasonable inferences in favor of this party. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011). To survive the motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim of relief plausible on its face. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

The Court may consider on a Rule 12(c) motion, "the complaint, the answer, any written documents attached to them," "any matter of which the court can take judicial notice for the factual background of the case," "any written instrument attached," "materials incorporated [by] reference, and documents that, although not incorporated by reference, are integral" to the

6

pleadings. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

### A. Section 1983 Claims

"Section 1983 itself creates no substantive rights," but "provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *accord Dames v. Pigott*, No. 18 Civ. 8352, 2019 WL 4014102, at *3 (S.D.N.Y. Aug. 26, 2019). To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the defendant was a state actor, *i.e.*, acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (internal quotation marks omitted). A plaintiff must also establish that each defendant was personally involved in the alleged constitutional violation. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *accord Pizarro v. Ponte*, No. 17 Civ. 4412, 2019 WL 568875, at *3 (S.D.N.Y. Feb. 11, 2019).

#### 1. Federal Malicious Prosecution (Count One)

"To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law." *Dettelis v. Sharbaugh,* 919 F.3d 161, 163 (2d Cir. 2019) (internal quotations omitted). While "federal law defines the elements of a § 1983 malicious prosecution claim," state tort law is drawn on as "a source of persuasive authority" for elaborating the federal standard. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). Under the Fourth Amendment, a malicious prosecution claim requires pleading the

7

"perversion of proper legal procedures implicating [the plaintiff's] personal liberty and privacy interests[.]" *Id*. The elements of a malicious prosecution claim, borrowed from New York law, are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis*, 919 F.3d at 163.

The Complaint sufficiently pleads malicious prosecution against all individual defendants except Defendant Monks, who is discussed below. The only element that Defendants dispute is that the state court proceeding ended favorably for Plaintiff. Citing *Lanning*, Defendants argue that vacatur of Plaintiff's conviction and dismissal of the indictment did not "affirmatively indicate[] his innocence" as the favorable termination prong requires under federal law. This argument misinterprets *Lanning* and the Complaint. In *Lanning*, the Second Circuit reaffirmed the longtime requirement that favorable termination under federal law requires that "the prosecution terminated in some manner indicating that the person was not guilty of the offense charged," based on the "merits" rather than "on any number of procedural or jurisdictional grounds." *Lanning*, 908 F.3d at 28. No single type of disposition is necessary or sufficient, but the termination must be "measured in objective terms by examining the totality of the circumstances." *Id*. Under this standard, the Second Circuit found the *Lanning* plaintiff's "vague allegations" of favorable termination insufficient, because the plaintiff's charges were dismissed posttrial "without [the plaintiff] specifying how or on what grounds;" the plaintiff agreed the dismissals were based at least in part on lack of jurisdiction; and a state court had explicitly stated that there was no "determination of the merits" upon dismissal. *See id.*

By contrast, the Complaint alleges that Plaintiff's conviction was vacated and his indictment was dismissed, after he was imprisoned for nearly twenty years, following a reinvestigation of the original charge. The DA's Office decided not to retry Plaintiff because it did not believe it could prove the case. The Complaint further alleges the significant weaknesses in the original case, including the suggestive identifications, lack of physical evidence and presence of many alibi witnesses. These allegations are sufficient to support the federal malicious prosecution claim.

### 2. Denial of Fair Trial (Count Two)

Plaintiff pleads two theories for his denial of a fair trial claim: Defendants (1) fabricated inculpatory evidence by coercing false identifications from Mr. Sanchez, Mr. Davis and Mr. Diaz, and (2) committed *Brady* violations by suppressing Ms. Torres' statements and information about the suggestive circumstances of the identifications. The first theory is adequately pleaded against Defendants Martinez, Cruger and Whitaker only, but not the remaining Defendants. The *Brady* claims as to Ms. Torres' statements are adequately pleaded against all Defendants except Defendant Monks, but the *Brady* claims as to suggestive circumstances survive only against Defendants Martinez, Cruger and Whitaker.

#### a. False Identification Claims

Officers may be held liable for violating a defendant's constitutional right to a fair trial by causing "the admission of testimony regarding the unreliable identification[s]." *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007); *accord Dufort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017). Although the intervening actions of a prosecutor or the trial court in admitting false identifications sometimes vitiates an officer's liability by undermining proximate cause, *see Wray,* 490 F.3d at 193-95, the officer may nevertheless be liable if he "misled [the

9

prosecutor or court] into thinking that the witness identifications had been legitimately procured," *Bermudez v. City of New York*, 790 F.3d 368, 374-75 (2d Cir. 2015). "[S]imply not inform[ing] these actors of the alleged problems with the evidence" constitutes misleading conduct. *Id.* The Complaint adequately pleads that Defendants Martinez, Cruger and Whitaker each took actions that misled prosecutors and the state trial court. They failed to disclose that they had steered eyewitnesses to the identifications, and denied in pretrial hearings that they had used suggestive techniques. Defendant Martinez falsely claimed in a police report that he had shown Mr. Davis 200 photographs, when he had shown Mr. Davis only two or three. The false identification claims therefore stand against Defendants Martinez, Cruger and Whitaker, but not the other defendants against whom there are no comparable allegations.

