UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

RICHARD ROSARIO,

                                   Plaintiff,

                 -against-                  No. 18 Civ. 4023 (LGS)

THE CITY OF NEW YORK; GARY WHITAKER; IRWIN SILVERMAN; CHARLES CRUGER; JOSEPH FORTUNATO, RICHARD MARTINEZ, EDWARD J. MONKS,

                                   Defendants.

-------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**JAMES E. JOHNSON**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    Brachah Goykadosh
        *Senior Counsel*
        Special Federal Litigation Division
        (212) 356-3523

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ v

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

      I.      PLAINTIFF FAILS TO ESTABLISH PERSONAL INVOLVEMENT.... 4

            A. Plaintiff Fails to Establish the Personal Involvement of Detective Fortunato In Any Constitutional Violation.................................................................. 5

            B. Plaintiff Fails to Establish the Personal Involvement of Detective Silverman In Any Constitutional Violation.................................................................. 5

            C. Plaintiff Fails to Establish the Personal Involvement of Detective Cruger In Any Constitutional Violation.................................................................. 6

            D. Plaintiff Fails to Establish the Personal Involvement of Defendants in Any *Brady* Violation Related to Torres.............................................................. 7

      II.     PLAINTIFF FAILS TO ESTABLISH ANY CONSTITUTIONAL VIOLATION........................................................................ 7

            A. Plaintiff's Claims for Malicious Prosecution Must Be Dismissed. ..................................................................... 7

                1. Probable Cause Existed for Plaintiff's Prosecution. ....................................................... 8

                    a. Probable Cause Exists Because Davis, Sanchez, and Diaz Positively Identified Plaintiff from a Multi-Photo Viewing. ................................................. 9

                    b. Probable Cause Exists Because Plaintiff Was Selected from a Line-Up.......................................................... 12

   c. Probable Cause Existed Because Plaintiff Was Indicted by a Grand Jury. ....................................................... 13

  2. Plaintiff's Criminal Matter Did Not Terminate in His Favor. ........................................................ 14

  3. Defendants Did Not Initiate the Prosecution against Plaintiff. .................................................. 16

  4. Defendants Did Not Act with Malice. ................................... 17

  5. Plaintiff's Guilty Plea for Robbery Bars His Malicious Prosecution Claim Because He Suffered No Deprivation of Liberty................................................................. 17

B. Plaintiff's Federal Claim for Denial of Fair Trial Must Be Dismissed. ................................................................. 18

  1. The Exculpatory and Inculpatory Evidence Plaintiff Complains of Cannot Form the Basis for a Denial of Right to Fair Trial Claim. ................................................................ 19

   a. Withholding Exculpatory Material: Any Claim Based on a *Brady* Violations Fails. ....................................... 19

   b. Fabricating Inculpatory Evidence.   Any Claim Premised on False Identifications Fails..................... 22

  2. Plaintiff Does Not Demonstrate He Suffered a Deprivation of Liberty......................................... 25

  3. Plaintiff Cannot Demonstrate a Causal Link Between Any "Fabricated Evidence" and Deprivation of Liberty.................................. 27

C. Plaintiff's Federal Claim for Failure to Intervene Must Be Dismissed. ................................................................. 28

D. Plaintiff's State Law Claim for *Respondeat Superior* Must Be Dismissed. ................................................... 29

III.   DEFENDANTS ARE SHIELDED FROM ANY LIABILITY BY THE
       DOCTRINE OF QUALIFIED IMMUNITY. ........................................... 29

       A.  Qualified Immunity Shields Defendants from
       Plaintiff's Claim for Malicious Prosecution. ............................................ 31

       B.  Qualified Immunity Shields Defendants from
       Plaintiff's Claim for Denial of Right to Fair Trial. ................................. 34

CONCLUSION .............................................................................................................. 35

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarado v. City of New York.,*
  453 F. App'x 56 (2d Cir. 2011) ............................................................12

*Anderson v. Branen,*
  17 F.3d 552 (2d Cir. 1994)................................................................28

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................1, 3, 4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................4

*Azeez v. City of New York,*
  No. 18-cv -3075, 2019 U.S. App. LEXIS 32345 (2d Cir. Oct. 29, 2019) ................8

*Bellamy v. City of New York,*
  914 F.3d 727 (2d Cir. 2019)......................................................19, 20, 24

*Bermudez v. City of New York,*
  790 F.3d 368 (2d Cir. 2015)..............................................................13

*Bornstein v. Monmouth Cty. Sheriff's Office,*
  658 Fed. App'x 663 (3d Cir. 2016)........................................................6

*Brady v. Maryland,*
  373 U.S. (1963) ................................................................... *passim*

*Brisco v. Ercole,*
  565 F.3d 80 (2d Cir. 2009)............................................................32, 33

*Burgess v. DeJoseph,*
  725 F. App'x 36 (2d Cir. 2018) ...........................................................9

*Butz v. Economou,*
  438 U.S. 478 (1978)......................................................................31

*Cameron v. City of New York,*
  598 F.3d 50 (2d Cir. 2010)................................................................8

*Caravalho v. City of New York,*
  No. 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 104120 (S.D.N.Y. July
  29, 2016), *aff'd Caravalho v. City of New York*, 732 F. App'x 18 (2d Cir.
  2018) ..................................................................................26

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998)...................................................................................14

*Coakley v. Jaffe*,
    49 F. Supp. 2d 615 (S.D.N.Y. 1999)....................................................................15

*Coggins v. Buonora*,
    776 F.3d 108 (2d Cir. 2015).................................................................................29

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995).....................................................................................4

*Coollick v. Hughes*,
    699 F.3d 211 (2d Cir. 2012).................................................................................31

*Curley v. Vill. of Suffern*,
    268 F.3d 65 (2d Cir. 2001)..................................................................................6, 9

*DaCosta v. Tranchina*,
    783 F. App'x 54 (2d Cir. 2019) ...........................................................................31

*Delamota v. City of New York*,
    683 F. App'x 65 (2d Cir. 2017) ...........................................................................23

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)......................................................................................30, 32

*Dufort v. City of New York*,
    874 F.3d 338 (2d Cir. 2017)......................................................................9, 24, 25

*Fappiano v. City of New York*,
    640 F. App'x 115 (2d Cir. 2016), *cert. denied Fappiano v. City of New York*,
    137 S. Ct. 341 (2016) ..................................................................................... *passim*

*Fappiano v. City of New York*,
    No. 07-cv-2476 (SLT) (SMG), 2014 U.S. Dist. LEXIS 179584 (E.D.N.Y.
    Dec. 31, 2014)......................................................................................................21

*Farrell v. Burke*,
    449 F.3d 470 (2d Cir. 2006)...................................................................................4

*Fountain v. Karim*,
    838 F.3d 129 (2d Cir. 2016).................................................................................29

*Galgano v. Cty. of Putnam*,
    No. 16 Civ. 3572 (KMK), 2018 U.S. Dist. LEXIS 169725 (S.D.N.Y. Sep. 28,
    2018) .....................................................................................................................34

*Ganek v. Leibowitz*,
    874 F.3d 73 (2d Cir. 2017)..........................................................................26, 34

*Garnett v. Undercover Officer C0039*,
    838 F.3d 265 (2d Cir. 2016)........................................................................18, 26

*Garry v. Greiner*,
    No. 01 Civ. 0848 (AKH), 2003 U.S. Dist. LEXIS 10449 (S.D.N.Y. June 13,
    2003) ........................................................................................................22

*Gaston v. City of New York*,
    851 F. Supp. 2d 780 (S.D.N.Y. 2012)...........................................................9

*Grace v. City of New York*,
    No. 16-cv-4244 (RRM) (LB), 2018 U.S. Dist. LEXIS 43913 (E.D.N.Y. Mar.
    16, 2018) ...................................................................................................11

*Harlen Assocs. v. Inc. Vill. of Mineola*,
    273 F.3d 494 (2d Cir. 2001)........................................................................4

*Hewitt v. City of New York*,
    No. 09 Civ. 214 (RJD) (MDG), 2012 U.S. Dist. LEXIS 141067 (E.D.N.Y.
    Sept. 28, 2012), *aff'd*, 544 F. App'x 24 (2d Cir. 2013) ........................22

*Hoyos v. City of New York*,
    999 F. Supp. 2d 375 (E.D.N.Y. 2013) (Gershon, J.), *aff'd Hoyos v. City of
    New York*, 650 F. App'x 801 (2d Cir. 2016)............................................25, 27

*Jenkins v. City of New York*,
    478 F.3d 76 (2d Cir. 2007)..........................................................................6

*Jocks v. Tavernier*,
    316 F.3d 128 (2d Cir. 2003)........................................................................5

*Johnson v. City of New York*,
    940 F.Supp. 631 (S.D.N.Y. 1996) ..............................................................30

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018) ...............................................................................30

*Komatsu v. City of New York*,
    No. 18 Civ. 3698 (LGS), 2019 U.S. Dist. LEXIS 169527 (S.D.N.Y. Sep. 30,
    2019) ........................................................................................................4

*Landers v. City of New York*,
    No. 16-cv-5176 (PKC) (CLP), 2019 U.S. Dist. LEXIS 49352 (E.D.N.Y. Mar.
    22, 2019) ...................................................................................................15

*Lanning v. City of Glens Falls,*
　　908 F.3d 19 (2d Cir. 2018)............................................................................14

*Lennon v. Miller,*
　　66 F.3d 416 (2d Cir. 1995)...........................................................................31

*Loria v. Gorman,*
　　306 F.3d 1271 (2d Cir. 2002)..........................................................................5

*Luna v. City of New York,*
　　No. 18 Civ. 4636 (PAE), 2019 U.S. Dist. LEXIS 135376 (S.D.N.Y. Aug. 9,
　　2019) .........................................................................................................15

*Manganiello v. City of New York,*
　　612 F.3d 149 (2d Cir. 2010)..........................................................................16

*Mara v. Rilling,*
　　921 F.3d 48 (2d Cir. 2019)..................................................................... *passim*

