UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                          :
RICHARD ROSARIO,                    :
                       Plaintiff,     :           18 Civ. 4023 (LGS)
                                              :
           -against-               :          OPINION AND ORDER
                                              :
THE CITY OF NEW YORK, et al.,        :
                         Defendants. :
-------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Richard Rosario seeks damages from the City of New York (the "City") and

New York City Police Department ("NYPD") detectives for his alleged wrongful conviction and

imprisonment for murder, bringing federal claims under 42 U.S.C. § 1983 for denial of the right

to a fair trial, malicious prosecution and failure to intervene, along with state law claims for

malicious prosecution and *respondeat superior* liability against the City. Defendants move for

summary judgment. In his memorandum of law in opposition, Plaintiff voluntarily dismissed his

claims against Detective Joseph Fortunato, leaving four NYPD defendants. Summary judgment

is granted as to the § 1983 malicious prosecution claim and all claims against Detective

Silverman, except the failure to intervene claim, and is otherwise denied.

## I.      BACKGROUND

        The background facts below are drawn from the parties' Rule 56.1 statements and other

submissions on this motion.

### A.  Murder Investigation and Prosecution

        On June 19, 1996, around 1:00 p.m., Jorge Collazo was shot in the head while walking

with his friend Michael Sanchez in the Bronx. Defendants Gary Whitaker, Richard Martinez and

Irwin Silverman, who are NYPD detectives, interviewed witnesses at the crime scene.

The police brought to the precinct four witnesses who could potentially identify the shooter: Robert Davis, Sanchez, Vivene Martinez and Nicole Torres. Ms. Martinez[1] was a passerby who observed the two perpetrators before the shooting, and after she heard the shot fired, she witnessed the shooter run to a getaway car. Davis, a porter, was sweeping the street when he saw three males walking toward him, and after hearing the shot, saw the shooter fleeing. Torres was walking to work at the time of the shooting and testified she was possibly five to ten feet away from the shooter, who faced her. She saw the shooter run up to Collazo and Sanchez, and heard him say, "Hey George, this is for you!" (the "Torres statement") before he pulled out the gun and shot Collazo in the head.

At the precinct that afternoon, Davis, Sanchez and Torres viewed photo books, and no witness made an identification. There is no evidence that police reports were made documenting any identification procedures with Ms. Martinez or Torres. Torres also testified that she was visited by detectives at work and shown a single photo of a "common Hispanic person," who had some connection to Florida -- where Plaintiff asserted he was on the day of the murder. She was asked if she thought the person was Collazo's shooter. She did not recognize the individual, and this was not reported in the "DD-5 report"[2] of the interview.

According to a DD-5 prepared by Detective Martinez, at around 5:50 p.m., he and Detective Whitaker re-interviewed Davis at his workplace. Detective Martinez's DD-5 stated that Davis identified Plaintiff from a photo book, and that after viewing the entire photo book "Davis stopped," pointed to Rosario's photo and stated, "Very positive, that's the guy with the

---

[1] Only Ms. Martinez is referred to with a title ("Ms.") to avoid confusion with Detective Martinez.

[2] DD-5 reports are internal NYPD documents "produced by police officers to record the information they have gathered in conjunction with an investigation." *Exoneration Initiative v. New York City Police Dep't*, 980 N.Y.S.2d 73, 75 n.1 (1st Dep't 2014).

gun and shot the kid."  Davis testified that it stood out in his mind that he was shown two or three photos and selected one.

According to Defendant Charles Cruger's DD-5 report, Sanchez "did view photos" and identified Plaintiff, but the report did not include whether the identifications were from mugbooks or loose photos, the number of photos viewed or the time of the identification. Sanchez testified that he identified Plaintiff from stacks of loose photos at a time when it was turning to nighttime, and on that day, the sunset was at 8:30 p.m.[3]  Detective Martinez's report, made the following day, described Sanchez as identifying Plaintiff from a photo book, and the detectives later claimed Sanchez identified Plaintiff before Davis's identification.

Detectives Martinez and Whitaker also interviewed Jose Diaz.  Diaz is a food truck vendor who saw the shooter two times the day of the shooting, including immediately prior to the shooting.  Detective Martinez's DD-5 reflects that Diaz identified Plaintiff from the same photo book that Davis viewed to identify Plaintiff.  Diaz was not shown a line-up and was unable to identify Plaintiff at trial.

Sanchez informed Detective Martinez that a week before the shooting, an individual told him that Collazo should "watch his ass" for assaulting a woman named Lymari Leon.  Leon was brought to the precinct, and a Hispanic detective and a second detective showed her a set of photos on a binder page and asked if she recognized anyone.  After she stated she could not, one of the detectives continued to point to a picture of a "tan person; not too dark, but not too light,"

---

[3] Per Federal Rule of Evidence ("FRE") 201(c)(2), judicial notice is taken of this fact, which was requested by Plaintiff, who provided the time of sunset on June 19, 1996, as recorded by The Old Farmer's Almanac.  *See Sunrise & Sunset For Bronx, NY,* THE OLD FARMER'S ALMANAC, https://www.almanac.com/astronomy/sun-rise-and-set/NY/Bronx/1996-06-19 (last visited Jan. 14, 2021).

asking her two or three times, "Do you know this guy?"  This was not recorded in a police report.

