UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
        :
RICHARD ROSARIO,        :
        :
        Plaintiff,   :   18 Civ. 4023 (LGS)
        :
    -against-   :   OPINION AND ORDER
        :
CITY OF NEW YORK, et al.,    :
        :
        Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Richard Rosario seeks damages under 42 U.S.C. § 1983 from the City of New York (the "City") and certain New York City Police Department ("NYPD") detectives for his alleged wrongful conviction and imprisonment. Plaintiff moves to exclude portions of the opinions and testimony of Defendants' experts Steven A. Fayer, M.D., and DeAnsin G. Parker, Ph.D., pursuant to Federal Rules of Evidence 402, 403 and 702. Defendants move to preclude the opinions and testimony of Plaintiff's experts Jennifer Dysart, Ph.D., and Bhushan Agharkar, M.D., pursuant to Federal Rule of Evidence 702. For the following reasons, Plaintiff's motion is granted in part and Defendants' motion is denied.

    I.    BACKGROUND

Familiarity with the underlying allegations and procedural history is assumed. *See Rosario v. City of N.Y.*, No. 18 Civ. 4023, 2019 WL 4450685, at *1-3 (S.D.N.Y. Sept. 16, 2019); *Rosario v. City of N.Y.*, No. 18 Civ. 4023, 2021 WL 199342, at *1-3 (S.D.N.Y. Jan. 20, 2021). Following the partial grant of Defendants' motion for summary judgment, Plaintiff's remaining claims are for (1) denial of a right to a fair trial, (2) failure to intervene and (3) malicious

prosecution against certain NYPD detectives and (4) respondeat superior liability for malicious prosecution against the City. *Rosario*, 2021 WL 199342, at *14.

Plaintiff challenges portions of the opinions and testimony of Defendants' damages experts, psychiatrist Steven A. Fayer, M.D., and neuropsychologist DeAnsin G. Parker, Ph.D., that relate to Antisocial Personality Disorder ("ASPD"). Both Fayer and Parker opine that Plaintiff has several psychological conditions, including ASPD, that are not connected to Plaintiff's lengthy imprisonment.

Defendants challenge the qualifications, opinion and testimony of Plaintiff's liability expert, Jennifer Dysart, Ph.D. Dysart is a tenured professor of psychology, holds a Ph.D. in social psychology and has co-authored numerous peer-reviewed articles, book chapters and a treatise on eyewitness identification. Dysart opines that three independent witnesses were unlikely to have selected Plaintiff from hundreds of photographs without outside influence during the NYPD's investigation of the crime underlying Plaintiff's alleged wrongful conviction.

Defendants also challenge the opinion and testimony of Plaintiff's damages expert, neurologist and psychiatrist, Bhushan Agharkar, M.D. Agharkar opines that Plaintiff suffers from post-traumatic stress disorder ("PTSD") and an acquired brain injury as a result of his imprisonment.

**II.     STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles

and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts play a "'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549, 2021 WL 509988, at *6 (S.D.N.Y. Feb. 11, 2021). "[A] slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *United States v. Jones*, 965 F.3d 149, 160 (2d Cir. 2020). The party proffering the expert bears the burden of establishing Rule 702's admissibility requirements by a preponderance of the evidence. *Jones*, 965 F.3d at 161.

III. DISCUSSION

A. Opinion and Testimony of Steven A. Fayer, M.D.

Defendants retained Fayer as a damages expert to conduct a comprehensive psychiatric evaluation and detailed mental status examination of Plaintiff. Fayer opines that Plaintiff "presents with an [ASPD] (F60.2)," "manifests traits and features of Cluster B Personality Disorder," "manifests bipolar spectrum disorder" and "does not manifest posttraumatic stress disorder." Fayer also opines that he is "dubious of a diagnosis of traumatic brain injury as a result of fights that [Plaintiff] had when he was in prison." Plaintiff moves to exclude the

3

portions of Fayer's opinion and testimony related to ASPD, arguing that (1) Fayer's opinion and testimony are unreliable, (2) they are irrelevant and (3) their prejudicial effect substantially outweighs their probative value. The motion is granted.

