UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD ROSARIO,<br><br>     Plaintiff,<br><br> -against-<br><br>THE CITY OF NEW YORK, *et al.*,<br><br>     Defendants. | 18-cv-4023 (LGS) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OMNIBUS MOTION IN LIMINE**

**Preliminary Statement**

Defendants' omnibus motion *in limine* appears to be largely a stock motion typically filed by City lawyers in run-of-the-mill civil rights cases. It consistently ignores the specific relevant context of this wrongful conviction suit—including, most notably, the Court's prior guidance on many of the issues raised. For the reasons stated below, Defendants' motion should be denied.

**I.     The parties should be permitted to refer to defense counsel as "City attorneys" and Defendant City of New York should remain on the caption.**

The City of New York has been a named Defendant throughout this litigation. With the case now heading into trial, the City remains as a Defendant and is represented by the Corporation Counsel of the City of New York (as are the individual Defendants, who are being sued for their misconduct while working for the NYPD, an agency of the City). Not only is reference to defense counsel as "City attorneys," and inclusion of the City of New York in the caption accurate and appropriate, *removing* reference to the City would be inaccurate and misleading. *See e.g., Joseph v. Deluna*, 15-CV-5602 (KMW), 2018 WL 5095668, at *3 (S.D.N.Y. Oct. 19, 2018) (in civil rights case, denying motion to remove the City of New York from the caption and to preclude plaintiff from referring to defense counsel as City attorneys "because the City is a defendant in this action."); *Adams v. City of New York*, 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014) ("flatly reject[ing]" same requests where City remained a defendant); *Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL 3125314, at *7 (S.D.N.Y. Oct. 25, 2007) (permitting civil rights plaintiff to refer to defense counsel as Corporation Counsel *even where* the City had been dismissed as a defendant).[1] The Court should permit defense counsel to be identified as "City attorneys" and should leave the City of New York in the caption.

---

[1] In three of the four cases Defendants cite in support of their arguments that Plaintiff should be precluded from referring to defense counsel as "City attorneys" and that the City of New York should be removed from the caption, *the City of New York had been dismissed from the action prior to trial*. *Soto v. City of New York*, No. 13 CV 8474-

1

Plaintiff is not seeking to introduce any reference to indemnification at trial unless Defendants open the door to that topic. *See, e.g., Dallas v. Goldberg*, No. 95 CIV. 9076(LTS) (RLE), 2002 WL 1013291, at *3–5 (S.D.N.Y. May 20, 2002).

**II.   There is no basis to preclude Plaintiff from offering evidence concerning the New York City Police Department's Patrol Guide, along with any policies, procedures, and trainings.**

Astonishingly, Defendants move to exclude "any evidence…about any NYPD Patrol Guide provision, training, or policy" as allegedly irrelevant—without mentioning, let alone attempting to distinguish, this Court's prior decision expressly noting the relevance of such evidence to Plaintiff's claims. On summary judgment, Defendants argued Plaintiff could not prove their misconduct was intentional.[2] This Court disagreed, expressly holding that "a reasonable jury could find that Detectives Cruger, Martinez and Whitaker acted intentionally" and specifically that their "[i]ntentionality may be deduced based on their pattern of deviating from what they described as typical practice." D.E. 191 at 14.[3] This Court even gave a number of specific examples of such deviations, including: "Detective Martinez's creating false police reports regarding the identification procedures used; Detective Cruger's failure to provide any details regarding the Sanchez identification; as to at least Detectives Martinez and Whitaker, the failure to record witnesses' inability to identify Plaintiff; and the individual Defendants' failure to probe Plaintiff's detailed alibi." D.E. 191 at 14–15 (internal citation omitted).

---

LTS-JLC, 2017 WL 892338 (S.D.N.Y. March 6, 2017); *Nunez v. Diedrick*, No. 14-cv-4182 (RJS), 2017 WL 4350572, at *3 (S.D.N.Y. June 12, 2017); *Mohr v. City of New York*, No. 12 Civ. 00163(LGS), 2013 WL 5988948 (S.D.N.Y. Nov. 12, 2013).

