

**GEORGIA M. PESTANA**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

December 29, 2021

**By ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Rosario v. City of New York, et al.*, No. 18 Civ. 4023 (LGS)

Your Honor:

      We are Senior Counsels in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York. We write in opposition to plaintiff's letter concerning the anticipated testimony of Alexis Gonzalez. ECF No. 342. Plaintiff offers no permissible purpose for Alexis Gonzalez's testimony. His testimony should be precluded in its entirety.

      The Court previously held that Mr. Gonzalez's testimony "concerning an alternate theory for the murder and the loss of Ms. Collazo's brother are precluded." ECF No. 341 at 2. Now, plaintiff asserts that he wishes to offer Alexis Gonzalez's testimony for two purposes. First, to inform the jury that Mr. Gonzalez says he saw an unidentified officer, who is not a defendant to this action, show plaintiff's photo at his brother-in-law's funeral. And second, to impeach non-party eyewitness Michael Sanchez with testimony about a gun.[1]

      Testimony about Mr. Gonzalez's brother-in-law's funeral is not relevant and is unfairly prejudicial. At his deposition, Mr. Gonzalez speculated that someone—perhaps Michael Sanchez but Mr. Gonzalez was not sure—had a photo of plaintiff at the funeral that was shown to him when he was crying for his brother-in-law. (Gonzalez Dep. 24:2-19; 34:16-23; 57:8-19; 58:7-15.) Then, Mr. Gonzalez testified that he thinks there was a police officer named "Lucky," whose name he does not know and who may have been married to the victim's aunt showing plaintiff's picture at the funeral. (Gonzalez Dep. 147:22-149:12.) Mr. Gonzalez is unsure about the format of the photo; he first testified that it may be a WANTED poster but then said it may have been a blown up mugshot. (Gonzalez Dep. 149:19-150:6.) Mr. Gonzalez has no recollection about if he met any of the defendants to this action. (Gonzalez Dep. 159:3-15.)

      This testimony must be precluded because it invites the jury to engage in rank speculation. There is no evidence that the defendants were personally involved in any of this alleged conduct. "A defendant can be liable under § 1983 'only if that individual is personally involved in the alleged deprivation.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (holding personal involvement of defendants

---

[1] Mr. Gonzalez was asked at his deposition if he ever asked Michael Sanchez why he was alive but his brother-in-law was not. (Gonzalez Dep. 51:8-23.) This sort of testimony is meant to inflame the jury.

in a constitutional violation is a prerequisite to an award of damages under § 1983); *Raspardo v. Carlone,* 770 F.3d 97, 116 (2d Cir. 2014) (holding  § 1983 requires "individual, personalized liability on the part of each government defendant."). Here, Mr. Gonzalez has not testified that any the defendants to this action showed a picture of plaintiff at the funeral. Therefore, there is no evidence supporting the contention that Detective Whitaker, Detective Martinez, or Detective Cruger ever showed plaintiff's picture at a funeral. Therefore, as plaintiff has failed to show personal involvement, this line of testimony must be precluded as it is not relevant.

Plaintiff says that the fact that Alexis Gonzalez says a photo was shown at the funeral is somehow relevant to his innocence, as it undercuts Sanchez's credibility. This logic is strained at best. Plaintiff offers no explanation for why the acts of some other amorphous officers are relevant to the claims in this action. Nor does he offer any explanation for why any sort of probative value concerning his innocence is not substantially outweighed by the danger of unfair prejudice to defendants. Indeed, plaintiff's argument is that this testimony should be admitted because it will make Sanchez look like a liar. Plaintiff says he wants to show Sanchez is a liar because Sanchez is an important eyewitness. But even assuming this was a permissible way to impeach Sanchez, testimony about random officers showing people photos at a funeral is designed to encourage the jury into speculating that in 1996, police officers were showing pictures of plaintiff at a funeral. Simply, the jury may speculate that the three individual defendants to this action were the ones who showed a photo at the funeral, even though there is no evidence to suggest they were involved in any way or did so. The Court should not allow this.

Testimony about the gun is also not relevant and unfairly prejudicial. Mr. Gonzalez said he gave Mr. Sanchez a gun in the days before the murder. (Gonzalez Dep. 59:4-17.) Mr. Gonzalez said he did not know why Mr. Sanchez wanted a gun. (Gonzalez Dep. 59:15-17.) Plaintiff says this testimony is relevant to credibility. But this is an effort by plaintiff to sneak in testimony about an alternate theory of the murder. Indeed, plaintiff's subsequent questioning at the deposition was about whether Mr. Gonzalez gave a gun to Mr. Sanchez because of an argument about a girl, in other words, teenage love drama. (Gonzalez Dep. 62:6-64:16; 160:22-161:12.)