### b. *Brady* Claims

The Complaint also adequately pleads *Brady* violations (1) against all Defendants except Defendant Monks, based on the failure to disclose Ms. Torres' exculpatory statements, and (2) against Defendants Martinez, Cruger and Whitaker, based on suppression of the suggestive circumstances of the eyewitness identifications. The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that the prosecution must disclose information favorable to a criminal defendant prior to trial. *Accord Fernandez v. Capra*, 916 F.3d 215, 221 (2d Cir. 2019). "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* (internal quotation marks omitted). Prejudice requires that the suppressed evidence was material, defined not by whether "the defendant would more likely than not have received a different verdict with the evidence,

but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *People v. Ulett*, 129 N.E.3d 909, 33 N.Y.3d 512, 519 (2019) (*quoting Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "[P]olice satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors." *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir 1992); *accord Newson v City of New York*, No. 16 Civ. 6773, 2019 WL 3997466, at *9 (E.D.N.Y. Aug. 23, 2019).

Regarding Ms. Torres, the Complaint alleges that she told police she heard the shooter address the victim by name and denied Plaintiff was the shooter upon seeing his photograph. The police allegedly did not timely notify the defense of these statements. Although the Complaint does not specify which Defendants interviewed Ms. Torres, it pleads that all individual Defendants, except Defendant Monks, questioned witnesses or documented their interviews. The Complaint further pleads that suppression of Ms. Torres' statements, which directly contradicted eyewitness identifications, undermines confidence in the verdict, which depended solely on these eyewitnesses. Her statements not only provide direct evidence that Plaintiff was not the shooter, but they also reinforce this position because Plaintiff did not know the victim by name.

Defendants dispute that Ms. Torres' statements were withheld by pointing to decisions in the state criminal proceeding which found that "DD5 report[s]"[2] containing Ms. Torres' statements, albeit with her name redacted, were disclosed pre-trial. On a motion for judgment on the pleadings, a court may only take judicial notice of indisputably reliable documents. A court

---

[2] DD5 reports are internal NYPD documents "produced by police officers to record the information they have gathered in conjunction with an investigation." *Exoneration Initiative v. New York City Police Dep't*, 980 N.Y.S.2d 73, 75 (1st Dep't 2014).

11

may not take notice of "[f]acts adjudicated in a prior case [because they] do not meet [the] test of indisputability." *Int'l Star*, 146 F.3d 66, 70 (2d Cir. 1998) (a "court may take judicial notice of a document filed in another court *not for the truth of the matters asserted in the other litigation*, but rather to establish the fact of such litigation and related filings") (emphasis added); *accord Meola v. Asset Recovery Sols., LLC*, No. 17 Civ. 1017, 2018 WL 4660373, at *4 (E.D.N.Y. Sept. 28, 2018). No materials that may be properly considered on this motion undermine the allegations that Defendants failed to disclose Ms. Torres' statements or her identity as the source of the statements in a timely manner.

The *Brady* claim premised on suppression of the suggestive circumstances of the eyewitness identifications are sufficiently pleaded against Defendants Martinez, Cruger and Whitaker. By failing to report and inaccurately describing these circumstances in their reports, and by testifying that they did not employ suggestive techniques, these defendants withheld material information that could have impeached the critical eyewitness at trial. The claim, however, is dismissed as to the other defendants, because the Complaint does not allege how they contributed to this suppression.

### c. The Denial of Fair Trial Claims Are Not Procedurally Barred.

Defendants' arguments that the denial of fair trial claims are time barred and collaterally estopped are rejected. Regarding the statute of limitations, the Supreme Court recently decided in *McDonough v. Smith*, 139 S. Ct. 2149, 2154-55 (2019), that fabrication of evidence claims under § 1983, like false identification claims, arise not when the evidence is used against a defendant, but when the criminal proceedings have terminated in the defendant's favor. *McDonough*'s outcome coheres with the principle in *Heck v. Humphrey,* 512 U.S. 477 (1994), that "collateral attacks on criminal judgments through civil litigation" are not permitted.