*Marrero v. City of New York.,*
　　No. 12 Civ. 6486 (CM), 2013 U.S. Dist. LEXIS 165925 (S.D.N.Y. Nov. 19,
　　2013) .........................................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
　　475 U.S. 574 (1986).......................................................................................4

*McCaffrey v. City of New York,*
　　No. 11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815 (S.D.N.Y. Feb. 7,
　　2013) .........................................................................................................17

*McGrier v. City of New York,*
　　No. 16 Civ. 5667 (VEC), 2019 U.S. Dist. LEXIS 38688 (S.D.N.Y. Mar. 11,
　　2019) ...............................................................................................8, 12, 16

*Miner v. Clinton County, New York,*
　　541 F.3d 464 (2d Cir. 2008)............................................................................3

*Morse v. Spitzer,*
　　No. 07-cv-4793 (CBA) (RML), 2012 U.S. Dist. LEXIS 110241 (E.D.N.Y.
　　Aug. 2, 2012) .............................................................................................27

*Mullenix v. Luna,*
　　136 S. Ct. 305 (2015) (per curiam) ...............................................................29

*Murphy v. Lynn,*
　　118 F.3d 938 (2d Cir. 1997)..........................................................................15

*Muschette v. Gionfriddo*,
  910 F.3d 65 (2d Cir. 2018)..................................................................................31

*Norwood v. Mason*,
  524 Fed. App'x 762 (2d Cir. 2013)........................................................................9

*O'Neill v. Krzeminski*,
  839 F.2d 9 (2d Cir. 1988)...................................................................................28

*Outlaw v. City of Hartford*,
  884 F.3d 351 (2d Cir. 2018)...............................................................................30

*Panetta v. Crowley*,
  460 F.3d 388 (2d Cir. 2006).................................................................................8

*Perkins v. New York City*,
  No. 17-cv-423 (RRM) (PK), 2019 U.S. Dist. LEXIS 167217 (E.D.N.Y. Sep.
  27, 2019) ..........................................................................................................23

*Poventud v. City of New York*,
  750 F.3d 121 (2d Cir. 2014) (*en banc*) ..........................................................19, 20

*R.G. Group, Inc. v. Horn & Hardart Co.*,
  751 F.2d 69 (2d Cir. 1984)...................................................................................4

*Raspardo v. Carlone*,
  770 F.3d 97 (2d Cir. 2014)...................................................................................4

*Redd v. N.Y. Div. of Parole*,
  678 F.3d 166 (2d Cir. 2012).................................................................................3

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017)............................................................................1, 21

*Ribot v. City of New York*,
  No. 14 Civ. 190 (RWS), 2017 U.S. Dist. LEXIS 15691 (S.D.N.Y. Feb. 3,
  2017) ................................................................................................................13

*Rohman v. N.Y.C. Transit Auth.*,
  215 F.3d 208 (2d Cir. 2000)............................................................................8, 16

*Rojas v. Roman Catholic Diocese of Rochester*,
  660 F.3d 98 (2d Cir. 2011)...................................................................................3

*Rosario v. City of New York*,
  No. 18 Civ. 4023 (LGS), 2019 U.S. Dist. LEXIS 159771 (S.D.N.Y. Sep. 16,
  2019) .................................................................................................... *passim*

ix

*Rounseville v. Zahl*,
    13 F.3d 625 (2d Cir. 1994)............................................................................9

*Rowell v. City of New York*,
    No. 16 Civ. 6598 (AJN), 2019 U.S. Dist. LEXIS 10116 (S.D.N.Y. Jan. 22,
    2019) .............................................................................................................26

*Salazar v. City of New York*,
    No. 15 Civ. 1989 (KBF), 2016 U.S. Dist. LEXIS 89774 (S.D.N.Y. July 11,
    2016) .............................................................................................................22

*Saucier v. Katz*,
    533 U.S. 194 (2001)....................................................................................28

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2003)...........................................................................8

*Singer v. Fulton Cty. Sheriff*,
    63 F.3d 110 (2d Cir. 1995)..........................................................................15

*Stansbury v. Wertman*,
    721 F.3d 84 (2d Cir. 2013)..............................................................10, 11, 33

*Terebesi v. Torreso*,
    764 F.3d 217 (2d Cir. 2014)........................................................................28

*United States v. Brown*,
    784 F. App'x 1 (2d Cir. 2019) ....................................................................23

*United States v. Concepcion*,
    983 F.2d 369 (2d Cir. 1992)........................................................................23

*United States v. Payne*,
    63 F.3d 1200 (2d Cir. 1995)........................................................................20

*United States v. Rivera*,
    No. 19 Cr. 131 (PAE), 2019 U.S. Dist. LEXIS 208862 (S.D.N.Y. Dec. 3,
    2019) .......................................................................................................23, 32

*United States v. Thai*,
    29 F.3d 785 (2d Cir. 1994)......................................................................23, 24

*Valentin v. City of Rochester*,
    783 F. App'x 97 (2d Cir. 2019) ..................................................................19

*Velez v. City of New York*,
    730 F.3d 128 (2013)....................................................................................29

*W. World Ins. Co. v. Stack Oil, Inc.*,
  922 F.2d 118 (2d Cir. 1990) .............................................................................4

*Wachtler v. Cnty. of Herkimer*,
  35 F.3d 77 (2d Cir. 1994) ................................................................................31

*Waddlington v. City of New York*,
  971 F. Supp. 2d 286 (E.D.N.Y. 2013) .............................................................22

*Walker v. Sankhi*,
  494 F. App'x 140 (2d Cir. 2012) .....................................................................17

*Warren v. Pataki*,
  823 F.3d 125 (2d Cir. 2016) ..............................................................................4

*White v. Pauly*,
  137 S. Ct. 548 (2017) .......................................................................................29

*Woodley v. City of New York*,
  No. 09-cv-5709 (BMC), 2010 U.S. Dist. LEXIS 120390 (E.D.N.Y. Nov. 10,
  2010) ...........................................................................................................13, 14

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007)........................................................................23, 24

*Wright v. Smith*,
  21 F.3d 496 (2d Cir. 1994).................................................................................4

*Zahrey v. Coffey*,
  221 F.3d 342 (2d Cir. 2000)..............................................................................27

*Zalaski v. City of Hartford*,
  723 F.3d 382 (2d Cir. 2013)..............................................................................31

*Zellner v. Summerlin*,
  494 F.3d 344 (2d Cir. 2007)................................................................................9

## PRELIMINARY STATEMENT

Plaintiff's conviction for murder was vacated on ineffective assistance of counsel grounds and the indictment against him was dismissed on interests of justice grounds after 20 years.[1] Now, plaintiff accuses defendants Detectives Charles Cruger, Joseph Fortunato, Richard Martinez, Irwin Silverman, and Gary Whitaker pursuant to 42 U.S.C. § 1983 of violating his constitutional rights by maliciously prosecuting him, denying him the right to a fair trial, and failing to intervene; and sues City of New York under the doctrine of *respondeat superior*.[2] The Court must grant summary judgment in defendants' favor on all of plaintiff's remaining claims.

## STATEMENT OF FACTS[3]

George Collazo was murdered on June 19, 1996, when walking in the Bronx with his friend Michael Sanchez.  (Defs. 56.1, ¶1.) Immediately prior to the shooting, Collazo and a Hispanic male argued for about a minute, while Sanchez stared at the Hispanic male's face from about one to two arms lengths away.  (Defs. 56.1, ¶¶2, 3,4,5,6,7.)  After the argument, the Hispanic male returned, shot Collazo, and ran.  (Defs. 56.1, ¶¶7, 20, 26.) Robert Davis, a street porter, observed the shooting; Nicole Torres saw the shooting but not the shooter's face; she heard the shooter say "George, this is for you;" and Jose Diaz, a food vendor, observed a Hispanic male earlier in the day.  (Defs. 56.1, ¶¶9, 10, 11, 12, 13, 14, 17, 18, 19, 21).  After the murder, a police investigation began.  (Defs. 56.1, ¶¶27, 28).

---

[1] Whether or not plaintiff is innocent is not material to defendants' motion for summary judgment, and therefore any factual dispute on that matter would not affect the outcome of the motion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").  Moreover, evidence of plaintiff's purported innocence is not dispositive of any of his claims and it merely provides an "important backdrop" for his "claims *at trial*[,]"  not at summary judgment.  *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) (*dicta*, emphasis added).

[2] The Court has already dismissed the claims against Sergeant Edward Monks.  *Rosario v. City of New York*, No. 18 Civ. 4023 (LGS), 2019 U.S. Dist. LEXIS 159771 (S.D.N.Y. Sep. 16, 2019).

[3] The material, undisputed facts are included in defendants' 56.1 Statement.  ECF No. 168.

As part of that investigation, Sanchez, Davis, Diaz, and Torres were interviewed and shown photographs, in an effort to identify the shooter.  (Defs. 56.1, ¶¶28-30, 32, 33, 36, 87.) Sanchez was shown photographs by Detective Cruger. (Defs. 56.1, ¶37.)  The photographs were first in photo books and then in loose stacks of photos, which were large in size and had no markings or tagging.  (Defs. 56.1, ¶¶36-53.)  Sanchez selected plaintiff's photo as the shooter because he believed, based on his observations, that plaintiff was the shooter.  (Defs. 56.1, ¶¶56, 57.)  After this first positive identification, Detective Richard Martinez and Detective Gary Whitaker went to Davis's workplace.  (Defs. 56.1, ¶¶60, 62, 63).  He viewed 2 to 3 photos— none of which were marked in any way to attract his attention; none of which stood out—and selected plaintiff as the shooter; he was "very sure" about his selection.  (Defs. 56.1, ¶¶61, 67-81, 84.)  Diaz also viewed photo books, from which he selected plaintiff's photo.  (Defs. 56.1, ¶¶91-94.)  Torres could not identify the shooter.  (Defs. 56.1, ¶¶87-88.)  She was interviewed by non-parties officers and at a later date visited at her workplace.  (Defs. 56.1, ¶¶85-88, 95).  She did not identify plaintiff, or anyone, as the shooter. (Defs. 56.1, ¶¶85-88, 95-101.)