The police reports were provided to the assigned assistant district attorney ("A.D.A."). The A.D.A. understood from the DD-5s that the witnesses selected Plaintiff after looking through hundreds of photos in photo books.  The A.D.A. testified that she did not recall knowing that Torres was an eyewitness or had been shown photos, and that she would have expected that to be documented and provided to her.

On April 19, 1996, prior to the Collazo murder investigation, a warrant was issued for Plaintiff's arrest for an unrelated robbery.  On July 2, 1996, another warrant was issued for Plaintiff's arrest for the Collazo murder, with a charge of murder in the second degree.  Plaintiff was arrested in July for robbery and murder.  On July 8, 1996, Plaintiff was ordered to be produced for a line-up upon an affidavit by the A.D.A., stating that there was probable cause to believe Plaintiff had committed the murder of Collazo along with the unrelated robbery.

Both Davis and Sanchez were shown line-ups, and the A.D.A. conducted interviews of them and prepared them to testify in the grand jury and at trial.  The A.D.A. testified that during her interviews, she focused on their ability to observe the shooter and believed Davis and Sanchez to be confident in their identifications.  In August 1996, the grand jury indicted Plaintiff and charged him with attempted murder, robbery, assault and criminal possession of a weapon.

**A.  Trial**

Plaintiff challenged the admissibility of the eyewitness identifications during a pre-trial *Wade* hearing, where Detectives Martinez, Whitaker and Cruger testified that Sanchez and Davis had made their identifications from mugbooks.

At the trial, which began on November 10, 1998, the prosecution had no physical or forensic evidence that placed Plaintiff at the murder scene, and no evidence that Plaintiff knew the victim or accomplice or that he had any motive to kill the victim.  The prosecution's theory was that Collazo was killed during a random street encounter with Plaintiff.  No evidence of Torres's observations or identification procedure was introduced at trial.  Only Davis and Sanchez, but not Diaz, identified Plaintiff as the shooter in court.  Sanchez testified that he had picked Plaintiff out of a line-up and did not testify as to the photo identification.  Davis described both the photo identification and line-up identification.  The jury was to determine whether Rosario was the person who committed the homicide based on the evidence presented, *i.e.* the identifications by Sanchez and Davis.  The jury asked for a readback of Sanchez's testimony, including whether he had picked Plaintiff out of a line-up or a book.  The jury convicted Plaintiff of murder in the second degree.  After pleading guilty to the unrelated robbery charge, on August 19, 1999, Plaintiff was sentenced to an indeterminate sentence of three to nine years to run concurrently with his murder conviction.

### B.  Post-Conviction Proceedings

Plaintiff made various post-trial challenges to his conviction, all of which were unsuccessful.  In 2016, the District Attorney's Office reinvestigated Plaintiff's case and concluded Plaintiff had not received a fair trial because Plaintiff's attorney had been ineffective for failing to investigate all of Plaintiff's alibi witnesses.  His conviction was vacated on March 23, 2016, and he was released after nearly twenty years in prison.  The District Attorney's Office further recommended that the indictment be dismissed, stating that it "would not be able to meet [its] burden at trial of proving [Rosario's] guilt beyond a reasonable doubt to the satisfaction of a

unanimous jury," and the indictment was vacated "in the interests of justice."  Plaintiff filed this action on January 29, 2018.

## II.    STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017).  A court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).  "It is not the province of the court itself to decide what inferences should be drawn," and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *accord Figueroa v. W.M. Barr & Co., Inc.*, No. 18 Civ. 11187, 2020 WL 5802196, at *1 (S.D.N.Y. Sept. 29, 2020).  When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).

### III.    PRELIMINARY EVIDENTIARY MATTERS

In their reply memorandum of law, Defendants request to strike certain of Plaintiff's responses to Defendants' Rule 56.1 statement and Plaintiff's additional statement of facts, and challenge the admissibility of evidence relied on by Plaintiff.  In deciding the motion for summary judgment, the Court did not rely on argumentative, speculative or conclusory statements.  Defendants' challenges to admissibility are discussed only to the extent the evidence was relied upon on this motion.

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (citation omitted). "A district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence."  *Id.* (quotation marks and citation omitted).  "The principles governing admissibility of evidence do not change on a motion for summary judgment."  *Id.* at 264 (citation omitted).  Admissible evidence may be introduced through affidavits or declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  To be admissible at trial, evidence must be relevant, *see* FRE 402; authenticated or self-authenticating, *see* FRE 901 and 902; non-hearsay or subject to a hearsay exception, *see* FRE 801-803; and not otherwise excludable under FRE 403.

Defendants assert that the Declaration of Richard Sawyer, Plaintiff's counsel of record, is inadmissible.  For purposes of this ruling, the Court relied only on paragraphs four and six of the Declaration, and they are admissible.  Paragraph four is a description of the four photos Mr. Sawyer found in the homicide file when he reviewed it in 2018.  Paragraph six contains Mr. Sawyer's observation that he found no documentation of photo identification procedures with

Torres, Martinez or Leon in the police file.  These paragraphs are based on Mr. Sawyer's personal knowledge and set out facts that would be admissible in evidence; Mr. Sawyer's personal observations and the homicide file and its contents are relevant; the file and its contents could be admitted and authenticated and are not hearsay, as the photos and the file are not offered for the truth of the matter asserted.  Defense counsel disputes neither that the four photos identified were in the homicide file when reviewed in 2018, nor the authenticity of the homicide file itself.  *See* Dkt. No. 186.