### 1. Reliability of Fayer's Opinion

Fayer's opinion and testimony as to ASPD are unreliable. "[A]n expert's methodology must be reliable at every step of the way." *In re Mirena*, 982 F.3d at 123. Fayer bases his diagnoses of mental disorders on the diagnostic criteria set out in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders -- Fifth Edition ("DSM-5"). Fayer considers the DSM-5 the gold standard reference for psychiatrists and believes it must be followed to diagnose mental health disorders accurately or reliably. The DSM-5 requires four criteria to diagnose ASPD. The third criterion states, "the individual . . . must have had a history of some symptoms of conduct disorder before age 15 years." In diagnosing Plaintiff with ASPD, Fayer's report makes no mention of this criterion. Nor does Fayer address any conduct by Plaintiff prior to age fifteen. When asked about this omission in his deposition, Fayer testified that he "disagree[d] with" the DSM-5's third criterion for diagnosing ASPD and stated, "if you are having several of these other criteria and if it manifested at 14 or 16, I would still think in my opinion it is [ASPD]." Fayer further testified that the DSM-5 "makes a little mistake" with the third criterion for ASPD. Fayer's report is silent on his disagreement with the third criterion for diagnosing ASPD and fails to justify deviating from the DSM-5. Defendants' argument that Fayer "reliably followed the diagnostic criteria delineated in the DSM-[5]" is unsubstantiated. Due to the large analytical gap between the DSM-5 criteria and Fayer's diagnosis, Fayer's opinion and testimony as to ASPD are unreliable. *See El Ansari v. Graham*, No. 17 Civ. 3963, 2019 WL 3526714, at *4 (S.D.N.Y. Aug. 2, 2019) (finding diagnosis of a psychological disorder

4

"unreliable because of the analytical gaps between the D[SM]-[5] guidelines that [the expert] purported to follow and [the expert's] diagnosis"). To be clear, Fayer's opinion and testimony are not unreliable because he deviated from the DSM-5's diagnostic criteria, but because he failed to provide a cogent explanation or justification for doing so.

Defendants argue that because the DSM-5's first criterion for diagnosing ASPD encompasses conduct "occurring since age 15," there is no age cutoff. Defendants' focus on the first diagnostic criterion for ASPD is misplaced. The first criterion provides there must be "[a] pervasive pattern of disregard for and violation of the rights of others, occurring since age 15 years[.]" But consideration of this criterion, related to conduct *since* age fifteen, does not mean Fayer applied the third criterion, which relates to conduct *before* age fifteen.

Although Plaintiff in his reply memorandum seeks to exclude Fayer's opinions as to "any personality disorder," Plaintiff's specific arguments are directed only at the ASPD opinion. Because Fayer's ASPD opinion is excluded as unreliable, Plaintiff's remaining arguments challenging Fayer's ASPD opinion are not addressed. For clarity, Fayer's opinion that Plaintiff suffers from ASPD is excluded, but any other of his opinions that Defendant chooses to offer are not.

### B. Opinion and Testimony of DeAnsin G. Parker, Ph.D.

Defendants retained Parker as a damages expert to "assess the possibility that [Plaintiff] suffered a Traumatic Brain Injury (TBI) and suffers with Post Traumatic Stress Syndrome (PTSD) due to incarceration during his 20 year prison tenure." Parker declined to endorse Plaintiff's claims that he has a traumatic brain injury and PTSD. Parker opined that Plaintiff has "Attention-Deficit/Hyperactive Disorder, Combined Presentation," "currently presents with [ASPD]," "also presents with a Paranoid Personality Disorder," "evidences a Somatic Symptom

Disorder," "evidences a serious Mood Disorder which seems to be Bipolar in nature," "manifests traits and features of Cluster B Personality Disorder" and "manifests bipolar spectrum disorder." Plaintiff moves to exclude portions of Parker's opinion and testimony related to ASPD, arguing that Parker's opinion and testimony are (1) unreliable, (2) irrelevant and (3) that their prejudicial effect substantially outweighs their probative value. The motion is denied.