[2] Although the Court has not yet addressed what required elements will be included in the jury instructions, at summary judgment it noted "[a] civil *Brady* claim may require a showing that the withholding of exculpatory evidence was intentional." D.E. 191 at 14 (citing *Bellamy v. City of New York*, 914 F.3d 727, 751 n. 23 (2d Cir. 2019)). Plaintiff's malicious prosecution claim requires evidence of actual malice. D.E. 191 at 22.

[3] Citations to page numbers are to ECF pagination, except for citations to page numbers from transcripts, which are to original transcript pagination.

2

This Court's ruling that such evidence is relevant tracks binding Second Circuit authority. For example, this Court noted that in *Dufort v. City of New York*, 874 F.3d 338, 349 (2d Cir. 2017), the Second Circuit highlighted "Defendants' unusual decision to depart from normal practice and not contemporaneously document their initial interview" as circumstantial evidence in support of Plaintiff's claim that Defendants engaged in misconduct. *See* D.E. 191 at 15. Similarly, in *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017), the Second Circuit found that the district court properly admitted such evidence in a § 1983 wrongful conviction trial, explaining that evidence of defendants' persistent "departures from…reasonable procedures" helps the jury evaluate if the officer's actions "were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id.* at 580 (internal citations omitted); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013) (holding at § 1983 wrongful conviction trial district court properly permitted expert to testify "in some detail about reasonable practices for police investigations" that "tended to show that the errors in defendants' handling of the investigation were so severe and numerous as to support an inference of deliberate wrongdoing"); *Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (finding reversible error where a district court excluded expert testimony that would have "assist[ed] the trier of fact in determining whether [a defendant's] conduct deviated so far from institutional norms that the jury could conclude that it was reckless or deliberately indifferent to [a plaintiff's] constitutional rights").

In addition, for Plaintiff's malicious prosecution claim, he must rebut the presumption of probable cause created by the grand jury indictment, which may be done through "evidence of various wrongful acts on the part of police." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). This includes evidence "that the conduct of the police deviated so egregiously from

3

acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures." *Vazquez v. City of New York*, No. 10-cv-6277(JMF), 2014 WL 4388497, at *9 (S.D.N.Y. Sept. 5, 2014) (internal citation omitted).

Defendants utterly fail to address either this Court's prior ruling or that binding, on-point authority. Defendants do not cite a single contrary case, likely because they cannot. Instead, they merely argue that "a violation of an agency rule is not equal to…a violation of plaintiff's constitutional rights." D.E. 258 at 9. But evidence need not independently establish a constitutional violation to be relevant. Nor will this evidence mislead or confuse the jury or waste time, as the Defendants contend. Plaintiff will not argue that mere violation of NYPD policies equates to a constitutional violation, and presumably the Court's instructions will make clear the high burden Plaintiff must meet to establish his claims. Rather, Plaintiff will argue this evidence is relevant to Defendants' state of mind and credibility, as well as to rebut the presumption of probable cause. While the presentation of such evidence may make the jury more likely to conclude that the Defendants acted deliberately, there is nothing "misleading" about this type of implication. Moreover, the probative value of this evidence outweighs any risk of confusion or misperception. *See United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012), *as amended* (Sept. 28, 2012) ("Rule 403 favors admissibility: evidence is only excluded when its probative value is substantially outweighed by the prejudice of jury confusion.").

**III.    The Court should deny Defendants' motion to preclude past acts evidence as moot, with leave to renew if this issue is raised at trial.**

Plaintiff has not indicated any intent to introduce evidence of the individual Defendants' past acts, and Defendants have not identified any particular evidence along these lines that they are seeking to exclude. The Court should not pass on the admissibility of such hypothetical evidence now, in the total absence of any contextualizing information. *See, e.g., Scoma v. City of*

*New York*, No. 16CV6693KAMSJB, 2021 WL 1784385, at *12 (E.D.N.Y. May 4, 2021) (denying as moot motion to preclude defendants' disciplinary history or prior civil rights lawsuits brought against defendants where defendants failed to specify any particular examples of such evidence and plaintiff represented he did not intend to introduce any such evidence); *Adams v. City of New York*, 993 F.Supp.2d 306, 329 (E.D.N.Y. 2014) (same). Should Plaintiff seek to introduce any such evidence at trial, counsel will raise the issue in advance to permit the Court to address any disputes then.