Furthermore, much of Alexis Gonzalez's testimony  about the gun is hearsay. Like this:

Q. When -- so when did you learn that he had -- that he had a gun on him?
A. When I got to the hospital.
Q. Who told you?
A.  Mike.
Q. And you knew it was the gun that you gave him?
A.  Mike told me that it was the gun that I gave him, yes.
Q.  So it was the same gun?
A. Mike said –
Q. No doubt in your mind?
A. That's what Mike said.· I never saw the weapon.· I don't know which weapon they
   got caught with or whatever it was, but I asked ·Mike what happened at the hospital.
Q. And Mike told you that he gave the·gun to Jorge?
A.·No, he just said that Jorge had a gun on him and it was the gun that I had found·in
   the apartment. (Gonzalez Dep. 67:11-68:8.)

2

In other words, plaintiff is relying on hearsay from Mr. Gonzalez—out of court statements offered for the truth of the matter— to impeach Mr. Sanchez.

Plaintiff next contends he can offer testimony from Mr. Gonzalez that he provided a gun to Michael Sanchez that was later found on Mr. Collazo, the murder victim, at the time of the shooting. This evidence is also inadmissible for several reasons. First, plaintiff fails to explain how such evidence does not contravene the Court's December 27, 2021 Decision and Order stating "that Mr. Gonzalez's testimony concerning an alternate theory for the murder and the loss of Ms. Collazo's brother are precluded . . . ." This proffered testimony is very much a part of the alternate theory for the murder, as these claims relate to the theory that Mr. Collazo was subject to a threat of death by others. Second, whether Mr. Collazo possessed a gun at the time of the shooting is of little probative value, as there is no dispute over self-defense or some other action on Mr. Collazo's behalf in his interaction with plaintiff. Plaintiff simply denies that he is the person who shot Mr. Collazo in the face following a verbal dispute. Third, the state court judge in plaintiff's criminal trial precluded evidence of Mr. Sanchez's knowledge of the gun as lacking relevance, and therefore, Mr. Sanchez never testified about it before the original jury. Whether Mr. Sanchez knew of a gun in Mr. Collazo's possession at the time of the shooting is not probative of the identity of plaintiff as the shooter or whether any defendant deprived plaintiff of a constitutional right.

To the extent that plaintiff suggests this testimony is relevant to the credibility of Mr. Sanchez, nowhere does plaintiff explain how this evidence impeaches Mr. Sanchez's "description of the circumstances of the crime." Further, this evidence violates FED. R. EVID. 608, because plaintiff is seeking to attack the credibility of a witness using extrinsic evidence. Mr. Sanchez now says Mr. Collazo indicated to him that Mr. Collazo had the gun (it was inoperable) immediately before the shooting. Where the gun came from and Mr. Gonzalez's potentially conflicting testimony on that point is so minor that cannot withstand a Rule 608 or 403 analysis.

The cases cited by plaintiff offer no support to his position. First, both decisions arise from *habeas corpus* petitions where the petitioner claimed that the excluded evidence issue was not merely contradictory of a minor, attenuated point, but would wholly contradict the alleged circumstances underlying the charges against them. In *Scrimo v. Lee*, 935 F.3d 103 (2d Cir. 2019), "[t]he Witnesses' testimony was the opposite of collateral--it went to the obvious and decisive question of whether Kane committed the murder rather than Scrimo." *Supra*, at 116. In other words, the testimony at issue would have established that someone else committed the murder other than the defendant. Here, plaintiff's only proffered purpose is to contradict Mr. Sancez on an irrelevant issue. Plaintiff reliance on *Rosario v. Kuhlman*, 839 F.2d 918, 925-7 (2d Cir. 1988), is also misplaced. That decision interpreted New York state evidence law as it existed in the 1980s as opposed to the Federal Rules of Evidence in 2021 or 2022. *Supra*, at 925-26. The Court specifically stated that they evidence they were considering was not merely for contradicting a witness's testimony, but went to whether the sole witness against the defendant could have actually witnessed the crime in the case. *Id*. at 926 ("[T]estimony regarding these claims could clearly be shown in evidence for a purpose independent of the contradiction for these claims were relevant to the prosecution's case. They explained and elaborated Cartagena's claim to be a witness to the crime."). Thus, *Rosario v. Kuhlman*, like *Scrimo*, offers no support for the proposition asserted here, that plaintiff may offer a witness to contradict Mr. Sanchez on facts that the Court has essentially deemed inadmissible at trial.

3

Therefore, the Court should preclude Alexis Gonzalez's testimony in its entirety.

Thank you for your consideration herein.

                                        Respectfully submitted,

                                        Joshua Lax
                                        Brachah Goykadosh
                                        *Senior Counsels*
                                        Special Federal Litigation Division