*McDonough*, 139 S. Ct. at 2157 (*citing Heck*, 512 U.S. at 484). Therefore, civil claims "challeng[ing] the integrity of criminal prosecutions undertaken pursuant to legal process" generally do not accrue until termination of the criminal prosecution. *See McDonough*, 139 S. Ct. at 2156-57. Once the criminal prosecution terminates, the defendant in the criminal case must bring the § 1983 claim within three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989) (A § 1983 claim against New York officials has a three-year statute of limitations). Since Plaintiff's conviction was vacated in September 2016, his January 2018 Complaint is timely.

To the extent Defendants make the same statute of limitations argument to dismiss the *Brady* claims, it is rejected for the same reason. *See Heck,* 512 U.S. at 489-90; *accord Vazquez v. City of New York*, 2014 WL 4388497, at *9 (S.D.N.Y. Sept. 5, 2014) (under *Heck*, "Plaintiff's *Brady* claim did not accrue until August 23rd, 2007, when his conviction was reversed by the Appellate Division and he could bring suit").

Regarding collateral estoppel, evidentiary rulings in a later invalidated criminal proceeding do not have preclusive effect under New York law. The rulings in Plaintiff's criminal proceedings therefore do not preclude his claims now. In *Wilson v. City of New York,* 78 N.Y.S.3d 363, 161 A.D.3d 1212, 1214, 1216 (2d Dep't. 2018), the Second Department held that "malicious prosecution, malicious abuse of process, unduly suggestive identification procedures, and conspiracy" claims could proceed against the City notwithstanding earlier rulings in the state criminal proceeding that there was probable cause for the plaintiff's arrest and that identification procedures had not been unduly suggestive. The "criminal proceeding became a legal nullity after the [New York] Supreme Court granted the motion to dismiss the indictment against the plaintiff . . . . Since there is no longer a valid and final judgment in the criminal

13

proceeding, the hearing court's findings and determination after the *Wade* hearing cannot be given preclusive effect[.]" *Id.* at 1216.

### 3. Civil Rights Conspiracy (Count Four)

The Complaint fails to plead a § 1983 conspiracy. A civil rights conspiracy requires pleading "(1) an agreement between state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *accord Joaquin Ramirez v. New York City/Dep't of Corr.*, No. 17 Civ. 10171, 2019 WL 2343216, at *5 (S.D.N.Y. June 3, 2019). A Complaint must have "detailed fact pleading [to] withstand a motion to dismiss," because otherwise a civil rights conspiracy can be "so easily made and can precipitate such protracted proceedings with such disruption of government functions." *See Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981); *accord Davis v. Whillheim*, No. 17 Civ. 5793, 2019 WL 935214, at *14 (S.D.N.Y. Feb. 26, 2019). Where "assertions" of conspiracy "lack any factual foundation," they amount to "merely conclusory allegations" and are insufficient to state a claim. *See Jackson v. Cty. of Rockland*, 450 F. App'x 15, 18 (2d Cir. 2011) (summary order) (*citing Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006)); *accord Sulaymu-Bey v. City of New York*, No. 17 Civ. 3563, 2019 WL 1434597, at *9 (E.D.N.Y. Mar. 29, 2019).

The Complaint fails to allege an agreement among parties to act in concert to violate Plaintiff's rights. Plaintiff points to only a single conclusory allegation in the Complaint that Defendants worked "in concert with witness Michael Sanchez to fabricate a prosecution," but does not plead a factual foundation for this agreement. Plaintiff's speculation in his memorandum of law that Mr. Sanchez was motivated to conspire is insufficient, even if Plaintiff

14

included this allegation in the Complaint. The Complaint also pleads that Defendant Monks, who supervised the officers, pressured them to close the investigation quickly. Pressure, however, does not plausibly state a conspiratorial agreement among the defendants to violate Plaintiff's rights. The conspiracy claim is dismissed.

### 4. Supervisory Liability (Count Five)

The Complaint's claim of supervisory liability against Defendant Monks is also dismissed. Because § 1983 claims require the personal involvement of each defendant, a supervisor may be liable only if "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The allegations against Defendant Monks are conclusory and do not allege facts that, if true, would satisfy the above test. The Complaint alleges only that he supervised the other individual defendants and that he exerted pressure on them to close the investigation quickly because the case generated publicity and the victim was the son of a New York City transit officer. From this premise, the Complaint concludes that Defendant "Monks was aware of the other Defendants' investigatory misconduct, and either affirmatively condoned it or took no action to prevent it, address it, or report it." But the Complaint makes no allegations about what Defendant Monks knew or observed, with whom he interacted, how he supervised the individual

15

defendants or what specific actions he took in the investigation. The Complaint alleges no facts showing that Monks directly participated in any alleged constitutional violations or created a formal policy or custom. Nor does it plead facts that would evidence Defendant Monks' knowledge of, deliberate indifference to or gross negligence as to Defendants' alleged misconduct. The mere allegation that Defendant Monks applied pressure, without more, is insufficient.