An investigation wanted card was issued.  (Defs. 56.1, ¶104.)  On July 1, 1996, plaintiff called Detective Cruger and surrendered. (Defs. 56.1, ¶¶105, 106.)  He was transported by Cruger to the 43rd Precinct, where he gave his alibi statement to Detective Silverman.  (Defs. 56.1, ¶¶105-110.)  He was also interviewed by Detective Whitaker and Martinez. (Defs. 56.1, ¶111.)  Plaintiff denied killing Collazo.  (Defs. 56.1, ¶¶113-114.)

Subsequently, Sanchez and Davis separately selected plaintiff from a line-up, where he was represented by an attorney.  (Defs. 56.1, ¶¶116, 121.)  The assistant district attorney, Jeanne Petrauskas, interviewed Davis and Sanchez and prepared them to testify in the grand jury and trial.  (Defs. 56.1, ¶¶122-125.)  When conversing with these eyewitnesses, Petrauskas focused on

their certainty about the shooter's identity and their recollection of the shooter.  (Defs. 56.1, ¶¶123-128.)  She believed they were confident in their identifications.  (Defs. 56.1, ¶128.)  Davis informed Petrauskas that he viewed 2 to 3 photo books.  (Defs. 56.1, ¶129.)  A grand jury indicted plaintiff.  (Defs. 56.1, ¶122.)

In advance of the criminal trial, Cruger, Martinez, and Silverman testified at a *Wade* hearing about photo identifications.  (Defs. 56.1, ¶¶136-140.)  Plaintiff was criminally tried by a jury of his peers.  At trial, plaintiff's principal defense was his alibi and that he was misidentified.  (Defs. 56.1, ¶¶144, 147.)  Plaintiff's criminal defense attorney introduced testimony regarding a photo identification procedure with Davis, who testified that he viewed 75 photos his workplace.  (Defs. 56.1, ¶¶141-143.)  Plaintiff was convicted.  Plaintiff was incarcerated for 20 years until his conviction was vacated on ineffective assistance of counsel grounds and the indictment dismissed on interests of justice grounds.  (Defs. 56.1, ¶¶158, 159.)

## **LEGAL STANDARD**

Because there are "no genuine dispute[s] as to any material fact," defendants are "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  A fact is "material" when the fact "might affect the outcome of the suit under governing law."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists when there is sufficient "evidence on which a jury could reasonably find for [plaintiff.]"  *Liberty Lobby*, 477 U.S. at 251-2. When defendants meet their initial burden by making an evidentiary showing suggesting that no material factual issues remain, the burden then shifts to plaintiff to produce evidence raising a material question of fact.  *Miner v. Clinton County, New York*, 541 F.3d 464, 471 (2d Cir. 2008).

Plaintiff must set forth "concrete particulars showing that a trial is needed" on those facts. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984). He "must do more than simply show [….] some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must "identify probative evidence on the record from which a reasonable factfinder could find in [his] favor." *Liberty Lobby*, 477 U.S. at 256-57. Conclusory, *ipse dixit* assertions by plaintiff are not sufficient to defeat a summary judgment motion. *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). A "scintilla of evidence" cannot defeat this motion. *Liberty Lobby*, 477 U.S. at 252.

## **ARGUMENT**

### **I.    Plaintiff Fails to Establish Personal Involvement.**

"A defendant can be liable under § 1983 'only if that individual is personally involved in the alleged deprivation.'" *Komatsu v. City of New York*, No. 18 Civ. 3698 (LGS), 2019 U.S. Dist. LEXIS 169527, at *8 (S.D.N.Y. Sep. 30, 2019), quoting *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Indeed, the personal involvement of defendants in a constitutional violation is a prerequisite to an award of damages under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (collecting cases). *See also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). Section 1983 requires "individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014), citing *Iqbal*, 556 U.S. 662. In § 1983 cases, the plaintiff must prove that

4

the defendant's actions are the proximate cause of plaintiff's injuries.   *See, e.g., Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002).

### A.   *Plaintiff Fails to Establish the Personal Involvement of Detective Fortunato In Any Constitutional Violation.*

There is no evidence that Fortunato was personally involved in any of the complained-of actions or proximately caused any injury to plaintiff.[4]   Nothing in the record points to any actions by Fortunato to form the basis for personalized liability.   Plaintiff does not even remember Fortunato.   (Defs. 56.1, ¶¶162, 163.) Indeed, at most, Fortunato may have been present when Miranda warnings were administered to plaintiff.   (Defs. 56.1, ¶111.)   But that surely is not the basis for a constitutional violation, as even the failure to read a suspect his Miranda warnings is not alone actionable under § 1983.   *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003).   Thus, as there is no evidence of Fortunato's involvement in any violation, he must be dismissed.

### B.   *Plaintiff Fails to Establish the Personal Involvement of Detective Silverman In Any Constitutional Violation.*

There is no evidence that Detective Silverman was personally involved in any of the remaining claims against him in this action: malicious prosecution; denial of right to fair trial (exclusive of false identifications); and/or failure to intervene.   *Rosario*, 2019 U.S. Dist. LEXIS 159771, at *25-26.   Although Silverman interviewed Davis at the precinct, there is no evidence demonstrating that he engaged in any alleged misconduct when doing so.   Furthermore, Silverman documented plaintiff's alibi.   (Defs. 56.1, ¶¶109, 110.)   Indeed, there is no evidence demonstrating that Silverman obtained any identifications—false or otherwise—from witnesses[5]

---

[4] Plaintiff appears to concede Fortunato's lack of personal involvement as he volunteered to dismiss Fortunato from this action.   (ECF No. 161 at 5.)

[5] And any claim for false identifications proceeds against Cruger, Martinez, and Whitaker only.

or obtained any exculpatory statements from any witness that he failed to disclose to the prosecutor.  To the extent that the gravamen of plaintiff's complaints against Silverman are based on a "failure to investigate" plaintiff's alibi statement, that argument is without merit.  An officer has no requirement to "explore and eliminate every theoretically plausible claim of innocence[.]"  *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).  Thus, as Silverman has no personal involvement in any purported constitutional violation, he must be dismissed.

### C. *Plaintiff Fails to Establish the Personal Involvement of Detective Cruger In Any Constitutional Violation.*

Detective Cruger must also be dismissed from this action for lack of personal involvement in any constitutional violation.[6]  While Cruger was involved in the murder investigation, that does not translate into violating plaintiff's rights.  Indeed, even inferring all facts in plaintiff's favor, Cruger's only involvement was showing Sanchez photo books and loose stacks of photos; picking up plaintiff from him home; and testifying at a pre-trial hearing.  (Defs. 56.1, ¶¶37, 60, 61, 106-108, 137-139, 164).  But as explained *infra* at Point II.B.2, showing a witness a substantial amount of loose stacks of photos is not suggestive and does not establish a constitutional violation.  Furthermore, picking up a suspect who is voluntarily surrendering from his home is not a constitutional violation.   (Defs. 56.1, ¶106.)  Even if Cruger did not record plaintiff's alibi that does not provide the premise for a violation of constitutional

---

[6] Defendants served a contention interrogatory on plaintiff seeking the legal basis for any claims against Cruger. (*See* Def. 56.1, ¶164, Ex. U.) While plaintiff served a 3.5 page response, that response fails to provide any citation to the record; contains inaccuracies, and misunderstands the law applicable to this action.  For instance, plaintiff speculates that "Sanchez may have been shown two to three individual photographs."  But there is absolutely nothing in the record to substantiate that: indeed, Sanchez's own deposition testimony is to the contrary.  Moreover, plaintiff's emphasis on a purported failure to follow "training and proper NYPD procedure" fails to provide a basis for a constitutional violation; indeed, a violation of the Patrol Guide is not equivalent to or even evidence of a violation of plaintiff's constitutional rights.  *See e.g. Bornstein v. Monmouth Cty. Sheriff's Office*, 658 Fed. App'x 663, 668 (3d Cir. 2016).  Furthermore, even if there was an imperfect procedures in obtaining an identification, that does not necessarily obviate probable cause.  *Jenkins v. City of New York*, 478 F.3d 76, 92 (2d Cir. 2007).  Finally, Cruger's memory at a *Wade* hearing does not somehow form the basis for a constitutional violation.  Nor does failing to record plaintiff's alibi, which was recorded by Silverman.  In sum, plaintiff's interrogatory response demonstrates only that he fails to understand the concept of personal involvement.

dimension; plaintiff's alibi was recorded by Silverman—who Cruger passed plaintiff off to at the precinct.  (Defs., 56.1, ¶¶108-110.)  Finally, any testimony at a pre-trial hearing by Cruger that conflicts with what Sanchez and Davis have testified to at their depositions or is not reflected in police paperwork again that does not form the basis for a constitutional claim.  As explained *infra* at Point II.B.3, there is no causal link between any such testimony/paperwork and plaintiff's constitutional rights.  Thus, Cruger must be dismissed as a defendant.

### D.  *Plaintiff Fails to Establish the Personal Involvement of Defendants in Any* **Brady** *Violation Related to Torres.*

Finally, any claim against any defendant premised on their intentionally withholding an exculpatory statement by Torres must also fail for lack of personal involvement.  (Defs. 56.1, ¶17.)  There is no evidence that she reported this statement to any defendant.  Indeed, Torres was interviewed by St. Clair and Duffy.[7]  (Defs., 56.1, ¶85-86.)    If she reported the exculpatory statement, then the proper individuals to sue would be St. Clair and Duffy.  Indeed, Torres told St. Clair at the precinct everything she observed. (Defs., 56.1, ¶86.)   When Torres was interviewed at her workplace, that interview was limited to her knowledge of the relationship between Lymari Leon and Collazo.  (Defs., 56.1, ¶102.)  Therefore, any *Brady* claim based on an exculpatory statement by Torres must be dismissed for lack of personal involvement.