The probative value of the statements at issue outweighs any danger of confusing or misleading a jury under FRE 403.  The photographs in the police file are highly probative because eyewitnesses testified that they identified Plaintiff from loose photos and not from photo books available at the precinct.  Detective Whitaker, who participated in the re-interview of Davis where he allegedly identified Plaintiff from loose photos, testified that he did not have any individual photos of Plaintiff and there would be "no reason" for detectives to have them in 1996.  Whether there are any police reports documenting certain alleged eyewitness identifications is also relevant to Plaintiff's claims premised on the failure to document such identifications.  Defendants make only conclusory assertions that admitting the two statements would be confusing and misleading, apart from disagreeing with the inference one might fairly draw from the loose photos.  *Cf. United States v. White*, 692 F.3d 235, 240 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (probative value of certain evidence can be substantially outweighed by the danger of confusing or misleading the jury if its introduction would "invite a trial within a trial" on the "intricacies" of state law and "the cases of other individuals").  The probative value outweighs any risk of confusion or misperception.  *See id.* at 247 ("Rule 403 favors

admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion.").

Defendants also argue that Plaintiff's Expert Report of Jennifer Dysart should be excluded as inadmissible.  As stated at the November 12, 2019, conference, all *Daubert* motions are reserved for resolution after the ruling on the summary judgment motions.  This Opinion and Order does not rely on the Report, and the question of its admissibility is reserved.

## IV.    MOTION FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment is denied except as to the federal malicious prosecution claims and as to the remaining claims against Detective Silverman, except the failure to intervene claim.

Defendants first argue that Plaintiff has not established the personal involvement of Detectives Cruger and Silverman, and of any Defendant regarding the alleged suppression of the Torres statement.   To prevail on a § 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law."  *Jones v. Cty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019) (citation omitted).  Individual defendants can be liable under § 1983 only if they were "personally involved" in the constitutional violation.  *See Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019).  These arguments are rejected and addressed below.

### A.    Denial of Right to Fair Trial Claims

Defendants move for summary judgment on Count Two, Plaintiff's claims for denial of the right to a fair trial.  Plaintiff alleges that the detectives (1) committed violations of disclosure requirements of *Brady v. Maryland*, 373 U.S. 83, 83 (1963) and (2) fabricated reports about eyewitness interviews and identifications and obtained identifications through impermissible

suggestion.  Police officers may be held liable under § 1983 for *Brady* violations when they

withhold exculpatory or impeaching evidence from prosecutors.  *See Bellamy v. City of New*

*York*, 914 F.3d 727, 751 (2d Cir. 2019).  Non-disclosed evidence must be material in the sense

that the plaintiff "must demonstrate a reasonable probability that, had the evidence been

disclosed, the result of the proceeding would have been different."  *Id.*  Suppression of evidence

of suggestive identification procedures can support a § 1983 *Brady* claim.  *See Rosario v. City of*

*New York*, No. 18 Civ. 4023, 2019 WL 4450685, at *5 (S.D.N.Y. Sept. 16, 2019); *Bermudez v.*

*City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015).

"When a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors, he violates the accused's constitutional right to a fair

trial."  *Bellamy*, 914 F.3d at 745 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d

Cir. 1997)); *accord Frost v. New York City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020).

Government officials may be held liable for fabricating evidence through false statements or

omissions that are both material and made knowingly.  *See Morse v. Fusto*, 804 F.3d 538, 547

(2d Cir. 2015).

Plaintiff brings *Brady* claims based on the failure to disclose alleged suggestive police

identification procedures conducted with witnesses Davis and Sanchez, along with fabrication

claims based on evidence obtained by the suggestive procedures and related reports concerning

the eyewitness identifications, including Diaz's identification.[4]  Plaintiff additionally brings

*Brady* claims based on Torres' statement that she heard the shooter say "Hey George, this is for

you!" and the alleged suppression of other exculpatory identification procedures.  Plaintiff's

---

[4] Defendants did not address, either in their opening or reply memoranda of law, the Diaz identification as part of their motion for summary judgment on the fair trial claim, and the identification is not addressed in this section.

memorandum of law in opposition to the motion includes a non-exhaustive list of other allegedly fabricated evidence without citations to the record or identifying particular Defendants for these claims.  These theories are reviewed only to the extent addressed by Defendants in their motion.