### 1. Reliability of Parker's Opinion

Parker's opinion and testimony as to ASPD are reliable. Parker adopted and addressed the DSM-5's four diagnostic criteria for this condition, concluding that Plaintiff's conduct "since before age 15" supports a diagnosis of ASPD.

Plaintiff takes issue with Parker's analysis of the third criterion -- conduct before age fifteen. Parker's report states that Plaintiff "has a pervasive pattern of disregard for and violation of the rights others since before age 15." Plaintiff argues that this finding is unreliable because Parker did not have any specific evidence that Plaintiff had engaged in any relevant conduct before age fifteen. But Parker testified in her deposition that she had an adequate basis for her conclusion, including that Plaintiff had dropped out of school around the age of fourteen or fifteen because, up to then, he had been getting into fights and trouble all the time.

The conflicting opinion of Plaintiff's damages expert, Agharkar, does not undercut the reliability of Parker's opinion. Plaintiff's dispute with the reliability of Parker's opinion ultimately rests on the sufficiency of the underlying facts and evidence. Such disputes are appropriate for resolution through "[v]igorous cross-examination [and] presentation of contrary evidence" before the jury. *Daubert*, 509 U.S. at 596.

## 2. Relevance and Probative Value Versus Prejudice and Parker's Opinion

Plaintiff contends that Parker's personality disorder diagnoses are irrelevant and thus barred by Rule 402 because they would not preclude or be relevant to a diagnosis of PTSD. This argument is incorrect. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Defendants present the personality disorder diagnoses to provide "the jury with another explanation for plaintiff's" conduct -- i.e., to show that conditions other than PTSD caused his conduct while incarcerated. Parker's diagnoses are relevant to the issues of causation and damages.

Plaintiff argues that the ASPD diagnosis should be precluded under Rule 403 because the prejudicial effect of the diagnosis outweighs its probative value. Plaintiff asserts prejudice because (1) there is no indication how the diagnosis related to damages, (2) ASPD is commonly associated with lying, disregarding the rights of others and failing to conform to social norms and (3) Parker did not appropriately consider Plaintiff's circumstances. Only the second of these arguments relates to prejudice, and it is unavailing. Plaintiff has put his mental health at issue by seeking damages for injury to his mental health. As a result, the opinions and testimony of qualified mental health experts are highly probative. Parker's opinion offers an alternative theory for the cause of Plaintiff's alleged damages. In this context, any unfair prejudice from unflattering descriptions of Plaintiff is outweighed by the jury's need to determine the cause and extent of his injury. Even Plaintiff's own mental health expert, Agharkar, writes unflattering descriptions of Plaintiff's symptoms. The first and third arguments relate to relevance and reliability respectively, and they are rejected for the reasons discussed above.

The cases Plaintiff cites to support excluding Parker's ASPD opinion are inapt; none of them arise in the context of dueling expert opinions about a plaintiff's mental health where the plaintiff seeks damages based on his mental health condition. *See, e.g.*, *Tchatat v. City of N.Y.*, 315 F.R.D. 441, 445-47 (S.D.N.Y. 2016) (excluding expert's mental health report where expert offered only "tentative conclusions" and purpose of report was to undermine plaintiff's credibility); *Jackson v. City of White Plains*, No. 05 Civ. 0491, 2016 WL 234855, at *2-3 (S.D.N.Y. Jan. 19, 2016) (excluding expert's mental health report where it was offered as evidence of plaintiff's likelihood to use violence).

Plaintiff also attacks the sufficiency of Parker's report, arguing that because it is based on incorrect and incomplete information, it is prejudicial. But, as noted above, because the report is reliable, arguments as to the sufficiency of the analysis are best suited for resolution by the jury. Parker's ASPD opinion is admissible under Rule 403.