**IV. Plaintiff should be permitted to introduce evidence about other instances of police misconduct and other wrongful convictions to the extent it is relevant.**

It is unclear exactly what evidence or argument Defendants are seeking to exclude. Plaintiff does not intend to refer specifically to the Central Park jogger case and certainly will not ask the jury to "send a message." Nor will Plaintiff's counsel present argument to the jury that will transform counsel into witnesses or improperly distort the evidence to mislead the jury, and there is no need for the Court to issue an order requiring Plaintiff's counsel to comply with the ordinary rules of evidence and attorney conduct that govern all counsel at trial. However, as the Court has already ruled in rejecting Defendants' challenge to Plaintiff's expert witness Jennifer Dysart, Ph.D., evidence concerning the existence of DNA exonerations and lessons learned from them is relevant and admissible at trial here. D.E. 229 at 12. To the extent Defendants are seeking again to exclude the same or similar evidence, that request should be rejected.

**V. Defendants' failure to investigate Plaintiff's alibi is relevant and admissible.**

Plaintiff has not—and will not—argue that Defendants' failure to investigate is an independent constitutional violation. But that in no way makes evidence of the failure to investigate irrelevant or excludable, as Defendants claim. To the contrary, this Court has already ruled that "the individual Defendants' failure to probe Plaintiff's detailed alibi" is relevant

5

evidence that they engaged in intentional misconduct, D.E. 191 at 14–15. Yet again, Defendants simply ignore that prior on-point ruling from the Court.

It is undisputed that when Plaintiff was first questioned with respect to this case, he provided a detailed, specific alibi—that he had been in Florida at the time the murder was committed in the Bronx—with corroborating witnesses. Although both Defendant Silverman and Defendant Martinez admit, as a matter of police practice, this alibi had to be followed up on, it is undisputed the NYPD did not investigate the alibi. D.E. 177-1 at 4; D.E. 177-5 (Martinez Dep.) at 238:10–16; D.E. 177-8 (Silverman Dep.) at 147:11–148:18; D.E. 177-6 (Whitaker Dep.) at 136:10–17; D.E. 182 at 36–37. Defendants' inconsistent explanations for why this alibi was never investigated are compelling evidence relevant to the jury's evaluation of their credibility and intent. For example, Martinez testified there was no legitimate reason not to investigate an alibi and that if Rosario's alibi was confirmed there would not have been probable cause to arrest him, D.E. 177-5 (Martinez Dep.) at 94:13–95:21, 366:13–20, 381:25–382:11, but, although he was the second-detective-in-charge of the case, claimed he never learned about the alibi until 2016 when it was featured in a *Dateline* special, *id.* at 11:5–12:8, 62:13–22, 238:10–16; D.E. 177-7 (Cruger Dep.) 26:19–27:5, 168:16–25. By contrast, Whitaker, the lead detective, admitted he would have known about the alibi, D.E. 177-6 (Whitaker Dep.) at 138:7–139:6, but claimed he was not required to investigate it, *id.* at 130:12–18, and that he decided not to investigate in consultation with other detectives and supervisors, *id.* at 136:10–17.

In addition, this presumption of probable cause may be rebutted through "evidence of various wrongful acts on the part of police," *McClellan*, 439 F.3d at 145, including evidence police "failed to make further inquiry when a reasonable person would have done so," *Haynes v. City of New York*, 29 A.D. 3d 521, 523 (2d Dep't 2006) (cleaned up), or through evidence "that

6

the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures,'" *Vazquez*, 2014 WL 4388497, at *9 (internal citation omitted). Evidence of Defendants' admitted failure to follow up on Plaintiff's alibi could satisfy either of those tests, and therefore is directly relevant.