### 5. Failure to Intervene (Count Three)

The failure to intervene claims survive against all individual Defendants, except Defendant Monks. "Law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). To state a claim for failure to intervene, a complaint must plead that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd,* 461 F. App'x 18 (2d Cir. 2012) (summary order); *accord Corso v. City of New York*, No. 17 Civ. 6096, 2018 WL 4538899, at *11 (S.D.N.Y. Sept. 20, 2018). An officer who fails to intervene necessarily cannot be the same officer who commits the violation.

Although the Complaint alleges that the same defendants who committed the violations also failed to intervene, these theories may be pleaded in the alternative. *See*, *e.g.*, *Guerrero v. City of New York,* No. 16 Civ. 516, 2017 WL 2271467, at *4 (S.D.N.Y. May 23, 2017) (collecting cases). The Complaint specifically alleges that all defendants, except Defendant Monks, interviewed Plaintiff or the key witnesses, testified in proceedings or prepared

16

investigative reports. It is therefore plausible that they all knew and had the opportunity to intervene upon observing any unconstitutional conduct.

### B. State Law Claims

#### 1. New York Malicious Prosecution (Count Seven)

The Complaint states a malicious prosecution claim under New York law. As discussed above, New York malicious prosecution requires pleading: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis*, 919 F.3d at 163. The favorable termination prong under New York law is more lenient than under federal law, and requires establishing only a "final termination of the criminal proceeding [that] is not inconsistent with the Plaintiff's innocence." *Lanning*, 908 F.3d at 25 (emphasis removed). Defendants challenge this claim only on the ground that, if all federal claims are dismissed, supplemental jurisdiction should not be exercised over the remaining state law claims. Because the federal claims survive, the state malicious prosecution claim remains.

#### 2. Respondeat Superior Against New York City (Count Ten)

New York law provides that a municipality may have "vicarious liability under the doctrine of respondent superior" for torts committed by its employees. *Joseph v. City of Buffalo*, 83 N.Y.2d 141, 144 (1994). A "municipality may be held vicariously liable for the conduct of a member of its police department if the officer was engaged in the performance of police business." *Maloney v. Rodriguez*, 68 N.Y.S.3d 792, 156 A.D.3d 1404, 1405 (4th Dep't. 2017). The City argues against respondeat superior liability solely on the ground that no tort claims are maintainable against the officer Defendants. *See Morales v. City of New York*, 59 F. Supp. 3d

573, 583 (S.D.N.Y. 2014) (under New York law, where "Plaintiff has not demonstrated any basis for liability on the part of any of the City's agents or employees, [the] respondeat superior claim also fails."). Because the Complaint sufficiently pleads a state law malicious prosecution tort, the corresponding respondeat superior claim against the City stands.[3]

## IV.    CONCLUSION

For the foregoing reasons, the motion is DENIED in part and GRANTED in part. The motion is granted as to all claims against Defendant Monks, who is dismissed. The motion is granted as to Counts Four (civil rights conspiracy) and Five (supervisory liability), which are dismissed. Plaintiff has voluntarily dismissed Counts Six (*Monell* claim), Eight (intentional infliction of emotional distress), Nine (negligence) and Eleven (New York constitutional claims).

The motion is denied as to the following surviving claims:

- Count One, federal malicious prosecution, against Defendants Whitaker, Silverman, Cruger, Fortunato and Martinez;

- Count Two, denial of fair trial, against Defendants Whitaker, Silverman, Cruger, Fortunato and Martinez. To the extent that Count Two is premised on false identification, these claims remain only against Defendants Martinez, Cruger and Whitaker;

- Count Three, failure to intervene, against Defendants Whitaker, Silverman, Cruger, Fortunato and Martinez;

---

[3] There can be no respondeat superior liability with regard to the § 1983 claims. *See Naumovski v. Norris*, 2019 WL 3770193, at *11 n.83 (2d Cir. Aug. 12, 2019) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 707 (1978)).

18

- Count Seven, New York malicious prosecution, against Defendants Whitaker, Silverman, Cruger, Fortunato and Martinez; and

- Count Ten, respondeat superior, against Defendant City of New York, for the state tort of malicious prosecution.

The Clerk of Court is respectfully directed to close the motion at Docket Number 61.

Dated: September 16, 2019
       New York, NY

                                      LORNA G. SCHOFIELD
                                      UNITED STATES DISTRICT JUDGE