## II.   Plaintiff Fails to Establish Any Constitutional Violation.

### A.  *Plaintiff's Claims for Malicious Prosecution Must Be Dismissed.*

Plaintiff brings claims for malicious prosecution under federal law and New York state law against all defendants.[8]  Summary judgment must be granted on both claims.

---

[7] While the DD5 states that Torres was transported to the 43rd precinct with St. Clair, Duffy, and Whitaker, there is no evidence that Whitaker interviewed Torres.  Indeed, the DD5 is written from the first person point-of-view, indicating that St. Clair conducted the interview.

[8] Plaintiff's federal claim is Count One of the Complaint; his state law claim is Count Seven of the Complaint.

"To prevail on a § 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.'" *Azeez v. City of New York*, No. 18-cv -3075, 2019 U.S. App. LEXIS 32345, at *5-6 (2d Cir. Oct. 29, 2019) (summary order), quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). "New York law requires a plaintiff to demonstrate that '(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor.'" *Azeez*, 2019 U.S. App. LEXIS 32345, at *6, quoting *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (internal quotation marks omitted). *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Furthermore, to allege a claim under federal law, a plaintiff must also demonstrate that there was "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (emphasis omitted). *Fappiano v. City of New York,* 640 F. App'x 115 (2d Cir. 2016) (summary order), *cert. denied Fappiano v. City of New York*, 137 S. Ct. 341 (2016). "[P]robable cause is a complete defense to a claim of malicious prosecution [.]" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

    1.  *Probable Cause Existed for Plaintiff's Prosecution.*[9]

There are numerous grounds for probable cause, which remains "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

---

[9] At least one District Court in the Southern District has rejected the notion that the "failure to follow best practices procedure vitiates probable cause" and has emphasized that "the law is to the contrary." *McGrier*, 2019 U.S. Dist. LEXIS 38688, at *20-21 (citations omitted).  Furthermore, "whether probable cause exists is a question of law for the Court, not an expert witness."  *Id.*

"[P]robable cause […] is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quotations omitted); *cf. Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). "Ultimately, whether probable cause exists depends on the totality of the circumstances of each case, and is not susceptible to precise definition or quantification into percentages." *Dufort*, 874 F.3d at 348. Once there is probable cause, a police officer is not required to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001), quoting *Ricciuti*, 124 F.3d at 128. Here, the many reasons for probable cause—independently and collectively—provide a defense to plaintiff's claims.

### a. Probable Cause Exists Because Davis, Sanchez, and Diaz Positively Identified Plaintiff from a Multi-Photo Viewing.

First, probable cause exists because three witnesses identified plaintiff from a multi-photo viewings without suggestion or coercion. A "positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest." *Burgess v. DeJoseph*, 725 F. App'x 36, 39 (2d Cir. 2018) (summary order), quoting *Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008). Indeed, "New York courts routinely hold that a victim's photo identification of a person provides the police with probable cause to arrest that person, even where the identification may not be 100% reliable." *Norwood v. Mason*, 524 Fed. App'x 762 (2d Cir. 2013) (summary order) (citation omitted). *See also Gaston v. City of New York*, 851 F. Supp. 2d 780, 790-91 (S.D.N.Y. 2012) (collecting cases).

"[E]ven if the facts [underlying a photo identification] could admit a finding of suggestive procedures—which they cannot—that conclusion does not mean that [the] identification[s] cannot inform probable cause determinations." *Mara v. Rilling*, 921 F.3d 48,

74-75 (2d Cir. 2019).   Indeed, "the due process limits […] for the use of identifications tainted by suggestive procedures 'concern[] the admissibility of identifications at criminal trials, *not whether an identification can support probable cause to arrest*' a suspect."   *Id.*, quoting *Stansbury v. Wertman*, 721 F.3d 84, 91 n.7 (2d Cir. 2013) (emphasis added).   The critical question for "determining whether an identification can support probable cause, is not whether the identification procedure was suggestive, but whether it was so defective that, as a matter of law, probable cause could not reasonably be based on it."   *Id.*, (quotations omitted).   Even when the identification procedures are "highly improper," when there is no suggestion, coercion, or evidence that a witness had motive to lie, the identification is not so flawed that it could not contribute to probable cause.   *Stansbury,* 721 F.3d at 91, n.7.[10]   Moreover, even though "one-photo displays" are considered "undoubtedly suggestive," a single photo viewing is not so defective that it cannot contribute to probable cause.   *Mara*, 921 F.3d at 75.

Here, there was probable cause based on Sanchez, Diaz, and Davis's separate selections of plaintiff's photo.   Indeed, Detective Whitaker believed that probable cause existed based on these photo identifications. (Defs. 56.1, ¶115.)   Starting with Sanchez, he describes a multi-photo viewing identification process.   (Defs. 56.1, ¶¶36-60.)   Sanchez was given several loose stacks of photos, each of which was a couple of inches high, with more than fifteen photos in each stack.   (Defs. 56.1, ¶¶42, 43.)   None of the photos that Sanchez viewed had any marks or tags; indeed, none of the photos (including plaintiff's) particularly stood out.   (Defs. 56.1, ¶¶45-48.)   No detective improperly coerced or suggested to Sanchez that he should choose a particular photo, including plaintiff's, nor did Sanchez feel compelled to do so.   (Defs. 56.1, ¶¶49-53.)   Sanchez chose plaintiff's photo for a simple reason:   plaintiff was the person who he believed

---

[10] *See* Point  II..B.1.b for what constitutes a fair photo identification process pursuant to the Fourteenth Amendment.

that he saw argue with and shoot Collazo.  (Defs. 56.1, ¶¶54-57.)  Upon selecting plaintiff's photo, Sanchez confirmed that plaintiff shot Collazo.  (Defs. 56.1, ¶58.)  Because the identification procedure, as it relates to Sanchez, was not "suggestive" and was certainly not "so defective," the positive photo identification by Sanchez establishes probable cause.

The probable cause inquiry can end there.  But even assuming *arguendo* that more was necessary, the second positive identification by Davis provides another, independent basis for probable cause.  As a preliminary matter, putting aside Davis's 1998 trial testimony and inferring in plaintiff's favor that Davis was only shown 2 to 3 photographs at his workplace, that fact does not vitiate probable cause.  Here, the 2 to 3—*i.e.* multiple—photos displayed to Davis are a "far cry from the single-photo displays that *Stansbury* held suggestive" but "nevertheless, not so defective that they could not support probable cause."  *Mara*, 921 F.3d at 75.  To put it another way, while a single-photo display may be suggestive, it does not vitiate probable cause.  Indeed, a show-up identification, "where [a] witness is shown only one suspect, and which is inherently suggestive, can be used to support probable cause."  *Grace v. City of New York*, No. 16-cv-4244 (RRM) (LB), 2018 U.S. Dist. LEXIS 43913, at *6 (E.D.N.Y. Mar. 16, 2018), citing *Brisco v. Ercole*, 565 F.3d 80, 91 (2d Cir. 2009).

Moreover, even if 2 to 3 photo were laid down in front of Davis, there was no coercion or suggestiveness by defendants.  (Defs. 56.1, ¶67.)  Indeed, Davis did not feel pressured; he did not feel like anyone was suggesting he choose a certain photo; he was not coerced; he was not told to pick a photo at all from the photos he viewed; and his attention was not directed to any particular photo.  (Defs. 56.1, ¶¶68-75.)  Nor was Davis's attention drawn to any particular photo, because of markings or any other reason.   (Defs. 56.1, ¶¶72-75.)  It is undisputed that Davis selected plaintiff's photo because he believed plaintiff was the shooter, and not because of any actions by

the police.    (Defs. 56.1, ¶¶78-80.)   So certain was Davis in his selection, that he signed a contemporaneous statement saying that he was "very positive" that plaintiff shot Collazo. (Defs. 56.1, ¶84.)  Finally, as Davis was an "innocent bystander with no apparent motive to falsify, his identification carried a peculiar likelihood of accuracy."  *McGrier*, 2019 U.S. Dist. LEXIS 38688, at *17-18, quoting *Panetta*, 460 F.3d at 395, quoting *Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir. 2002).  Thus, the positive identification by Davis establishes probable cause.

Again, the probable cause inquiry can stop here.   But additional undisputed facts provided a further basis for establishing probable cause.   Plaintiff cannot dispute that Diaz viewed a photo book and selected plaintiff's photo.   (Defs. 56.1, ¶¶94, 95, 98, 99.)  Moreover, plaintiff cannot dispute that defendants did not suggest to Diaz that he had to pick a certain photo, that he look more closely at one page, or that there were any markings indicating that plaintiff's photo should be selected.  (Defs. 56.1, ¶¶91-94.) The third positive identification of plaintiff from a multi-photo viewing provides a third basis for probable cause.

b.   Probable Cause Exists Because Plaintiff Was Selected from a Line-Up.

Probable cause also exists because plaintiff was selected by both Sanchez and Diaz from a line-up.   When an eyewitness can identify a suspect from a line-up, that information is sufficient to "warrant a person of reasonable caution in the belief" the offense was committed by the arrestee.  *See Alvarado v. City of New York.*, 453 F. App'x 56, 58 (2d Cir. 2011) (summary order), citing *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987).

Here, plaintiff was selected by both Sanchez and Davis from a line-up, at which he was represented by an attorney and to which his criminal defense attorney had no objections.  (Defs. 56.1, ¶¶116-121.)  Neither eyewitness was told who to pick out of the line-up; nor that they had to pick somebody out of the line-up; nor to look more closely at one person in the lineup over

another; nor were they shown the photo of plaintiff that they had previously identified.  (Defs. 56.1, ¶¶119, 120.)  Indeed, there is no allegation that the line-up was defective.  (*See* Compl., Ex. A.)  "There is no doubt that this identification out of a line-up […]  bolstered the [defendants'] probable cause determination."  *Ribot v. City of New York*, No. 14 Civ. 190 (RWS), 2017 U.S. Dist. LEXIS 15691, at *10 (S.D.N.Y. Feb. 3, 2017).  Thus, Davis and Sanchez's selection of plaintiff from a line-up bolsters probable cause—a complete defense—even further.