### 1.  Davis and Sanchez Identifications

Defendants argue that Plaintiff has failed to adduce evidence from which a reasonable jury could conclude that the Davis and Sanchez identifications were impermissibly suggestive. This argument is rejected.  The summary judgment record, taken in the light most favorable to Plaintiff, raises a material issue of fact as to whether Detectives Martinez and Whitaker conducted a suggestive identification procedure with Davis, and whether Detective Martinez created a false report about Davis's identification.[5]  Although Detective Martinez's DD-5 states that Davis identified Plaintiff from a photo book, Plaintiff contends that Davis made his identification only after detectives presented him with two or three loose photos at his workplace, following his failure to identify Plaintiff in photo books at the precinct.  Specifically, after failing to identify the perpetrator from mug shots of Hispanic men, Plaintiff contends that Detectives Martinez and Whitaker later showed Davis some combination of a photo of a Black man and two photos of Plaintiff only and asked Davis "which one."  After selecting a photo,

---

[5] As for Detective Silverman, following Defendant's motion for judgment on the pleadings, the remaining claims against Silverman are Count Two, Plaintiff's denial of fair trial claim, *except* to the extent it was premised on false identification; Counts One and Seven, the federal and state malicious prosecution claims; and Count Three, the failure to intervene claim, pleaded in the alternative to any claim of direct violations.  In his memorandum of law in opposition, Plaintiff seeks to reinstate the fair trial false identification claim against Detective Silverman based on newly discovered evidence, and the Court assumes, a failure to intervene claim in the alternative. However, Plaintiff has not sought leave to amend the Complaint to reinstate this claim, and Plaintiff cannot do so in his opposition to a motion for summary judgment.  *See Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (collecting cases).

Davis was told, "Yeah, this is the right person."  This alleged procedure borders on coercion such that the identification procedure was "so defective" that probable cause could not reasonably be based on it.  *See Mara v. Rilling*, 921 F.3d 48, 75 (2d Cir. 2019).

Plaintiff proffers evidence sufficient for a reasonable jury to adopt Plaintiff's description of events.  This evidence includes Davis's deposition testimony, the photos observed in the police file in 2018 (one of a Black individual and three different photos of Plaintiff), and Detective Whitaker's testimony that he had no explanation for why the loose photographs would be in the file.  Defendants point to contrary evidence -- including Davis's other testimony -- but these arguments simply underscore that there are issues of fact and credibility inappropriate for resolution on summary judgment.  *See Liberty Lobby*, 477 U.S. at 249.

Plaintiff contends that, like Davis, Sanchez did not identify Plaintiff from photo books as Defendants assert, but based on a similarly suggestive identification procedure.  Plaintiff has proffered evidence from which a reasonable jury could find that Sanchez was subject to a similar procedure by Detectives Martinez, Cruger and Whitaker.  When deposed, Sanchez testified that he did not identify Plaintiff from any photo book, contrary to the written report by Detective Martinez prepared the day after the alleged identification.[6]  Instead, Sanchez testified, he made his identification from "loose stacks of photos," after failing to identify Plaintiff from photo books.  The record does not otherwise contain or reference loose stacks of photos, but the police file observed in 2018 did contain four loose photos, three of which were of Plaintiff.  Detective Cruger's report lacked any detail as to the identification procedure, stating only that Sanchez

---

[6] Detective Martinez's DD-5 could be found to be fabricated for other reasons that could support a denial of fair trial claim.  Sanchez testified that he did not remember providing certain details in the description reported in Detective Martinez's DD-5, yet the description includes specific details that corroborate those provided by Davis and Ms. Martinez.

"did view photos," even though Detective Cruger testified that at least the time of identification would be important to record.

Defendants assert that even if the Davis and Sanchez identifications were suggestive, they cannot be the basis for a due process claim for other reasons: the Sanchez photo identification was not introduced at trial, and Plaintiff's defense attorney was an intervening actor, who introduced testimony regarding the Davis photo identification procedure. These arguments -- which appear to address Plaintiff's fair trial claim based on a fabrication of evidence theory only -- are both rejected. Whether and by whom the photo identifications were offered into evidence at trial does not foreclose Plaintiff's claims based on false evidence in this case. "Suggestive procedures are disapproved because they increase the likelihood of misidentification, and it is the admission of testimony carrying such a likelihood of misidentification which violates a defendant's right to due process." *Wray v. City of New York*, 490 F.3d 189, 193 (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (quotation marks omitted)). In other words, "the due process focus is principally on the fairness of the trial, rather than on the conduct of the police." *Id.* at 524. Unduly suggestive identification procedures can render subsequent identifications tainted or unreliable. *See U.S. v. Thai*, 29 F.3d 785, 807-08 (2d Cir. 1994) (explaining that a defendant has a due process right not to be the object of suggestive police identification procedures that create "a very substantial likelihood of irreparable misidentification"). Here, regardless of whether Davis or Sanchez testified regarding the prior *photo* identification (Sanchez did not and Davis did), Davis and Sanchez still testified as to their line-up identification and made in-court identifications of Plaintiff at trial. Accordingly, the photo identifications cannot be described as having "no impact on the conduct of a criminal trial." *Cf. Dufort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017) (finding that an

improperly suggestive line-up could not be a basis for a due process claim, when the "attempt" to falsify the evidence was fully mitigated by trial testimony undercutting her prior identification).

### 2. Brady Violation -- Unreported Photo Identification Procedures

Defendants seek summary judgment on the fair trial claim based on *Brady* violations. This claim asserts that Defendants failed to document circumstances showing that photo identifications by Davis and Sanchez were unreliable and failed to document other exculpatory photo identifications, including the failure to identify by Torres and Martinez. Defendants respond that there can be no *Brady* violation without evidence that their non-disclosure was intentional and that that the suppressed evidence is material.[7] As to Ms. Martinez, Defendants also argue that there is no evidence that she was asked to make an identification, much less that a record of the procedure was suppressed.