### C. Opinion and Testimony of Jennifer Dysart, Ph.D.

Plaintiff retained Dysart as a liability expert to provide an opinion "regarding the eyewitness identification evidence relating to" Plaintiff's conviction. Dysart opines that "the likelihood of the three purported eyewitnesses separately and independently identifying Mr. Rosario from among hundreds of photographs in mugshot books is extraordinarily low, whether he is innocent or guilty." Dysart also opines that if the police used "improperly suggestive techniques," then "the initial, tainted identification process [is] the most likely source of the witnesses' subsequent identifications" of Plaintiff. Defendants move to exclude Dysart's opinion and testimony, arguing that (1) she is not qualified to testify about police practices, (2) her opinion is unreliable and (3) her opinion will not assist the jury. The motion is denied.

### 1. Dysart's Qualifications

Dysart is qualified to testify on police practices related to eyewitness identification. Dysart holds a Ph.D. in Social Psychology, and she is a tenured professor of psychology at John Jay College of Criminal Justice. She is the co-author of a treatise titled *Eyewitness Testimony: Civil and Criminal* and a litany of publications on eyewitness testimony, including an article on eyewitness accuracy rates in police show-up and lineup presentations. She has presented to police officers on eyewitness identification throughout the United States and in other countries. Dysart also writes that her opinion is based on her "study of police identification procedures across the country." Dysart is well qualified to testify about police practices relating to eyewitness identification.

Defendants argue that Dysart can testify about eyewitness identification but not police practices. Defendants' argument is based on the faulty premise that police practices have nothing to do with eyewitness identification. Dysart's report and experience make clear that a critical focus of her field is the "study of police identification procedures." Her expertise directly informs police practices when she presents to police departments and at police conferences.

Defendants also argue that Dysart is not qualified because she is not an expert on the NYPD's policies at the time of Plaintiff's identification. This argument is unpersuasive because Dysart's opinion is not specific to NYPD practices or policies. For example, her report addresses the proper use of photobooks, photo arrays and lineup fillers as identification procedures in general and in regard to what allegedly occurred in this case. She does not purport to be an expert on NYPD police practices in particular.

### 2. Reliability of Dysart's Opinion

Defendants argue that Dysart's opinions are unreliable for three reasons. These arguments are unavailing.

First, Dysart assumes for "certain aspects of [her] analysis and opinions" that Plaintiff is innocent. Defendants argue that this is an unreasonable assumption. "[E]xpert testimony should be excluded . . . if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith . . . ." *Electra v. 59 Murray Enters.*, 987 F.3d 233, 254 (2d Cir. 2021) (internal quotation marks omitted). This assumption does not make Dysart's opinions either unrealistic or contradictory because she: (1) notes that her main conclusion holds "whether [Plaintiff] is innocent or guilty"; (2) assigns the witnesses' identifications degrees of likelihood based on an assumption of innocence or guilt; and (3) notes that her assumption of innocence is based on a request from Plaintiff and her understanding of testimony from numerous witnesses. Nothing about the assumption suggests bad faith.

Second, Defendants argue that because Plaintiff requested Dysart to assume his innocence for portions of her analysis, her analysis impermissibly rests on a determination that Plaintiff credibly professed his innocence. This argument is unconvincing because experts may provide opinions tailored to different factual scenarios that the jury may consider. Dysart's analysis plainly states that she "cannot make any credibility determinations" and that she does not know "whether [Plaintiff] is innocent or guilty." Nor do Defendants identify any part of Dysart's report in which she purports to weigh the evidence to conclude that Plaintiff in fact is innocent.

Third, Defendants fault Dysart's opinion for not citing scientific studies or empirical evidence in support of particular statements. This argument is unpersuasive because the

challenged statements address the current consensus among eyewitness experts and are derived from Dysart's specialized experience. *See Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017) ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called general truths derived from . . . specialized experience." (internal quotation marks omitted)). Defendants offer no other basis for finding Dysart's opinion unscientific; they neither contest the quality of her methods nor contend her uncited statements are incorrect.

### 3. Usefulness of Dysart's Opinion for the Jury

Defendants briefly argue that Dysart's opinion (1) usurps the role of the court and invades the ken of the jury, (2) needlessly regurgitates testimony in laying out the facts relevant to her opinion, (3) is unnecessary because a jury could apply common sense to decide the issues addressed and (4) is irrelevant. These arguments lack merit.