> VI. **Testimony from alibi witnesses is admissible as evidence of innocence and will not be unnecessarily cumulative or waste time.**

The testimony of Plaintiff's alibi witnesses—direct evidence of Plaintiff's innocence—is both highly relevant to Plaintiff's civil rights claims and admissible at trial. *See Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) (finding that "evidence of [Plaintiffs'] innocence provides an important backdrop for their [fair trial and malicious prosecution] claims at trial."). *See also Good v. Curtis*, 601 F.3d 393, 398–99 (5th Cir. 2010) (describing how plaintiff's innocence is relevant to § 1983 wrongful conviction claim related to suggestive identification); *Costanich v. Dept. of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (holding innocence is a "circumstantial method[] of proving deliberate falsification."). Indeed, this Court expressly ruled that the testimony of Plaintiff's expert Jennifer Dysart—which will include her opinion that if Mr. Rosario is innocent, it is nearly impossible that there could be three independent identifications of Mr. Rosario as the perpetrator from mugshot books—is admissible, demonstrating the relevance of Mr. Rosario's innocence to his liability claims. *See* D.E. 229 at 8–12. Defendants' persistent claim that Plaintiff's innocence is not relevant to this matter,[4] and utter failure to even acknowledge, much less attempt to distinguish, binding Second Circuit precedent and substantial case law from other circuits to the contrary, is troubling.

---

[4] This Court rejected a similar argument made by Defendants in opposing Plaintiff's request to take additional depositions. Defendants argued that the additional depositions would be used to develop evidence of Plaintiff's innocence and therefore would not be relevant. D.E. 97 at 3 ("Plaintiff's innocence is not the focus of this civil action.") ("This is not a criminal matter and the Court should not allow plaintiff to conflate evidence of his

Moreover, the very number of people who can credibly vouch for Plaintiff's presence in Florida—people from different walks of life, with different specific reasons to remember that time period and different ways of knowing Plaintiff—is what makes Plaintiff's alibi so compelling. *See, e.g., Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 251 (S.D.N.Y. 2002) (holding trial court erred in excluding testimony of additional alibi witnesses who "could have potentially bolstered" the alibi evidence presented), *aff'd,* 66 F. App'x 277 (2d Cir. 2003); *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007) (holding that testimony from multiple eyewitnesses was not needlessly cumulative because the testimonies were not identical and served to bolster each other). Defendants' citation to a 2005 state court order addressing cumulativeness is disingenuous and unpersuasive, as Plaintiff's conviction was ultimately vacated based on a stipulation from the Bronx District Attorney's Office and a ruling from the court *directly to the contrary*: Rosario's lawyer was ineffective for failing to present additional alibi witnesses, and this evidence would have made a difference to the outcome at trial.

Finally, Plaintiff has no interest in wasting the jury's time with cumulative evidence, but there is no basis to bar Plaintiff from presenting limited alibi testimony from multiple witnesses.[5] It is Defendants who seek to argue Plaintiff's guilt; they can hardly complain, then, when that stance requires the admission of additional evidence of innocence. *Parish v. City of Elkhart*, 702 F.3d 997, 999–1003 (7th Cir. 2012) (holding district court committed reversible error by excluding evidence of innocence under Rule 403, because where "[s]ignificant testimony as to [the plaintiff's] guilt of the crime, and particularly the testimony of eyewitnesses identifying him,

---

'innocence' with an evidence of alleged police misconduct."). This Court allowed the depositions to proceed, over Defendants' objections. D.E. 98.

[5] Given that there are still six months before trial, at this stage Plaintiff is not certain which witnesses will be available to appear in person or, alternatively, which witnesses Plaintiff will seek to present either by video or through deposition designations. Plaintiff is unlikely to present testimony from all potential alibi witnesses, and anticipates that the testimony from each witness will be brief.

was admitted," but evidence of his innocence was not, "the deck was effectively stacked against [the plaintiff].").

### VII. The testimony of certain damages witnesses is admissible.

Defendants' motion to exclude the entire testimony of three damages witnesses must be rejected. The motion is based on the use of a false, unsupported standard for what constitutes "personal knowledge" under the Rules of Evidence, as well as unjustified speculation that these witnesses will provide only hearsay testimony. Under the correct standard, there can be no doubt that Carl Loewenson, Jr., Sue DiMora, and Benjamin Lozano will provide admissible, non-hearsay testimony as to Mr. Rosario's damages.