> c.   Probable Cause Existed Because Plaintiff Was Indicted by a Grand Jury.

As "a grand jury indicted plaintiff on the relevant criminal charge, New York state law creates a presumption of probable cause that can only be overcome by evidence that the indictment was the product of perjury, suppression of evidence by the police, or other conduct undertaken in bad faith."  *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted).  The "burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the Grand Jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially."  *Woodley v. City of New York*,  No. 09-cv-5709 (BMC), 2010 U.S. Dist. LEXIS 120390, at *23 (E.D.N.Y. Nov. 10, 2010), quoting *Rothstein v. Carriere*, 373 F.3d 275, 283-84 (2d Cir. 2004)  (holding that the plaintiff was required "to rebut that presumption by proving fraud, perjury, suppression of evidence or other misconduct *in the grand jury*." (emphasis added).  But even when a plaintiff argues that the indictment was the product of police misconduct and that the district attorney had been misled about overly suggestive photo identification procedures, when the district attorney interviews the eyewitnesses who testified at the grand jury, she has probable cause to prosecute.  *Bermudez*, 790 F.3d at 377

Here, there is no evidence whatsoever about what occurred in the grand jury. If "the record is devoid of what happened during the Grand Jury proceedings, i.e., who testified or the nature of their testimony," then the "plaintiff is unable to identify specific facts in the record that would enable a reasonable jury to conclude that the indictments were procured in bad faith." *Woodley*, 2010 U.S. Dist. LEXIS 120390, at *24. As the record lacks any evidence related to the grand jury proceedings, there is a presumption of probable cause.

Even if there were evidence about some misconduct in the grand jury, that would not save plaintiff's claim. This is because Petrauskas interviewed Davis and Sanchez and made her own independent determination as how to proceed with the case. (Defs. 56.1, ¶¶123-134.) Petrauskas's assessment was that the two eyewitnesses were confident in their identifications of plaintiff based on their observation of the crime. (Defs. 56.1, ¶¶126, 127, 128.) Moreover, there is no evidence that Petrauskas was misled about any photo identification procedure related to Davis, as Davis himself always told Petrauskas that he was shown two to three photo books. (Defs. 56.1, ¶129.) Thus, as the interviews of the eyewitnesses provided Petrauskas with probable cause to prosecute plaintiff and as the presumption of probable cause that the indictment created cannot be rebutted, plaintiff's malicious prosecution claim fails.

2. *Plaintiff's Criminal Matter Did Not Terminate in His Favor.* [11]

Plaintiff's malicious prosecution claim must also be dismissed because there is no evidence that the criminal matter terminated in his favor. A plaintiff asserting a malicious prosecution claim must "show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir.

---

[11] Defendants previously moved pursuant to Rule 12(c) on the "favorable termination" element of plaintiff's malicious prosecution claim. The Court held that the allegations in the Complaint were "sufficient to support the federal malicious prosecution claim." *Rosario.*, 2019 U.S. Dist. LEXIS 159771, at *12. But plaintiff's claims cannot withstand defendants' Rule 56 motion, to which a different legal standard applies. *Compare* FED. R. CIV. P. 12 and FED. R. CIV. P. 56. *See also e.g. Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

2018).  "As a general rule," dismissal in the interests of justice "cannot constitute a favorable termination."  *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 621 (S.D.N.Y. 1999), citing *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992).  The exception is when the "circumstances surrounding the dismissal are indicative of innocence."  *Id.* (citation omitted).   Indeed, dismissals in the interests of justice are "generally considered not to be dispositions in favor of the accused."   *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Moreover, if the dismissal was the result of a "compromise to which the accused agreed" "it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Murphy*, 118 F.3d at 949.  *Murphy* is still considered good law in this Circuit.  *See Luna v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 U.S. Dist. LEXIS 135376, at *34 (S.D.N.Y. Aug. 9, 2019) (collecting cases); *Landers v. City of New York*, No. 16-cv-5176 (PKC) (CLP), 2019 U.S. Dist. LEXIS 49352, at *11-12 (E.D.N.Y. Mar. 22, 2019) (collecting cases).

Here, the dismissal of the indictment on "interests of justice" grounds and the vacation of the conviction on "ineffective assistance of counsel" grounds, leave the question of plaintiff's guilt or innocence unanswered.  To be clear, the conviction was vacated not because of any evidence indicating plaintiff's innocence; but because his criminal counsel was on ineffective; moreover, the conviction was vacated as a result of a compromise. (Defs. 56.1, ¶¶158, 159.) The indictment against plaintiff was dismissed on interests of justice grounds and not because of any evidence indicting his innocence.  (Defs. 56.1, ¶158.)  No court—from 1996 to the present— has determined that plaintiff is actually innocent.  (Defs. 56.1, ¶160.)  Because dismissals in the interests of justice are not generally considered to be dispositions in favor of the accused and because the circumstances surrounding the dismissal are not indicative of innocence, plaintiff fails to meet the "favorable termination" prong.

15

3. *Defendants Did Not Initiate the Prosecution against Plaintiff.*

"Initiation in this context is a term of art." *Rohman v. N.Y.C. Transit Auth*., 215 F.3d 208, 217 (2d Cir. 2000). To initiate a prosecution, "a defendant must do more than report the crime or give testimony." *Manganiello*, 612 F.3d at 163. "He must 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Id.*, quoting *Rohman.*, 215 F.3d at 217. The plaintiff must show that the defendant "distorted the process by which plaintiff was brought to trial, such as by creating false information and forwarding it to prosecutors or by withholding relevant and material information from prosecutors." *McGrier v. City of New York*, No. 16 Civ. 5667 (VEC), 2019 U.S. Dist. LEXIS 38688, at *11 (S.D.N.Y. Mar. 11, 2019) (citations and quotations omitted). The mere reporting of a crime is insufficient to establish the initiation of the proceedings. *Rohman*, 215 F.3d at 217.

Here, beyond testifying at various pretrial proceedings and at trial, there is no evidence that defendants played an active role in the prosecution, gave advice or encouragement, or importuned the authorities to act. First, there is absolutely no evidence that Fortunato played any role—active or otherwise—in the prosecution. *See* Point I.A. Therefore this claim must be dismissed against him. Second, there is no evidence that Silverman did anything more than give testimony about plaintiff's alibi statement at a pre-trial proceeding: to be clear, there is no evidence that he withheld evidence, exculpatory or otherwise, from the prosecutor or misled the prosecutor. As his testimony alone fails to form the basis for a malicious prosecution claim, it must be dismissed against him as well. As to Cruger, Martinez, and Fortunato, there is no evidence that they distorted the process by which plaintiff was brought to trial. As described *infra* at Point II.B., the photo array procedures described by the eyewitness are not suggestive

16

and would not necessarily be excluded by the trial prosecutor.  (Defs. 56.1, ¶130.)  Thus, plaintiff

cannot meet this prong and his malicious prosecution claims must be dismissed.

          4.   *Defendants Did Not Act with Malice.*

Finally, there is no evidence that defendant acted with malice.  To the extent plaintiff

argues that any testimony by defendants is perjured and evidence of malice, that argument fails.

"[A]lthough a police officer's actions in suppressing exculpatory evidence and influencing

witnesses may be relevant to a fair trial claim, [the Supreme Court]  is clear that that police

officer is still entitled to absolute immunity for claims based on his actual testimony.  *McCaffrey*

*v. City of New York*, No. 11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815, at *12-13 (S.D.N.Y.

Feb. 7, 2013), citing *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-07 (2012).  This rule cannot be

"circumvented" "by using evidence of the witness' testimony to support any other § 1983 claim

concerning the initiation or maintenance of a prosecution." *Id.*  Therefore, any testimony that

defendants gave cannot be exploited as a basis for a § 1983 liability.

          5.   *Plaintiff's Guilty Plea for Robbery Bars His Malicious Prosecution Claim*
              *Because He Suffered No Deprivation of Liberty.*

It is well established that a "plaintiff does not have a claim for false arrest or malicious

prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in

custody on other charges, because there is no deprivation of liberty interests." *Marrero v. City of*

*New York.*, No. 12 Civ. 6486 (CM) (AJP), 2013 U.S. Dist. LEXIS 165925, at *9 (S.D.N.Y. Nov.

19, 2013) (citing cases).  *See Walker v. Sankhi*, 494 F. App'x 140, 142-43 (2d Cir. 2012)

("[Plaintiff] could not have suffered a deprivation of liberty as a result of [one] burglary charge

because, throughout the pendency of that charge, he was already in custody, and remained in

custody, for a completely separate burglary charge, of which he was ultimately convicted.")

Here, plaintiff cannot pursue a malicious prosecution claim because he was concurrently

17

identified as a suspect, selected from a line-up, arrested, indicted, and prosecuted for robbing a bread truck driver at gunpoint, to which he pled guilty. (Defs. 56.1, ¶¶149-153.)  Indeed, plaintiff does not question the validity of his guilty plea for robbery or any actions related to his prosecution for robbery. (*See generally* Compl., Ex. A.) Thus, there is no deprivation of liberty because regardless of the murder prosecution, plaintiff was also arrested, prosecuted, and incarcerated for robbery. As there is no deprivation, his malicious prosecution claim fails.

### B.  *Plaintiff's Federal Claim for Denial of Fair Trial Must Be Dismissed.*

Plaintiff brings a two-pronged claim for denial of right to fair trial.[12]  First, he brings a broadly-construed denial of fair trial claim is against all defendants; this claim is premised on withholding exculpatory information, i.e. *Brady* material [13]  Second, he brings a claim premised on "false identifications," i.e., fabricating inculpatory evidence by using suggestive identification procedures; this claim remains only against defendants Cruger, Martinez, and Whitaker.  *See Rosario*, 2019 U.S. Dist. LEXIS 159771, at *25.