A civil *Brady* claim may require a showing that the withholding of exculpatory evidence was intentional. *See Bellamy*, 914 F.3d at 751 n.23 (declining to decide whether intentionality is required for a civil *Brady* claim). If so, a reasonable jury could find that Detectives Cruger, Martinez and Whitaker acted intentionally in withholding evidence that the identifications of Plaintiff were unreliable or exculpatory. Intentionality may be deduced based on their pattern of deviating from what they described as typical practice -- including, as described above, Detective Martinez's creating false police reports regarding the identification procedures used; Detective Cruger's failure to provide any details regarding the Sanchez identification; as to at least Detectives Martinez and Whitaker, the failure to record witnesses' inability to identify Plaintiff;

---

[7] Defendants also argue that any suggestive identification procedure with Torres and Leon cannot be the basis for a claim based on fabrication of evidence. Plaintiff does not oppose this argument and discusses the Torres and Leon identifications only in the context of the *Brady* claims. Accordingly, to the extent Plaintiff's fabrication claims are premised on the Torres and Leon identifications, they are deemed abandoned.

and the individual Defendants' failure to probe Plaintiff's detailed alibi. *See Dufort*, 874 F.3d at 349 ("[T]he Defendants' unusual decision to depart from normal practice and not contemporaneously document their initial interview . . . in a 'DD5' form raises considerable doubt about the exact nature of [the] initial identification -- doubt which, at the summary judgment stage, must be construed in [Plaintiff's] favor.").

Defendants are also incorrect that Plaintiff has not shown the materiality of the withheld evidence. The question of materiality is whether the absence of the withheld evidence undermines confidence in the outcome of the trial. *See Bellamy*, 914 F.3d at 751. To evaluate materiality, a court must consider the suppressed evidence "collectively, not item by item." *Kyles v. Whitley*, 514 U.S. 419, 436 (1995). The materiality standard is "not a sufficiency of evidence test." *Id.* at 434. In summation, the A.D.A. explained that the issue was whether Plaintiff was the right person, and argued that "the evidence establishes that this defendant who's identified by [Davis and Sanchez] is the correct person." As to Davis, the A.D.A. argued at trial that "an identification made by a witness is based on recognition of the person's face," and that it was not a "coincidence" that both Sanchez and Davis independently picked the same person. A reasonable jury could find that the trial verdict was affected by the suppression of evidence showing that the in-court and line-up identifications were unreliable -- for example, because Davis and Sanchez could not initially identify Plaintiff from photo books and did so later based on suggestive procedures -- or because Torres did not recognize Plaintiff.

Regarding Ms. Martinez, Defendants argue that it would be unduly speculative to assume she was asked, but failed to make, a photo identification without any testimony from her. A reasonable jury could find that she was asked to make a photo identification -- for which there is no record -- based on evidence that she provided the most detailed description of the shooter and

was interviewed at the precinct at the same time as the other eyewitnesses, all of whom were

asked to make identifications from photo books, and Defendant Martinez testified that he would

expect her to have been shown photos or a line-up.[8]

### 3. Brady Violation -- Torres Statement

Defendants move for summary judgment regarding the non-disclosure of Torres's

statement, "Hey George, this is for you!"  They make three arguments all of which are

unpersuasive -- first, there is no evidence that any defendant intentionally withheld the statement;

second, because Plaintiff's attorney had Torres' name, any statement cannot be considered

suppressed; and third, Plaintiff cannot demonstrate to a reasonable probability that the Torres

statement would have changed the outcome of the proceedings.

First, drawing all reasonable inferences in favor of Plaintiff as required, a reasonable jury

could find that Detectives Martinez and Whitaker were aware of the statement and intentionally

suppressed the evidence.  Torres testified that she told the detectives present everything she

observed, which led her to believe that the shooting was a planned hit.  Yet the statement did not

appear in the police report.  Although Defendants argue that the police report was not created by

any individual Defendant in this case, there is still evidence from which a reasonable jury could

find Detectives Martinez and Whitaker were personally involved, as Detective Whitaker testified

that the detectives would be communicating regularly about important information in the case,

and they participated in a subsequent follow-up interview with Torres.

---

[8] Defendants also argue that her description of the shooter and contact information were in the police reports, and accordingly, Plaintiff's attorney could have contacted her and discovered any failed identification without taking any "affirmative steps."  But the Court declines to decide so as a matter of law where it is unclear whether Plaintiff's attorney reasonably would have suspected that she made an identification under the circumstances known to the attorney.

Defendants' second argument -- that because Plaintiff's attorney had Torres' name, any statement cannot be considered suppressed -- simply raises a question of fact.  Based on the evidence, it is unclear whether counsel should have known of "essential facts permitting him to take advantage" of Torres' statement, *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995), since the police report stated that Torres did not arrive on the scene until after the shooting. Under these circumstances, a reasonable jury could find that the disclosure of Torres' name was not enough to defeat the *Brady* claim, if defense counsel believed Torres did not witness the crime.  *Cf. Bellamy*, 914 F.3d 727, 768 (2d Cir. 2019) (Jacobs, J. dissenting) ("The defense was on notice of all the facts . . . that [the individual] was a witness to the events.").