First, Dysart's opinion does not take on the role of judge and jury. Defendants argue that a probabilistic statement in Dysart's conclusion -- that absent an "improper suggestion . . . it would have been highly unlikely for all three witnesses to independently choose [Plaintiff's photo] from hundreds of photographs of young, Hispanic men" -- constitutes a legal conclusion or factual determination. This statement is an opinion based on Dysart's expertise in eyewitness identification and is precisely the kind of opinion that is not intuitive and may be helpful to the jury.

Second, Dysart's statement of the facts relevant to her opinion is both helpful and necessary. Dysart is required by the Federal Rules of Civil Procedure to set out the "facts or data" forming the basis of her opinion. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). To assess the reliability of Dysart's opinion, it is necessary to know the facts and assumptions on which it rests.

11

Third, Dysart's opinion is not simply common sense. The opinion explains the impact of fear and stress on eyewitness identification, particularly because the science of eyewitness identification often runs counter to everyday assumptions regarding the accuracy of perception and reliability of memory. "A lay juror would not know . . . about the likely impact on perception of extreme stress and weapon focus." *United States v. Nolan*, 956 F.3d 71, 82 (2d Cir. 2020).

Fourth, Dysart's opinion is relevant. Defendants challenge the relevancy of Dysart's mention of DNA exonerations, lineup filler bias and show-up identification procedures. Dysart's reference to DNA exonerations provides important background about the propensity for mistaken eyewitness identification. Dysart's opinion about lineup filler is relevant to understanding what occurred in this case. Even if the lineup is not directly a basis for liability, discussion of the lineup is important for jurors to understand how it could be possible that multiple witnesses identified Plaintiff in various contexts. For the same reasons, the show-up identification procedure section of the opinion is admissible. Finally, at least some portions of Dysart's supplemental report remain relevant, even though it is a response to Defendants' expert who has since been withdrawn. For example, Defendants challenge Dysart's initial report for failing to provide citations regarding the state of knowledge on post-identification feedback in 1996, and Dysart's supplemental report discusses this issue while citing supporting materials.

**D.      Opinion and Testimony of Bhushan Agharkar, M.D.**

Plaintiff retained Agharkar to "assess the existence and extent of [Plaintiff's] psychiatric difficulties as it relates to possible damages." Agharkar opines that "the traumas that [Plaintiff] endured as a result of his conviction and incarceration have caused him to suffer from [PTSD]" and that Plaintiff "exhibits signs and symptoms consistent with acquired brain injury secondary

to blows to the head received during his incarceration." Agharkar further opines that Plaintiff's disorders "will cause ongoing debilitating effects that will keep him from living a full life," that his "condition cannot be cured and will require lifelong psychiatric intervention" and that "the etiology and symptoms of [Plaintiff's] PTSD make him highly resistant to the type of therapy most likely to be effective in alleviating his distress." Defendants move to exclude Agharkar's opinion and testimony arguing that it is not based on reliable data or methodology, that it will not assist the jury and that it will usurp the Court's role. The motion is denied.

### 1. Reliability of Agharkar's Opinion

Defendants argue Agharkar's opinion is unreliable because it: (1) contains no differential diagnosis of Plaintiff's mild neurocognitive disorder; (2) contains no differential diagnosis as to Plaintiff's panic disorder and does not consider all of the relevant DSM-5 criteria for that condition; and (3) does not consider all of the diagnostic criteria for a PTSD diagnosis. These arguments lack merit.

First, Defendants argue Agharkar's opinion is unreliable because it fails to conduct a differential diagnosis for the mild neurocognitive disorder. A differential diagnosis is "a patient-specific process of ruling out potential causes of an illness as unlikely, until one cause remains." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 251 (2d Cir. 2005). Agharkar conducted a differential diagnosis by considering numerous potential causes and conditions and ruling out some of them, including those identified by Defendants' own experts. Agharkar also relied on testing by neuropsychologist Robert D. Shaffer, Ph.D., who conducted his own differential diagnosis. Shaffer's supplemental report notes that he ruled out "an inborn (constitutional) variation of abilities" and considered certain aspects of Plaintiff's condition to result from "an acquired condition." Shaffer also clarified why Plaintiff's condition is consistent with "static

blows to the head" and not "acceleration/deceleration injuries." Reading Agharkar's report in its entirety, it is plain that he considered and eliminated alternate causes of Plaintiff's injury before arriving at his diagnoses.