First, Defendants suggest that because Loewenson, DiMora, and Lozano did not know Mr. Rosario before he was wrongfully convicted, their testimony as to his damages is automatically inadmissible. No such rule exists. The only citation Defendants provide is to Rule 602, which simply requires that witnesses base their testimony on personal knowledge. Loewenson, DiMora, and Lozano had ample opportunity to personally observe Mr. Rosario's actions and his mental, emotional, and physical state during and after his wrongful incarceration and can testify to those observations. *See*, *e.g.*, Ex. A, Carl Loewenson, Jr. Dep., at 143:6–14, 157:3–7; 189:16–190:13.[6] Their testimony will thus be based on their personal knowledge, under Rule 602, including lay opinions "rationally based on [their] perception" under Rule 701. *See, e.g., Kuehne v. Loc. No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the United States & Canada*, No. 09CV1974RJDVVP, 2012 WL 13102327, at *9 (E.D.N.Y. Feb. 15, 2012), *report and recommendation adopted* 2012 WL 3257949 (E.D.N.Y. Aug. 8, 2012) (noting that "personal knowledge" requires merely awareness,

---

[6] Neither DiMora nor Lozano have yet been deposed in this action.

9

comprehension and present recollection, which can include "personal perception" and inferences drawn therefrom); *see also United States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013) (describing how Rule 602's foundational requirement is satisfied where witness testifies to "what the witness thinks he knows from personal perception") (internal citation omitted).

Defendants seem to assume that Rule 602 requires more, suggesting without any support that such personal observations are not meaningful unless they are compared with observations of Mr. Rosario *before* he was wrongfully convicted. Even assuming this were true (which it is not), Mr. Rosario will present evidence from other sources regarding his life prior to his wrongful incarceration, including his own testimony, the testimony of his wife, and photographic evidence. The jury can compare evidence of Mr. Rosario's life and health prior to, during, and after his wrongful incarceration from these sources and draw appropriate inferences as to the damages he experienced. Simply put, there is no requirement that a damages witness must have known a plaintiff prior to the relevant damage to provide testimony, and this Court should not exclude any witness on that basis.

The remainder of Defendants' objections are easily dealt with. The fact that some witnesses discussed out-of-court statements made by Mr. Rosario during their depositions does not mean that they will testify to such statements during trial. Even if they were to do so, such statements may constitute present-sense impressions, excited utterances, or other hearsay exceptions. Defendants have not made the kind of particularized objections to specific statements that would allow Plaintiff to adequately respond or the Court to adequately evaluate this possibility. Moreover, the witnesses' personal observations of Mr. Rosario involve not only his verbal statements, but also his actions and his demeanor, both of which are clearly admissible.

The witnesses' testimony will also not be unduly cumulative. Mr. Rosario was wrongfully imprisoned for two decades and continues to suffer to this day as a result. No single witness could adequately testify to the numerous and extensive damages he sustained over this period. Furthermore, Defendants are expected to challenge the credibility of Mr. Rosario's own account of the damages he suffered, including based on his financial interest in the result of this case.[7] That makes confirmation of his damages from outside parties particularly important. By presenting targeted testimony from a reasonable number of witnesses who personally observed different moments of Mr. Rosario's life, Plaintiff will efficiently present his case for damages without any needless repetition.

**VIII.    Plaintiff should be permitted to present portions of the *Dateline* episodes.**

Defendants' motion to exclude the entirety of the *Dateline* episodes regarding Mr. Rosario's wrongful conviction should also be rejected. Plaintiff will not seek to present the entirety of the "Conviction" series to the jury. Nor will Plaintiff seek to introduce out-of-court statements by Mr. Slepian or others indicating their opinions of Mr. Rosario's innocence as the truth. Rather, Plaintiff intends to introduce only specific portions of the episodes that are not hearsay, or that meet hearsay exceptions.