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights."  *Fappiano*, 640 F. App'x at 118 (2d Cir. 2016), citing *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010).  To establish a claim for denial of right to fair trial based on fabrication of evidence or false information, a plaintiff must prove that an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016), citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

---

[12] Plaintiff's claim for denial of fair trial is Count Two of the Complaint.

[13] Plaintiff has withdrawn any claim premised on failure to conduct a constitutionally adequate investigation.  *See* ECF No. 78 at 27, note 8.

1. *The Exculpatory and Inculpatory Evidence Plaintiff Complains of Cannot Form the Basis for a Denial of Right to Fair Trial Claim.*

    a.  Withholding Exculpatory Material: Any Claim Based on a *Brady* Violations Fails. [14]

"When police officers withhold exculpatory or impeaching evidence […], they may be held liable under § 1983 for violating the disclosure requirements." *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019), citing *Brady v. Maryland*, 373 U.S. (1963). "This theory of liability is essentially a civil claim seeking damages for a *Brady* violation." *Fappiano*, 640 F. App'x at 118, citing *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015); *Poventud v. City of New York*, 750 F.3d 121, 132 n.12 (2d Cir. 2014) (*en banc*). But if plaintiff fails to provide sufficient evidence, rising above speculation, to support a reasonable inference of wrongful conduct, his *Brady* claim must fail. *Fappiano*, 640 F. App'x at 118. The Second Circuit has "never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages[.]" *Id.* Indeed, the Second Circuit has repeatedly emphasized (without concluding) that to succeed on a Brady claim, a plaintiff must show intentional misconduct by law enforcement. *Valentin v. City of Rochester*, 783 F. App'x 97, 99 (2d Cir. 2019) (summary order); *Bellamy*, 914 F.3d at 751, n.23.

"A classic Brady violation contains three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Fappiano*, 640 F. App'x at 118, quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (internal quotation omitted). "To establish prejudice, a plaintiff must

---

[14] In the interests of brevity and efficiency, and because it speaks to a Fourteenth Amendment due process right, defendants address plaintiff's *Brady* claim under the denial of right to fair trial portion of this motion.. To the extent plaintiff may argue that any *Brady* violation forms the basis for his malicious prosecution claim, the arguments herein equally apply to why plaintiff's malicious prosecution claim can and should be dismissed.

show the [nondisclosed] evidence was material; i.e., whether the 'evidentiary suppression undermines confidence in the outcome of the trial.'" *Fappiano*, 640 F. App'x at 118, quoting *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001) (internal quotations omitted). "Stated differently, to show prejudice the claimant 'must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Bellamy*, 914 F.3d at 751 (quotation omitted). "For example, a § 1983 plaintiff proceeding on a *Brady* theory can succeed on his claim if, had the withheld information been disclosed prior to trial, 'he would have been acquitted based on reasonable doubt or convicted on a lesser charge.'" *Bellamy*, 914 F.3d at 751, quoting *Poventud*, 750 F.3d at 134-35.  Materiality depends on what would have been proven absent the violation." *Poventud*, 750 F.3d at 134.

Any argument that defendants withheld exculpatory evidence fails.  First, as detailed *supra* at Point I.D, there is no evidence that any defendant to this action obtained the statement "George, this is for you" from Torres.  Second, there is no evidence that any defendant intentionally withheld this statement.  Moreover, Torres's name was in the possession of plaintiff's criminal defense attorney, who could have contacted her.  (Defs. 56.1, ¶131).  For that reason, evidence concerning any statement by Torres cannot considered to be "suppressed" as plaintiff's attorney "knew or should have known, of essential facts permitting him to take advantage of [that] evidence."  *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995).

Furthermore, plaintiff cannot demonstrate to a reasonable probability that introducing the statement by Torres would have changed the outcome of the criminal proceedings.  The thrust of plaintiff's defense was premised a misidentification: *i.e.* "I did not commit the murder because I was not there." (Defs. 56.1, ¶155.)  Indeed, plaintiff's theory of the case was that someone else must have murdered Collazo and that he was misidentified as the shooter.   (Defs. 56.1, ¶159).

When convicting plaintiff, the jury rejected his alibi defense.  Thus, a statement by Torres—who did not even see the shooter's face and was standing approximately 10 feet away during the shooting, which happened quickly—does not provide the basis for arguing that had this statement been disclosed, plaintiff would have been acquitted based on a reasonable doubt or convicted on a lesser charge.  (Defs. 56.1, ¶¶10, 18, 23-25).[15]  Arguing that use of the victim's name—which the shooter could have very well learned in during the prior argument—is material or would have established that plaintiff was in Florida is nothing but tortured speculation.

Similarly, any *Brady* violation premised on failing to document photo identifications procedures against Cruger, Martinez, and Whitaker fails.[16]  Like in *Fappiano*,[17] even inferring that defendants showed Sanchez, Davis, Torres, or Leon photos but did not disclose those procedures in DD5s, defendants still prevail on this motion. This is because plaintiff cannot adduce "sufficient evidence from which to infer that [the defendant] intentionally withheld this evidence[.]"  *Fappiano*, 640 F. App'x at 119.[18]  Indeed, there is no evidence in the record that defendants intentionally withheld any photo identification procedure with Torres or Leon.

Moreover, even if plaintiff somehow adduces evidence of intent, he cannot establish that the evidence suppressed—i.e. photo identification procedures—undermines confidence in the

---

[15] Indeed, Davis heard the shooter say words which could also indicate that the shooter had a prior experience with Collazo. (*See* Def. 56.1, ¶18).  The words "you're not going do this no more" can suggest a prior knowledge or relationship, the same way that using the victim's name would.  The jury at plaintiff's criminal trial heard testimony from Davis about this statement and still chose to reject plaintiff's alibi defense.

[16] The false identification claim only proceeds against these three individuals.

[17] The District Court in *Fappiano*, reasoned that a photo showing where a victim observed that one the men in the photos merely resembled her attacker, had "no exculpatory value for the defense." *Fappiano v. City of New York*, No. 07-cv-2476 (SLT) (SMG), 2014 U.S. Dist. LEXIS 179584, at *45 (E.D.N.Y. Dec. 31, 2014).

[18] Any argument that plaintiff may bring on opposition about the applicability of *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) fails, as *Restivo* concerned expert testimony from a police practices expert at trial to help a jury determine whether deviating from a standard was negligent or intentional/reckless (thereby rising to a constitutional violaiton).  *Restivo* does not stand for the proposition that deviating from the New York City Police Department Patrol Guide establishes intentional or reckless conduct.

outcome of his criminal trial.    To be clear, plaintiff suffered no prejudice as a result of any suppressed photo identification procedures.    This is because there is no evidence or even inference that had any information about photo identification procedures been disclosed, plaintiff would have been acquitted or convicted on a lesser charge.

Moreover, there is no causal link between any paperwork failing to include identification procedures and the violation of plaintiff's rights.    This is to say, even if the paperwork is not perfect, that does not rise to the level of a constitutional violation.    Indeed, the "mere recitation of inconsistencies in certain officers' testimonies, without more, does not establish liability under section 1983 for providing false information to prosecutors."    *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013).    *See also Hewitt v. City of New York*, No. 09 Civ. 214 (RJD) (MDG), 2012 U.S. Dist. LEXIS 141067, (E.D.N.Y. Sept. 28, 2012), *aff'd*, 544 F. App'x 24 (2d Cir. 2013).    *See also Salazar v. City of New York*, No. 15 Civ. 1989 (KBF), 2016 U.S. Dist. LEXIS 89774, at *15 (S.D.N.Y. July 11, 2016) ("the Court notes that [] inconsistencies in an officer's arrest documentation do not—without more—rise to the level of fabrication.").

> b.  Fabricating Inculpatory Evidence.    Any Claim Premised on False
>     Identifications Fails.

"As part of due process under the 14th Amendment, a [criminal] defendant has the right to be free from photographic identification procedures that are 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Garry v. Greiner*, No. 01 Civ. 0848 (AKH), 2003 U.S. Dist. LEXIS 10449, at *9 (S.D.N.Y. June 13, 2003), quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968).    The "fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents.    If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photograph [...] or the use of suggestive

comments, the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit[.]" *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (quotations and citations omitted); *United States v. Brown*, 784 F. App'x 1, 3 (2d Cir. 2019).   When a photo identification procedure contains more than 50 photos, most of which are mug shots, of individuals in similar appearance, that procedure is not suggestive. *See United States v. Thai*, 29 F.3d 785, 808-09 (2d Cir. 1994).[19]

Finally, "it is not a suggestive identification alone that violates the Constitution; 'rather, the constitutional violation is that [the criminal defendant's] right to a fair trial was impaired by the admission of testimony regarding the unreliable identification." *Perkins v. New York City*, No. 17-cv-423 (RRM) (PK), 2019 U.S. Dist. LEXIS 167217, at *15 (E.D.N.Y. Sep. 27, 2019), quoting *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007); *see also Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) (summary order).   Simply, there is no constitutional right to be protected from a suggestive identification. *See Wray*, 490 F.3d at  193.