Defendants' third argument raises the issue of materiality, for which "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles*, 514 U.S. at 434; *accord U.S. v. Teman*, 465 F. Supp. 3d 277, 335 (S.D.N.Y. 2020).  Here, the Torres statement is material as it implies a prior relationship between the shooter and the victim before the interaction, which undermines the A.D.A.'s theory at trial that the shooting was a result of a street encounter between Plaintiff and the victim, and tends to exonerate Plaintiff who had no relationship with the victim.

### 4.  Deprivation of Liberty

Defendants argue that Plaintiff's fair trial claims should fail as he did not suffer a deprivation of liberty as a result of any allegedly falsified or withheld information.

Plaintiff was charged, prosecuted and convicted of murder, and served twenty years on a life sentence for that conviction.  Defendants argue that where independent probable cause exists for prosecution, Plaintiff must show that the misconduct caused some deprivation beyond the

17

fact of the prosecution itself.  The Court does not accept this proposition of law, for which

Defendants cite *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013).  On

appeal in that case, the Second Circuit stated that the proposition that "independent probable

cause rules out the possibility that fabricated evidence proximately caused the deprivations

stemming from his prosecution is not, as a general matter, correct."  650 F. App'x 801, 803 (2d

Cir. 2016) (summary order).  More recently, the Second Circuit rejected a defense argument that

a due process claim had been properly dismissed where there was sufficient evidence to

prosecute without the coerced identification.  The Court in *Frost* held that "probable cause is not

a defense to a fair trial claim based on the fabrication of evidence," explaining it is "irrelevant

that there was sufficient evidence to prosecute" without the coerced identification.  *See Frost*,

980 F.3d at 248 (internal quotation marks omitted) (citing *Garnett v. Undercover Officer C0039*,

838 F.3d 265, 277-78 (2d Cir. 2016)).

As to causation, Defendants broadly argue that Plaintiff has failed to show how *any* of the

alleged falsified or withheld information caused any deprivation of liberty.  A plaintiff must

show that deprivation was caused by the fabrication of evidence, *Zahrey v. Coffey*, 221 F.3d 342,

348 (2d Cir. 2000), but need not show that fabrication was the "*only* reason the plaintiff suffered

a deprivation of his liberty." *Garnett*, 838 F.3d at 277.  Plaintiff has adduced evidence from

which a reasonable jury could find that the alleged misconduct caused a deprivation of his

liberty.  Defendants lacked physical evidence placing Plaintiff at the crime scene, and a

reasonable jury could find that the fabricated evidence prevented the A.D.A. from making an

informed decision about the reliability of the identifications in her decision to bring charges.  The

A.D.A was not present at the photo identifications, and although Davis and Sanchez also

identified Plaintiff in a line-up and were interviewed by the A.D.A., there is a triable factual

issue as to whether the allegedly suggestive procedures helped cement their commitment to their belief that Plaintiff was the shooter, thus affecting the subsequent line-up identifications, the A.D.A.'s interviews and their identification testimony at trial. *See Bermudez*, 790 F.3d at 375-76 ("Once the witnesses had adopted a story . . . because of a suggestive presentation of photographs . . . they might very well have decided to stick with that story (or become convinced that it was true), and for that reason have misinformed the [assistant district attorney] when he subsequently questioned them."). As to the Torres statement, as stated above, a reasonable jury could find that the alleged suppression could have changed the outcome of the trial. *See Poventud v. City of New York*, 750 F.3d 121, 158-59 (2d Cir. 2014) (Jacobs, J., dissenting) ("In the *Brady* context, the causation inquiry essentially replicates the materiality inquiry with a heightened burden of proof." (quotation marks omitted)).

Accordingly, summary judgment is denied on Plaintiff's claims of denial of the right to a fair trial.

### B.    Malicious Prosecution

Defendants move for summary judgment on Counts I and VII, the federal and state malicious prosecution claims respectively, arguing that the record does not support any element of a malicious prosecution claim. Summary judgment is granted on the federal malicious prosecution claim, and to Detective Silverman only on the state malicious prosecution claim.

### 1.    Section 1983 Malicious Prosecution Claim

To prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a post-arraignment "seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment" and establish the elements of a malicious prosecution claim under state law. *See Lanning v. City of*

*Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018); *see also Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (For a malicious prosecution claim "to be actionable under section 1983 there must be a post-arraignment seizure.").  In other words, a plaintiff must show that the injury was "caused by the deprivation of liberty guaranteed by the Fourth Amendment."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

Defendants argue that courts in this Circuit have held that a "plaintiff does not have a claim for false arrest or malicious prosecution under § 1983 if, *at the time of his arrest and prosecution*, he is already in custody on other charges, because there is no deprivation of liberty interests." *Marrero v. City of New York.*, No. 12 Civ. 6486, 2013 WL 6145112, at *4 (S.D.N.Y. Nov. 19, 2013) (emphasis added); *see Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012) (summary order).  This argument has purchase in the context of Plaintiff's federal malicious prosecution claim which, unlike its state counterpart, requires Plaintiff to "show a violation of his rights under the Fourth Amendment." *See Frost*, 980 F.3d at 242.  The "[Fourth] Amendment, standing alone, guarantee[s] a fair and reliable determination of probable cause as a condition for any significant pretrial restraint." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917-18 (2017) (internal quotation marks omitted).  Here, it is undisputed that Plaintiff did not suffer any pretrial deprivation arising from the Collazo murder charge because, at the time of his arrest and throughout his prosecution on the murder charge, he was also under arrest and being prosecuted on the robbery charge.  Only after the murder conviction at trial did he plead guilty to the robbery charge.  Accordingly, summary judgment is granted on Count I, the federal malicious prosecution claim.