Defendants argue that Agharkar's differential diagnosis should have explicitly ruled out Plaintiff's substance abuse as a cause for mild neurocognitive disorder. Defendants and their psychological experts offer no meaningful scientific basis linking substance use to Plaintiff's symptoms. Although Defendants' expert Fayer briefly mentions substance use in connection with traumatic brain injury, he fails to explain how Plaintiff's substance use relates to Plaintiff's mental health.

Second, Defendants contend that Agharkar's opinion as to panic disorder is unreliable because he did not conduct a differential diagnosis and consider all the diagnostic criteria for panic disorder. Defendants' argument is beside the point because Agharkar did not diagnose Plaintiff with panic disorder.

Third, Defendants argue that Agharkar's opinion as to PTSD is conclusory because it does not consider the DSM-5's second, third, seventh and eighth criteria for PTSD. An expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Defendants' argument appears to be that Agharkar did not explicitly walk through each of the eight diagnostic criteria for PTSD provided in the DSM-5. None of the expert psychologists in this case, including Defendants' experts, performed such a formalistic enumeration of the DSM-5's diagnostic criteria. And the criteria Defendants identify are discussed in Agharkar's report. As to the second criterion, intrusion symptoms, Agharkar discusses several examples of Plaintiff experiencing such symptoms. As to the third criterion,

avoidance, Agharkar mentions Plaintiff's avoidance behavior multiple times. As to the seventh criterion, social and occupational impairment, Agharkar's report specifically discusses Plaintiff's ability to work, conduct relationships, and complete goals. As to the eighth criterion, consideration of substance use and other conditions, Agharkar conducted a differential diagnosis, as discussed above. Agharkar's PTSD opinion is not unreliable for failure to consider the relevant diagnostic factors.

### 2. Usefulness of Agharkar's Opinion for the Jury

First, Defendants argue that too much of the report focuses on Plaintiff's history and that Agharkar need not opine on posturing, hypervigilance, social isolation and irritability because any jury can understand those issues. To the contrary, Agharkar is required to provide an overview of the facts he relied on in forming his opinion. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). It is well within his purview to discuss the symptoms he considered as they relate to Plaintiff's mental health.

Second, Defendants identify a single alleged discrepancy between information in Agharkar's report and deposition testimony by another individual. Defendants do not explain how this purported discrepancy materially impacted Agharkar's opinion. The purported discrepancy goes to the sufficiency of the facts underlying Agharkar's opinion, an issue that Defendants can address on cross-examination.

Finally, Defendants seek to exclude Agharkar's supplemental report, arguing that it is *ipse dixit* and usurps the Court's role. These arguments are unfounded. Agharkar's supplemental report is primarily a rebuttal to Defendants' expert reports. Defendants do not challenge the report as an improper or untimely rebuttal. *See generally* Fed. R. Civ. P. 26(a)(2)(D)(ii) (setting restrictions on evidence offered in rebuttal). In rebuttal, Agharkar

15

properly offers counter-arguments to Defendants' experts and questions the quality of their analysis. Contrary to Defendants' arguments, that some of Agharkar's counter-arguments point to common sense issues, suggest new conclusions, and use the word "reliable" is no basis for exclusion.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to exclude the testimony of Steven A. Fayer is GRANTED IN PART -- his opinion and testimony on ASPD are excluded as unreliable; Plaintiff's motion to exclude the testimony of DeAnsin G. Parker is DENIED; Defendants' motion to exclude the testimony of Jennifer Dysart is DENIED; and Defendants' motion to exclude the testimony of Bhushan Agharkar is DENIED.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 206 and 209.

Dated: May 13, 2021
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

16