For instance, Plaintiff may seek to introduce footage of Mr. Rosario in prison discussing his then-current emotions and experiences. This footage is highly relevant to Mr. Rosario's damages. One example is a short clip of a visit between Mr. Rosario and his children in prison. This clip will provide visual evidence to the jury, including evidence of the environment in which Mr. Rosario encountered his family while incarcerated and of his emotional state during the visit. This visual evidence is, of course, not hearsay. Moreover, many of the statements Mr.

---

[7] Indeed, Defendants' experts accused Mr. Rosario of malingering, D.E. 207-3 (Parker Rep.) at 12–13, and of "deceitfulness, as indicated by lying[.]" D.E. 207-2 (Fayer Rep.) at 16–17.

11

Rosario and his children make during this visit are admissible as then-existing mental or emotional conditions and/or present-sense impressions, as they discuss how they feel about visiting one another in prison. *See* Fed. R. Evid. 803.

Another type of footage Plaintiff may seek to use at trial is prior statements made by testifying witnesses. Such statements may be used for impeachment purposes or to refresh a witness's memory, or may be admissible as consistent prior statements if the witness's credibility is attacked. For example, one *Dateline* episode contains footage of Robert Davis—an eyewitness to the murder of Jorge Collazo who originally identified Rosario as the perpetrator—admitting that he selected a photo of Rosario from only two or three options, and that when he selected Rosario, police told him "that's the guy." If Defendants imply Davis's similar testimony at trial is fabricated, then his prior consistent statement is not hearsay. *See* Fed. R. Evid. 801(d)(1)(B).

The above examples are not exhaustive, but rather demonstrate the general types of evidence from the *Dateline* episodes that Plaintiff is entitled to use at trial. Given the various permissible purposes for which portions of these episodes may be introduced, the Court should not entirely preclude their use at this point. Rather, any specific disputes are better addressed after the parties' exhibit lists have been finalized in the joint pretrial order, in which Plaintiff will identify the particular portions of the episodes he will seek to introduce at trial.

IX. **The parties should be permitted to introduce evidence of the fact of the vacatur of Plaintiff's conviction and dismissal of the charges against Plaintiff, but should be precluded from introducing evidence about the stated basis therefor.**

Plaintiff will not argue that the stated basis for the vacatur of his conviction and the dismissal of his indictment was because of a court finding of actual innocence.[8] Just as Plaintiff

---

[8] Plaintiff proceeds under the presumption that favorable termination is established as a matter of law; however, if Defendants are permitted to present a dispute about this point to the jury, Plaintiff may be required to change his position and seek to introduce additional evidence related to the basis for the vacatur/dismissal.

12

will not mischaracterize the evidence on this point, the Court should hold Defendants to the same standard. As this Court has found, "[t]here is no dispute that the state law favorable termination standard is met," D.E. 191 at 23, that is, that "the circumstances surrounding the termination [of Rosario's prosecution] are not inconsistent with the innocence of [Rosario]," *id.* (citing *Lanning v. City of Glens Falls*, 908 F.3d 19, 27 (2d Cir. 2018)). Thus, the stated basis for the vacatur (ineffective assistance of counsel) is irrelevant, because allegations that Plaintiff's trial counsel was ineffective are irrelevant to the issues to be decided at trial. *See* D.E. 243 at 4–5. The Court should permit the parties to introduce evidence of the *fact* of the vacatur and of the dismissal, but exclude evidence of the basis for the vacatur and the dismissal.[9] Similarly, Defendants should be precluded from arguing that "no judge or jury has found that plaintiff is not guilty," *see* D.E. 258 at 6; Plaintiff's innocence is a factual matter for determination by *this* jury; there is no requirement that it have been first found by a different court or jury, and Defendants' repeated argument to that effect would only mislead and confuse.

### X.   The parties should be permitted to present argument about how the jury should calculate damages, including with reference to specific dollar amounts.

There is no question it is within this Court's discretion to permit counsel to both discuss dollar figures for non-economic damages during closing arguments and make a specific request of the jury. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912–13 (2d Cir. 1997) (rejecting proposed rule prohibiting requests for a specific sum in damages in favor of "a more flexible approach" because "it is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions"). While the jury should be instructed it alone may assign a dollar value to Plaintiff's damages, the Court should permit counsel at closing argument to suggest

---

[9] Unless necessary to establish favorable termination.

specific figures or a range of specific figures for the jury's consideration, for both discrete aspects of the damages and the total award.