Here, neither Sanchez nor Davis describes anything about the "design, construct, or sequencing [of the photos viewed] that would lead a person to pick out [plaintiff], let alone identify him as the shooter." *Rivera*, 2019 U.S. Dist. LEXIS 208862, at *11.   It is undisputed that nothing about the photographs that they viewed stood out. (Defs. 56.1, ¶¶43-55, 67-81.) Moreover, there was nothing suggestive about the photo identification process described by Sanchez.   As he testified that he viewed hundreds of photos from photo books and then a substantial amount of photos in loose stacks, the size of the array does not pose a constitutional

---

[19] Indeed, when the number of photographs shown to a witness "far exceeds the number of photographs in 'six-pack' photo arrays that are routinely held sufficient in size to be non-suggestive, the plaintiff's argument of "suggestiveness" can be "put to one side." *United States v. Rivera*, No. 19 Cr. 131 (PAE), 2019 U.S. Dist. LEXIS 208862, at *11 n.1 (S.D.N.Y. Dec. 3, 2019).

violation. (Defs. 56.1, ¶¶38, 40, 42-44.)  Similarly, the manner of presentation and the array's contents, with no single photo standing out, tagged, or marked in any way, do not pose a constitutional violation.   (Defs. 56.1, ¶¶33-49.) Furthermore, only once Sanchez had already selected plaintiff's photo did an unidentified detective remark that he was "not surprised;"[20] no detective—including Cruger—steered Sanchez's attention to plaintiff's photo. (Defs. 56.1, ¶¶49-52, 59.)  Finally, as the photo identification by Sanchez was not admitted at trial, there is no basis for a constitutional claim.  *Wray*, 490 F.3d at 193. Thus, there is no evidence of "suggestiveness" in any photo identification procedure with Sanchez and it cannot form the basis for liability.

As to Davis,[21] while assuming in plaintiff's favor that Davis was shown 2-3 photos, that alone does not establish "suggestiveness."   First, beyond the small size of the photo array displayed to Davis, there is not even a scintilla of evidence pointing to any suggestive conduct, such as suggestive comments or a photograph that stood out.  (Defs. 56.1, ¶¶67-78.)  But even if the Court is hesitant to rule on the question of suggestiveness when inferring that Davis was shown 2 to 3 photos, that does not preclude granting summary judgment in defendants' favor.

This is because during the criminal trial, plaintiff's own criminal defense attorney—the intervening actor here— sought and introduced testimony about the photo identification procedure.  (Defs. 56.1, ¶141.)  Oddly, Davis did not mention viewing 2 to 3 single photos at trial, but testified to viewing over 75 photos at his workplace.[22]  (Defs. 56.1, ¶¶142-143.)  Thus,

---

[20] If "the original identification was strong and unequivocal, such misguided post-identification remarks or actions will not render it invalid [.]" *Thai*, 29 F.3d at 810.

[21] There is no evidence of any suggestive identification procedures with Diaz.  (Defs. 56.1, ¶¶91-94.)

[22] There is nothing in the record to somehow suggest that Davis was coerced into mis-testifying, into saying that he viewed 75 photos at his workplace when he viewed only 2 to 3.  Indeed, Davis's was "unequivocal and unchallenged" that he identified plaintiff from 75 photos. *Bellamy*, 914 F.3d at 749.  Consequently, the jury was presented with the full universe of information and "any attempt to distort the evidentiary record was fully mitigated by this disclosure." *Dufort*, 874 F.3d at 355.  Indeed, "[m]ere attempts to withhold or falsify evidence cannot form

no testimony about any "suggestive" identification of 2 to 3 single photos was admitted at trial, i.e. no testimony regarding any allegedly unreliable identification. In sum, because any testimony regarding photo identification by Davis was introduced at the behest of plaintiff's own attorney and because Davis did not testify about an identification procedure with 2 to 3 photos, plaintiff's claim cannot stand.

Finally, even assuming that both Torres and Leon were shown single photos of plaintiff, this would not be sufficient for a constitutional claim.  This is because there was no testimony whatsoever at plaintiff's criminal trial regarding any identification by Torres and Leon (they did not identify plaintiff).  Indeed, there is no evidence that by showing Torres and Leon single photos, defendants fabricated information; forwarded that information to Petrauskas; and that plaintiff suffered a deprivation as a result of this specific action.  As such, any "suggestive" show-up photo identifications with Torres and Leon do not form the basis for a § 1983 claim.

### 2.  *Plaintiff Does Not Demonstrate He Suffered a Deprivation of Liberty.*

Plaintiff did not suffer a deprivation of liberty from any purportedly falsified or withheld information.  Indeed, there is no evidence suggesting that plaintiff suffered a deprivation of liberty specifically attributable to any improper photo array techniques or withheld statement. "[A]lthough probable cause is not a complete defense to a fair trial claim based on fabricated evidence, plaintiff still must show[…] that the alleged fabrication caused a deprivation of liberty. In other words, where independent probable cause exists for the prosecution, plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself."  *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013) (Gershon, J.), *aff'd Hoyos v. City of New York*, 650 F. App'x 801 (2d Cir. 2016) (summary order).

---

the basis for a § 1983 claim for a violation of the right to due process when those attempts have no impact on the conduct of a criminal trial."  *Id.*

What can constitute a further deprivation of liberty includes "(1) setting of bail, which may make the difference between freedom and confinement pending trial, and (2) the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action, [since this] may depend on the prosecutor's and magistrate's assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence " *Garnett*, 838 F.3d at 277 (numbers added).  "Other examples of liberty deprivations include 'the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions.'" *Rowell v. City of New York*, No. 16 Civ. 6598 (AJN), 2019 U.S. Dist. LEXIS 10116, at *5-6 (S.D.N.Y. Jan. 22, 2019)*, quoting *Hanson v. New York City*, No. 15-cv-1447 (MKB), 2018 U.S. Dist. LEXIS 51581 at *52-53 (E.D.N.Y. Mar. 27, 2018), citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995). *See also Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 104120, at *4 (S.D.N.Y. July 29, 2016), *aff'd Caravalho v. City of New York*, 732 F. App'x 18 (2d Cir. 2018) (summary order) ("Despite plaintiffs' resounding assertion that defendants' false statements caused plaintiffs 'material harm,' plaintiffs do not show that defendants' false statements actually caused plaintiffs a 'deprivation of liberty.' Plaintiffs' failure to adduce evidence capable of proving that critical element was, and remains, fatal to their fair trial claims."). *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (no liberty deprivation attributable to an arrest supported by probable cause, unless the fabricated evidence causes some "further deprivation.")

Here, there is no evidence that plaintiff's liberty was deprived specifically because of any purportedly fabricated or withheld evidence.  Indeed, as detailed at Point II.A.5, plaintiff was also arrested, indicted, prosecuted, and incarcerated for a robbery charge, which he is not challenging.  Moreover, even putting aside the robbery charge, there is no evidence in the record

demonstrating that any photo identification and/or withheld statements affected the prosecutor's decision to pursue charges or prosecute plaintiff.  In sum, as plaintiff's arrest and prosecution was supported by ample probable cause, plaintiff cannot establish a deprivation of liberty claim as there is no evidence that any fabricated evidence caused a "further deprivation."

> 3.   *Plaintiff Cannot Demonstrate a Causal Link Between Any "Fabricated Evidence" and Deprivation of Liberty.*

"A § 1983 plaintiff who claims that a state official manufactured false evidence against him for use in state criminal proceedings invokes the protection of the Due Process Clause of the Fourteenth Amendment."  *Hoyos*, 999 F. Supp. 2d at 393, citing *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000). "It is axiomatic, however, that 'the Constitution does not guarantee 'due process' in the abstract.'"  *Hoyos*, 999 F. Supp. 2d at 393, citing *Zahrey*. 221 F.3d at 348, n.4. "Rather, with respect to state action, it guarantees that no 'state shall deprive any person of life, liberty, or property, without due process of law.'"  *Hoyos*, 999 F. Supp. 2d at 393, quoting U.S. Const. amend. XIV. "For this reason, a fair trial claim based on allegations that the police fabricated evidence requires that the plaintiff 'suffer[] a deprivation of liberty as a result' of the alleged fabrication."  *Hoyos*, 999 F. Supp. 2d at 393, quoting *Jovanovic*, 486 Fed. App'x at 152 (emphasis added by *Hoyos* Court); *see also Zahrey*, 221 F.3d at 355 (holding that the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the result of [the defendant's] fabrication of evidence"); *see also Morse v. Spitzer*, No. 07-cv-4793 (CBA) (RML), 2012 U.S. Dist. LEXIS 110241, at *5-6 (E.D.N.Y. Aug. 2, 2012).  Indeed, proximate cause in an element that must be proven in § 1983 lawsuit.

Here, as discussed *supra* at Point II.B.2, there has been no deprivation of liberty.  But even assuming *arguendo* that plaintiff suffered a deprivation of liberty, that in no way is causally linked to any purportedly fabricated evidence. To put it another way, any purportedly fabricated

statements were not the proximate cause, did not substantially bring about or actually cause, any alleged deprivation of liberty. There is nothing to suggest that the prosecution would not have proceeded against plaintiff but for any allegedly "improper" photo identification procedures and withholding a statement by Torres.  Indeed, plaintiff was also selected at a line-up.  Accordingly, plaintiff's denial of right to fair trial claim must be dismissed.

## C.  *Plaintiff's Federal Claim for Failure to Intervene Must Be Dismissed.*

Plaintiff brings a federal claim for failure to intervene against all defendants.[23]  A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence. *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Liability attaches when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).  "If the Court determines that the officer's conduct did not violate a constitutional right, [...], the analysis ends." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, as explained *supra*, no conduct violated plaintiff's constitutional rights.  Therefore, this claim must be dismissed.  But even assuming *arguendo*, that some right was violated, there is no evidence that an officer had a realistic opportunity to intervene or that a reasonable person would realize that plaintiff's rights were being violated.  Here, besides for Whitaker and Martinez, who worked together, there is no evidence that Cruger, Silverman, or Fortunato had knowledge of a constitutional violation and failed to intervene.  Indeed, Silverman and Forunato were not involved in any photo identifications or interviewing witnesses who provided

---

[23] Plaintiff's claim for failure to intervene is Count Three of the Complaint.

exculpatory statements.    Though Cruger showed Sanchez photos, there is no evidence that any other defendant had any knowledge of any constitutional violation by Cruger; nor is there any evidence that any other defendant had knowledge of or could have intervened in any photo identification procedure by Whitaker and Martinez.    Thus, this claim must be dismissed.