### 2. State Malicious Prosecution Claim

Under New York law, the elements of a claim for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause for commencing the proceeding and (4) actual malice as a motivation for the defendant's actions. *See Frost*, 980 F.3d at 242.

### 1. Initiation

Defendants argue that there is no evidence that Detectives Silverman, Cruger or Martinez initiated the prosecution. As Defendants are correct only as to Detective Silverman, the state malicious prosecution claim is dismissed as to him.

To prove the initiation element, a plaintiff must establish that a "defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 199 (2d Cir. 2014); *DeFilippo v. Cnty. of Nassau*, 583 N.Y.S. 2d 283, 284 (2d Dep't 1992). "The initiation requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect." *Dufort*, 874 F.3d at 353; *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 761 (N.Y. 2016) ("[S]upplying false information . . . in substantial furtherance of a criminal action against the plaintiff . . . may, depending on the circumstances, constitute the commencement" of a prosecution.). Plaintiff has not adduced evidence from which a reasonable jury could conclude that Detective Silverman participated in the initiation of the prosecution. For example, there is no evidence that Detective Silverman prepared any allegedly misleading reports as to the photo identification procedures, unlike Detectives Cruger and Martinez, or forwarded this information to the A.D.A., unlike Detective Whitaker. As to these Defendants (apart from Detective Silverman), Defendants' arguments raise issues of fact.

### 2.  Probable Cause and Malice

Defendants next argue that, based on the record, no reasonable jury could find a lack of probable cause or actual malice.  Both arguments are rejected.  Under New York law, probable cause "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Cardoza v. City of New York*, 29 N.Y.S.3d 330, 340 (1st Dep't 2016) (citation omitted). "[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Dufort*, 874 F.3d at 352 (alterations and citations omitted) (applying New York law); *accord Roberts v. City of New York*, 97 N.Y.S.3d 3, 11 (1st Dep't), *aff'd*, 137 N.E.3d 497 (N.Y. 2019).  "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004) (applying New York law); *accord Roberts*, 97 N.Y.S.3d at 11.  Actual malice requires only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Dufort*, 874 F.3d at 353 (applying New York law).  "[A]ctual malice can be inferred when a plaintiff is prosecuted without probable cause." *Id.*

An identification cannot be used to support probable cause if it was "so defective that probable cause could not reasonably be based upon it." *Dufort*, 874 F.3d at 348 (quotation marks omitted).  Since key questions of material fact remain as to all identifications, probable cause cannot be determined on this motion. *See Frost*, 980 F.3d at 243 ("Probable cause is a

22

mixed question of law and fact." (quotation marks and alterations omitted)).  The same questions

of fact also preclude evaluation of arguable probable cause, which Defendants argue afford the

detectives qualified immunity.

Based on the evidence, a reasonable jury also could find that Defendants Cruger,

Martinez and Whitaker "misrepresented or falsified evidence, [or] that they have withheld

evidence or otherwise acted in bad faith" in the procurement of the indictment, rebutting the

presumption of probable cause.  Even without the grand jury transcript, a reasonable juror could

find that the indictment was procured through police misconduct, since all of the evidence

inculpating Plaintiff is alleged to be the product of misconduct.  *See De Lourdes Torres*, 47

N.E.3d at 761 ("plaintiff can . . . rebut the presumption of probable cause . . . by demonstrating

that the evidence of guilt relied upon by the defendant was so scant that the prosecution was

entirely baseless and maliciously instituted.").  Defendants' arguments to the contrary,

particularly regarding the A.D.A.'s independent determination to proceed with the case based on

her interviews and presence at the line-ups, underscore the issues of fact to be resolved at trial.

### 3.  Termination

Under New York law, "any termination of a criminal prosecution, such that the criminal

charges may not be brought again, qualifies as a favorable termination, so long as the

circumstances surrounding the termination are not inconsistent with the innocence of the

accused." *Lanning*, 908 F.3d at 27 (citation omitted).  There is no dispute that the state law

favorable termination standard is met.

Accordingly, the state malicious prosecution claims survive except as to Detective

Silverman.  Defendants' single argument as to the *respondeat superior* claim against the City

was premised on the dismissal of a state malicious prosecution claim, and thus, the *respondeat superior* claim also survives summary judgment.

### C.    Failure to Intervene

Defendants seek summary judgment on Count III, the failure to intervene claim against all individual Defendants.  They argue that Plaintiff has failed to adduce evidence that any conduct violated Plaintiff's constitutional rights, and that even had some right been violated, there is no evidence that there was a realistic opportunity to intervene nor that a reasonable person would know that the constitutional rights were being violated.

A police officer is liable when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *accord Ismael v. Charles*, No. 18 Civ. 3597, 2020 WL 4003291, at *12 (S.D.N.Y. July 15, 2020).  As discussed above, a reasonable jury could find from the evidence that Detectives Cruger, Martinez and Whitaker violated Plaintiff's constitutional rights, and that the violation would have been evident if police reports had not been falsified or forgone as alleged.  Considering all of the evidence, there are triable issues of fact as to whether each of the individual Defendants reasonably could have intervened in each other's alleged acts and the scope of the involvement of the detectives, bearing on the reasonable person inquiry.  "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'"  *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019) (citation omitted).  This includes Detective Silverman, as the evidence shows that Detective Silverman was involved in the investigation, possibly first suspecting Plaintiff and

taking down his alibi.  Defendants' motion for summary judgment on the failure to intervene claim is denied.