In keeping with the Second Circuit's guidance, many courts in this Circuit allow such requests for specific damages figures to be made at closing argument. *See, e.g., Sokolow v. Palestine Liberation Org.*, No. 04 CIV. 397 (GBD), 2015 WL 13675738, at *3 (S.D.N.Y. Aug. 24, 2015) (after "carefully consider[ing]" *Lightfoot*, permitting plaintiff's counsel to suggest a specific dollar amount for non-economic damages during closing argument, and instructing jury that request was argument, not evidence); *Edwards v. City of New York*, No. 08-2199 TLM, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) (same); *Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 249 (E.D.N.Y. 2013), *aff'd*, 752 F.3d 273 (2d Cir. 2014) (noting it is the court's "practice" to permit counsel to suggest dollar amounts for damages); *Brown v. Cornell*, 2021 WL 2711511, at *9 (N.D.N.Y. July 1, 2021). Indeed, in *Stanczyk v. City of New York*, the Second Circuit specifically faulted plaintiff's counsel for *failing* to reference any specific dollar figures for non-pecuniary damages at closing, noting "the jury's arguably low damages award was likely the result of Stanczyk's counsel's failure to provide the jury with any monetary semblance of guidance." 752 F.3d 273, 285 (2d Cir. 2014) (cleaned up, internal citation and quotation marks omitted).

To Plaintiff's knowledge, this type of argument is typically permitted at wrongful conviction trials, including the trials in *Restivo v. Hessemann*, 06-CV-6720 (JS)(WDW) (E.D.N.Y.), *Deskovic v. Putnam County*, 07-CV-8150 (KMK) (S.D.N.Y), and *Newton v. City of New York*, 171 F. Supp. 3d 156, 171 n.94 (S.D.N.Y. 2016), as well as other similar trials around the country. *See, e.g., Harrington v. City of Council Bluffs, Iowa*, 902 F. Supp. 2d 1195, 1205 (S.D. Iowa 2012) (permitting plaintiff's counsel to "refer to per diem or lump-sum calculations

14

of their noneconomic damages" at closing with appropriate limiting instructions from the court). Notably, neither of the cases Defendants cite precluding counsel from making such argument were wrongful conviction cases.

There is good reason district courts typically permit discussion of specific dollar amounts at closing in wrongful conviction suits, beyond just the general rule that "[a] district court is entitled to give attorneys wide latitude in formulating their arguments." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (internal citation omitted). Damages in these cases are both extensive and complex, requiring the jury to evaluate and award compensation for several distinct non-pecuniary harms, including loss of liberty in addition to physical, mental, and emotional injury. *See Kerman v. City of New York*, 374 F.3d 93, 130–32 (2d Cir. 2004). "A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them." *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 119 (2d Cir. 2004) (internal citation and quotation marks omitted). The best way to ensure the jury may reach a rational damages decision based on the evidence is to permit both sides to argue how the jury might properly evaluate and calculate damages (including the suggestion of specific numbers) with limiting instruction from the Court that counsel's suggestions are merely argument, not evidence. Failing to address the issue directly—particularly given the significance of the damages question here—invites either juror confusion or reliance on improper considerations (such as independent internet research).

Dated: July 14, 2021                                    Respectfully submitted,

                                                             /s/ Emma Freudenberger
                                                             Nick Brustin
                                                             nick@nsbcivilrights.com

Emma Freudenberger
emma@nsbcivilrights.com
Anna Benvenutti Hoffmann
anna@nsbcivilrights.com
Katherine Haas
katiehaas@nsbcivilrights.com
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, New York 10013
(212) 965-9081

*Attorneys for Plaintiff Richard Rosario*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record.

Dated: July 14, 2021

Respectfully submitted,

/s/ Kayla Jessup
*Paralegal, Neufeld Scheck & Brustin, LLP*