### D.  *Plaintiff's State Law Claim for Respondeat Superior Must Be Dismissed.*

Plaintiff brings a state law claim for *respondeat superior* against the City of New York, premised on his New York state law malicious prosecution claim.[24]    A "municipality may have 'vicarious liability under the doctrine of respondent superior' for torts committed by its employees." *Rosario*, 2019 U.S. Dist. LEXIS 159771, at \*25, quoting *Joseph v. City of Buffalo*, 83 N.Y.2d 141, 144, 629 N.E.2d 1354, 608 N.Y.S.2d 396 (1994). *See also Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). When plaintiff fails to demonstrate "any liability on the part of any of the City's agents or employees, [the] *respondeat superior* claim also fails." *Velez v. City of New York*, 730 F.3d 128, 137 (2013).  Here, as discussed at Point II.A, plaintiff's malicious prosecution claim fails.  Therefore, his claim for *respondeat superior* also necessarily fails.

## III.    Defendants Are Shielded from Any Liability by the Doctrine of Qualified Immunity.

Qualified immunity shields government officials from lawsuits when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015), quoting *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).  Qualified immunity "is important to society as a whole[.]"  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citations omitted).

---

[24] Plaintiff's claim for *respondeat superior* is Count Ten of the Complaint.

First, qualified immunity will protect a government employee, if there is no clearly established law addressing the challenged conduct.  "Cleary established" law means that "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation omitted).  "The rule must be settled law, which means it is dictated by controlling authority or a robust 'consensus of cases of persuasive authority." *Id.* at 89-90.

To be "settled law," the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.*at 90, quoting *Saucier*, 533 U. S. at 202; *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).  "This requires a high "degree of specificity." *Id.*, quoting *Mullenix*, 136 S. Ct. at 309.  Courts cannot 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.,* quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

Second, notwithstanding a violation of a clearly established constitutional right" an officer may also establish qualified immunity" if it "was objectively reasonable for him to believe that his actions did not violate this right." *Johnson v. City of New York*, 940 F.Supp. 631, 636 (S.D.N.Y. 1996), citing *Robison v. Via*, 821 F.2d 913 (2d Cir. 1997). To place this point in a finer light, "the qualified immunity standard is an objective standard, asking not whether the defendant officer acted in good faith or what he himself knew or believed, but rather what would have been known to or believed by a reasonable officer in the defendant's position." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018), citing *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987).  Indeed, "[a]n officer is entitled to qualified immunity if any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have

determined that the challenged action was lawful.  [The] inquiry [] is not whether the officer should have acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the 'reasonable officer' . . . would have acted in the same way." *Muschette v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2018), quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). "In sum, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, […] judgment for the officers is appropriate." *See Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)*; see also Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 80 (2d Cir. 1994).

The doctrine of qualified immunity is deliberately forgiving" and gives police officers (or any municipal employee, for that matter) "breathing room to make reasonable but mistaken judgments without fear of potentially disabling liability." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quotations omitted), quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012). Police officers "will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978).  Simply, police officers are "not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012) (citations omitted).

A. ***Qualified Immunity Shields Defendants from Plaintiff's Claim for Malicious Prosecution.***

"Qualified immunity shields officials from a malicious prosecution claim if the prosecution is supported by 'arguable probable cause.'" *DaCosta v. Tranchina*, 783 F. App'x 54, 55 (2d Cir. 2019) (summary order), quoting *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014). "Arguable probable cause exists if officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* quoting *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017) (quotation marks omitted). "The totality of the circumstances requires courts to

31

consider the whole picture. […] [T]he whole is often greater than the sum of its parts[.]" *Wesby*, 138 S. Ct. at 588 (citations and quotations omitted).   Here, there is no clearly established right that plaintiff can claim defendants violated his rights and the conduct was objectively reasonably. Moreover, arguable probable cause exists.  Thus, defendants are shielded by qualified immunity.

As the Second Circuit has recently explained, the first "determinative question is not whether the challenged identification procedure could be found 'so defective' that probable cause could not be based on it, but whether clearly established precedent would compel every reasonable officer to recognize as much." *Mara*, 921 F.3d at 75.  There is no clearly established law in this Circuit or from the Supreme Court dictating that detectives cannot show eyewitnesses to a murder either loose stacks of many photos and/or 2 or 3 photos, when the detectives do no mark or tag the photos in any way, steer the witnesses' attention to any photos, or coerce the witnesses in any fashion to pick a particular photo.  Indeed, actual (not even arguable) probable cause can be established when a witness is shown a number of photos that "far exceeds the number of photographs in 'six-pack' photo arrays that are routinely held sufficient in size to be non-suggestive[.]" *Rivera*, 2019 U.S. Dist. LEXIS 208862, at *11, n.1.  Furthermore, if a show-up identification can contribute to probable cause, *Brisco v. Ercole*, 565 F.3d 80, 91 (2d Cir. 2009), then there is certainly no clearly established law in this Circuit stating that displaying 2 -3 photos to an eyewitness *after* another eyewitness has selected a photo is prohibited.  Thus, because there is no clearly established law—supported by controlling authority and a robust consensus of cases—dictating that the precise conduct in this case is beyond debate, qualified immunity shields defendants from liability on plaintiff's malicious prosecution claim.

But even if there was clearly established law, qualified immunity would still latch, as it would be objectively reasonable for defendants to believe their conduct did not violate any such

law.   Indeed, out of the wide range reasonable people who enforce the laws in this country—not just in the City of New York—a reasonable officer could agree that the challenged action was lawful.  This is because all three witnesses to the murder—who at one moment had an opportunity to see the shooter's entire face— selected plaintiff's photo[25] from a multi-photo procedure without any influence by defendants.   Indeed, Petrauskas—a member of law enforcement at the prosecutorial level—testified that even if Davis was show 2 to 3 photos, that may not be the best procedure, but it is not necessarily a suggestive one.  (Defs. 56.1, ¶130.)  Thus, the conduct at issue is objectively reasonable.

Finally, arguable probable cause provides an additional basis for granting qualified immunity.  Officers of reasonable competence could, at the very least, disagree as to whether the probable cause test was met.  The Court must consider the totality of the circumstances.  Even assuming all inferences in plaintiff's favor, as we must, the undisputed facts provide arguable probable cause:  it is undisputed that Sanchez was shown several loose stacks of photos of substantial size and chose plaintiff's photo without police influence from Cruger (Defs. 56.1, ¶¶42-56); it is further undisputed that after Sanchez selected plaintiff's photo, Whitaker and Martinez displayed 2 to 3 photos to Davis at his workplace, and he selected plaintiff's photo without any police influence, even signing a statement of confidence following his selection (Defs. 56.1, ¶¶62-79);  it is also undisputed that Diaz viewed and selected plaintiff's photo from a photo book without any police influence. (Defs. 56.1, ¶¶90-94.)  Moreover, it is undisputed that plaintiff was selected from an un-defective line-up and a grand jury indicted plaintiff (and there

---

[25] Nicole Torres testified that she did not have an opportunity to see the shooter's full face for long enough to identify him.  (Defs. 56.1, ¶24, 25.)  Therefore, to the extent that any argument by plaintiff is premised on showing Torres a single photo, that argument fails.  This is because out of the wide range of reasonable officers in this entire country, a reasonable officer could agree that showing a "witness" who did not even see the shooter's face for long enough to identify him is not a constitutional violation.  Moreover, it certainly does not preclude a finding of arguable probable cause, as is clear from *Brisco*, *Stansbury*, and *Mara*.

is no evidence in the record of the grand jury proceedings). (Defs. 56.1, ¶¶116-122.)  These undisputed facts collectively provide, at the very least, arguable probable cause.

### B. *Qualified Immunity Shields Defendants from Plaintiff's Claim for Denial of Right to Fair Trial.*

Similarly, defendants are protected by qualified immunity from plaintiff's fair trial claim. A qualified immunity determination "is made not from the perspective of the courts or lawyers, but from that of a reasonable officer in the defendants' position." *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017).  The "[f]abrication of evidence is not objectively reasonable or a subject over which reasonable law enforcement officials could disagree[.]" *Galgano v. Cty. of Putnam*, No. 16 Civ.  3572 (KMK), 2018 U.S. Dist. LEXIS 169725, at *107-09 (S.D.N.Y. Sep. 28, 2018), citing *Dufort*, 874 F.3d at 354.  But like in *Ganek*, where the Second Circuit granted qualified immunity on a fair trial claim, the Court here "need not decide whether the [any] misrepresentation […] was knowingly false because," because even assuming that it was, there is no indication that the statement was necessarily denied plaintiff the right to a fair trial. *Id.* at 82.

First, defendants Cruger, Martinez, and Whitaker are entitled to qualified immunity based on any photo identification procedures.   This is because it would be objectively reasonable for them to believe that where a witness is show multiple photos—whether 2-3 photos or a substantial amount in loose stacks—with no police coercion or suggestion, that identification can lead to a lawful arrest.  (*See* Defs. 56.1, ¶¶40-57, 68-81.)  Indeed, it cannot be said that out of the wide range of officers who enforce the laws in this country all would believe that the photo identification procedures in this case violate a clearly established right.  Second, defendants are entitled to qualified immunity based on "withholding" any exculpatory statement by Torres. Even based on Torres's testimony, she did not see the shooter's face and was unable to identify the shooter. (Defs. 56.1, ¶14.) Therefore, based on her lack of observation and inability to

identify any individual, it would be reasonable to believe that she was not an eyewitness to the crime.  Thus, defendants are entitled to qualified immunity on plaintiff's fair trial claims.[26]

## **CONCLUSION**

For the foregoing reasons, defendants respectfully requests that the Court grant their motion for summary judgment in its entirety, dismiss all of the aforementioned claims with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        January 10, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By: _____

Brachah Goykadosh
*Senior Counsel*
Special Federal Litigation Division

cc:     Nick Brustein, Esq.
        Emma Freudenberger, Esq.
        Richard Sawyer, Esq.
        *Attorneys for Plaintiff*
        Neufeld Scheck & Brustin, LLP
        99 Hudson Street
        New York, New York 10013

---

[26] Defendants reserve the right to raise any additional qualified immunity arguments at any point.