### D.    Qualified Immunity

Relying on federal law, Defendants argue that they are entitled to qualified immunity as a matter of law on the fair trial and malicious prosecution claims premised on the suggestive photo identifications and suppression of the Torres statement.  The argument is premature and must await the resolution of factual disputes.  Qualified immunity is addressed below only as to the surviving claims, the federal fair trial claim and state malicious prosecution claim.

Under federal law, the affirmative defense of qualified immunity is established by demonstrating that "(1) the right was not clearly established or (2) even if the right was clearly established, it was objectively reasonable for the officer to believe the conduct at issue was lawful."  *Elder v. McCarthy*, 967 F.3d 113, 131 (2d Cir. 2020) (quotation marks omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

"[T]he substantive law of [the State] governs the applicability of qualified immunity to [Plaintiff's] state law claims[.]"  *Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991) (citation omitted); *accord Ismael*, 2020 WL 4003291 at *9 n.6.  New York law provides government officials qualified immunity on state law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis.  *See Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006); *accord Rothman v. City of New York*, No. 19 Civ. 0225, 2020 WL 2139328, at *4 (S.D.N.Y. May 5, 2020).

25

At this stage, the Court is required to draw all reasonable inferences in favor of the Plaintiff. For both the denial of fair trial claim and malicious prosecution claim, Defendants argue that their conduct was objectively reasonable. However, these arguments rely on their version of events as to the investigation, including what occurred during the identification procedures, and that version of events is disputed. As discussed above, a reasonable jury could credit Plaintiff's version of what occurred in the photo identifications and what the detectives did to withhold information about the reliability of the identifications from the prosecutor. As to the Torres statement, Defendants' argument that a reasonable officer would not believe that Torres was an eyewitness to the crime relies on Torres' deposition testimony, but what the individual Defendants knew or did not know as to Torres' ability to see the shooter's face at the time of the investigation is in dispute. Accordingly, there are issues of fact that must be resolved before determining whether, for the federal qualified immunity defense, it was objectively reasonable for Defendants to believe their actions lawful, and as for the state qualified immunity defense, whether Defendants' actions were in bad faith or without a reasonable basis. *See Weaver v. Brenner*, 40 F.3d 527, 537 (2d Cir. 1994); *accord Bermudez*, 790 F.3d at 376 n.3.

With respect to the denial of fair trial claim, Defendants also argue that there is no clearly established precedent that the detectives' conduct as to the photo identifications was unconstitutional. Plaintiff's version of events would clearly violate his denial of right to fair trial at the time of the investigation. At the time of the alleged conduct, any reasonable official would have understood that eliciting identifications in the manner alleged by Plaintiff was unduly suggestive. *See United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (identifying prejudicial elements as use of a very small number of photographs, suggestive comments, and explaining that the "principal question" is whether Plaintiff's photo "so stood out from all of the

other photographs") (alterations and quotation marks omitted)); *Thai*, 29 F.3d at 807 ("A defendant has a due process right not to be the object of suggestive police identification procedures that create a very substantial likelihood of irreparable misidentification." (quoting *Concepcion*, 983 F.2d at 377)).  Further, any reasonable official would have understood at the time of the alleged conduct that fabricating police reports suggesting the identifications were, in fact, reliable and forwarding that information to the prosecutor violated Plaintiff's constitutional right to a fair trial.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (relying on case law from the late 1980s to hold that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); *Zahrey*, 221 F.3d at 355 (describing *Ricciuti* as having relied on "ample pre-1996 authority").  So too did the alleged burying of potentially exculpatory information -- including impeaching evidence as to the reliability of the testifying witnesses' identifications and other unreported identification procedures -- clearly violate constitutional rights at the time of the investigation. *See Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (identifying police officers' *Brady* obligations, explaining cases suggest that "police satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors").

Accordingly, Defendant's qualified immunity arguments require resolution of factual disputes by the jury and cannot be adjudicated now.

## V.   CONCLUSION[9]

Summary judgment is GRANTED as to (1) the § 1983 malicious prosecution claim, and (2) all claims against Detective Silverman, except the failure to intervene claim.  For clarity, the surviving claims are:

- Count Two, denial of a right to a fair trial against Defendants Whitaker, Cruger and Martinez;

- Count Three, failure to intervene, against Defendants Whitaker, Cruger, Martinez and Silverman;

- Count Seven, New York malicious prosecution, against Defendants Whitaker, Cruger and Martinez; and

- Count Ten, respondeat superior, against Defendant City of New York, for the state tort of malicious prosecution.

Per the Order at Dkt. No. 163, the parties are reminded to file their pre-motion letters proposing their *Daubert* motions within **ten days of the date** of this Opinion and Order.

The Clerk of Court is respectfully directed to dismiss Defendant Fortunato from the action, and close the motion at Docket No. 166.

Dated:  January 20, 2021
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court has considered all of the arguments raised by the parties; to the extent not specifically addressed, the arguments are either moot or without merit.