**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RICHARD ROSARIO,

               Plaintiff,

  -against-

THE CITY OF NEW YORK, *et al.*,

             Defendants.

18-cv-4023 (LGS)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF EXHIBITS ..................................................................................................... vii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF THE CASE ........................................................................................... 1

ARGUMENT .................................................................................................................... 7

    I.   As the prevailing party, Plaintiff is entitled to his attorney's fees and costs. ..................... 7

        A.    The time spent by Plaintiff's counsel is reasonable and should be compensated. ..... 10

        B.    The hourly rates that Plaintiff's counsel request are reasonable. ............................... 14

        C.    The relevant *Johnson* and *Blum* criteria support the rate requests. ........................... 19

    II.    Plaintiff is entitled to his reasonable costs. .................................................... 24

CONCLUSION................................................................................................................ 25

i

## TABLE OF AUTHORITIES

### CASES

*Abdell v. City of N.Y.*,
  No. 05-CV-8453(RJS), 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015)........................................ 24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty.
  Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008)........................................................................................ 8, 20, 25

*BD v. DeBuono*,
  177 F. Supp. 2d 201 (S.D.N.Y. 2001)..................................................................................... 25

*Benihana, Inc. v. Benihana of Tokyo*, LLC,
  No. 15 Civ. 7428(PAE), 2017 WL 6551198 (S.D.N.Y. Dec. 22, 2017) ................................. 24

*Blum v. Stenson*,
  465 U.S. 886 (1984)................................................................................................................. 15

*Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing, Inc.*,
  No. 11 Civ. 4308(PGG), 2013 WL 6171660 (S.D.N.Y. Nov. 25, 2013)................................. 20

*Charles v. Seinfeld*,
  No. 18-CV-1196 (AJN), 2022 WL 889162 (S.D.N.Y. Mar. 25, 2022) .................................... 20

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986)................................................................................................................. 12

*Courtney v. City of Tulsa*,
  No. 14-CV-308 (N.D. Okla.) .................................................................................................... 22

*Demonchaux v. Unitedhealthcare Oxford*,
  No. 10 Civ. 4491(DAB), 2014 WL 1273772 (S.D.N.Y. March 27, 2014).............................. 19

*Deskovic v. City of Peekskill, et al.,*
  No. 07-CV-8150 (S.D.N.Y.)...................................................................................................... 22

*Doe v. Unum Life Ins. Co. of Am.*,
  No. 12CIV9327LAKAJP, 2016 WL 335867 (S.D.N.Y. Jan. 28, 2016)................................... 23

*Farbotko v. Clinton Cnty.*,
  433 F.3d 204 (2d Cir. 2005)..................................................................................................... 16

*Fogle v. Sokol*,
  957 F.3d 148 (3d Cir. 2020)..................................................................................................... 21

*Fox v. Vice*,
   563 U.S. 826 (2011)..........................................................................................9, 10

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
   925 F.3d 63 (2d Cir. 2019)...........................................................................17

*Gay Officers Action League v. Puerto Rico*,
   247 F.3d 288 (1st Cir. 2001)........................................................................13

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998)..........................................................................12

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)..............................................................................9

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,
   No. 96 CIV. 8414, 2022 WL 3442148 (S.D.N.Y. Aug. 11, 2022) .........................19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................................8, 20

*HomeAway.com, Inc. v. City of New York*,
   No. 18 CIV. 7742 (PAE), 2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) ....................25

*Houser v. Pritzker*, No. 10-cv-3105,
   ECF No. 377 (S.D.N.Y. Sept. 20, 2016)..........................................................18

*In re BioScrip, Inc. Securities Litigation*,
   273 F.Supp.3d 474 (S.D.N.Y. 2017)................................................................17

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........17

*Sanford v. City of Detroit*,
   No. 17-cv-13062 (E.D. Mich.).........................................................................22

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .........................................................................20

*Jones v. Treubig*,
   No. 16-CV-8080 (JGK), 2022 WL 1223215 (S.D.N.Y. Apr. 26, 2022) ..................17

*Kassim v. City of Schenectady*,
   415 F.3d 246 (2d Cir. 2005)...........................................................................14

*Kim v. Kum Gang, Inc.*,
No. 12 CIV. 6344 MHD, 2014 WL 2514705 (S.D.N.Y. June 2, 2014) ............................ 19, 20

*Knox on behalf of D.K. v. Poughkeepsie City Sch. Dist.*,
No. 17 CIV. 8190 (NSR), 2022 WL 305275 (S.D.N.Y. Feb. 2, 2022)................................... 15

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)................................................................................................. 18

*Medina v. Buther*,
No. 15-CV-1955, 2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019)......................................... 24

*Mellen v. Winn*,
900 F.3d 1085 (9th Cir. 2018) ...................................................................................... 21, 22

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011)................................................................................................... 8

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ............................................................................................. 11

*Nautilus Neurosciences v. Fares*,
No. 13 Civ. 1078(SAS), 2014 WL 1492481 (S.D.N.Y. April 6, 2014)................................. 19

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)............................................................................................................... 8

*Perez v. Westchester Cnty. Dep't of Corr.*,
587 F.3d 143 (2d Cir. 2009)................................................................................................. 11

*Planned Parenthood of Cent. New Jersey v. Attorney Gen. of New Jersey*,
297 F.3d 253 (3d Cir. 2002)................................................................................................. 13

*Ravina v. Columbia Univ.*,
No. 16-CV-2137 (RA), 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020)................................... 25

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
818 F.2d 278 (2d Cir. 1987)................................................................................................. 25

*Restivo v. Hessesmann*,
846 F.3d 547 (2d Cir. 2017)........................................................................... 9, 10, 14, 20

*Restivo v. Nassau County*,
06-CV-6720(JS)(SIL), 2015 WL 7734100 (E.D.N.Y. Nov. 30 2015) ............................. passim

*Roberts v. City of Fairbanks*,
   947 F.3d 1191 (9th Cir. 2020) ............................................................. 21

*Rosenfeld v. Lenich*,
   No. 18CV6720NGGPK, 2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) ................... 18

*Rudman v. CHC Grp. Ltd.*,
   No. 15-CV-3773 (LAK), 2018 WL 3594828 (S.D.N.Y. July 24, 2018) ................. 17

*Simmons v. New York City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) ......................................................... 9, 10

*Stanczyk v. City of New York*,
   752 F.3d 273 (2d Cir. 2014) ............................................................... 9

*Stinson v. City of New York*,
   256 F. Supp. 3d 283 (S.D.N.Y. 2017) ..................................................... 25

*Tanski v. AvalonBay Communities, Inc.*,
   No. 15-CV-6260 (AKT), 2020 WL 2733989 (E.D.N.Y. May 26, 2020) ................. 17

*Tatum v. City of New York*,
   No. 06-cv-4290 (PGG)(GWG), 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) ......... 18, 20

*Townsend v. Benjamin Enters., Inc.*,
   679 F.3d 41 (2d Cir. 2012) ............................................................... 16

*UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*,
   No. 20-CV-2043 (LJL), 2021 WL 3292519 (S.D.N.Y. Aug. 2, 2021) ................. 16

*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*,
   63 F.3d 516 (7th Cir. 1995) ............................................................... 14

*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*,
   71 F.3d 1053 (2d Cir. 1995) ............................................................... 14

*Williams v. Metro-N. R.R. Co.*,
   No. 1:17-CV-03847 (JGK), 2018 WL 3370678 (S.D.N.Y. June 28, 2018) ............ 18

## OTHER AUTHORITIES

House Report 1-3,
   U.S.Code Cong. & Admin.News 1976 ...................................................... 8

Senate Report No. 1011, 94th Cong., 2d Sess.,
   5 U.S. Cong. & Admin. News (1976)) ............................................... 15, 16

*Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder*,'
   Bloomberg Law (June 9, 2022) ................................................................................................ 18

## <u>TABLE OF DECLARATIONS AND EXHIBITS</u>

### DECLARATION OF EMMA FREUDENBERGER

Exhibit 1 – Declaration of Andrew G. Celli, Jr. in Support of Plaintiff's Motion for Attorney's Fees

Exhibit 2 – Declaration of Carl H. Loewenson, Jr. in Support of Plaintiff's Motion for Attorney's Fees

Exhibit 3 – Declaration of Rachel G. Skaistis in Support of Plaintiff's Motion for Attorney's Fees

Exhibit 4 – Declaration of Anna Benvenutti Hoffmann

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 5 – Declaration of Amelia Green

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 6 – Declaration of Len Hong Kamdang

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 7 – Declaration of Richard Sawyer

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 8 – Declaration of Sona R. Shah

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 9 – Declaration of Bettina Roberts

      Exhibit A – Resume

      Exhibit B – Time records

Exhibit 10 – Declaration of Christina Matthias

Exhibit A – Resume

Exhibit B – Time records

Exhibit 11 – Declaration of Mary Katherine McCarthy

Exhibit A – Resume

Exhibit B – Time records

Exhibit 12 – Declaration of Avinash Samarth

Exhibit A – Resume

Exhibit B – Time records

Exhibit 13 – Declaration of Katie Haas

Exhibit A – Resume

Exhibit B – Time records

Exhibit 14 – Declaration of Kate Fetrow

Exhibit A – Resume

Exhibit B – Time records

Exhibit 15 – Declaration of Gerardo Romo

Exhibit A – Resume

Exhibit B – Time records

Exhibit 16 – Declaration of Rhianna Rey

Exhibit A – Resume

Exhibit B – Time records

Exhibit 17 – Time records of paralegals and law clerks

Exhibit 18 – Resume of Emma Freudenberger

Exhibit 19 – Time Records of Emma Freudenberger

**DECLARATION OF NICK BRUSTIN**

Exhibit A – Resume of Nick Brustin

Exhibit B – Time Records of Nick Brustin

Exhibit C – Expense Records

## INTRODUCTION

This § 1983 suit sought to prove that Plaintiff Richard Rosario was wrongly convicted and spent almost 20 years wrongly imprisoned due to misconduct by the investigating New York City Police Detectives. After years of litigation, contested at every stage and in every way by Defendants, in August 2022 Mr. Rosario prevailed at trial. Specifically, the jury found that Defendant Gary Whitaker maliciously prosecuted Mr. Rosario and denied him a fair trial, causing his wrongful imprisonment; and awarded $5 million in damages. As the prevailing party, Mr. Rosario is now entitled to his reasonable attorney's fees and costs. This motion seeks an award of $3,833,900.00 in attorney's fees on the merits, $6,570.00 in fees for travel, and an additional $115,240.00 for preparing the attorney's fees petition for a total of $3,955,710, as well as $283,800.99 in compensable expenses.

## STATEMENT OF THE CASE

After the Bronx County District Attorney's Office reinvestigated Mr. Rosario's case and agreed that he should never have been convicted at trial, Mr. Rosario (through his counsel at Neufeld Scheck & Brustin, LLP ("NSB")) filed this § 1983 civil rights action against Defendants Whitaker, Martinez, and Cruger, the City of New York, and other individual defendants in 2018. The four years between the filing of the complaint and Plaintiff's successful verdict at trial were long and complicated.

Discovery posed challenges from the start. The procedural history underlying Mr. Rosario's exoneration was complex, including multiple CPL 440 motions on different theories, as well as a reinvestigation by the Bronx District Attorney's Office that uncovered additional new evidence relevant to Mr. Rosario's innocence. The post-conviction litigation generated a substantial number of documents that needed to be reviewed and understood to craft Plaintiff's

primary legal claims and theories, which, unlike in some wrongful conviction cases, differed substantially from the arguments that had been made in the CPL 440 proceedings. That process was successful; Mr. Rosario prevailed at the motion to dismiss stage.

Deposition discovery posed its own complexities. To meet his burden, Plaintiff had to cross-examine and discredit two third-party witnesses who persisted in a mistaken belief that their original identifications were accurate and that Mr. Rosario was the shooter. One was hostile and the other harbored resentment about having been featured on television; in other words, both were difficult witnesses outside Mr. Rosario's control. In addition, the parties had to take discovery from a number of other third-party witnesses whose locations in many cases were unknown and who were not under either side's control, many of whom did not testify in the underlying criminal trial, and some of whom were hostile. Ultimately, the parties took a combined 34 depositions, which included two-day depositions of Mr. Rosario, Defendants' expert DeAnsin Parker, and non-party witnesses, Michael Sanchez and former Defendant NYPD officer Irwin Silverman. And given the defense's strategy of arguing that Mr. Rosario was the shooter, Plaintiff had to depose Mr. Rosario's alibi witnesses in order to ensure that their testimony would be available at trial. Ultimately, given the defense's positions that innocence was not relevant and therefore the depositions should not occur, and subsequently, that even witnesses outside the subpoena power had to be presented live at trial, those depositions also multiplied the briefing that occurred during discovery. *See* Freudenberger decl. ¶¶ 7–11.

Moreover, it was also necessary to take discovery into many issues related to the original police investigation (such as motive for the homicide), even though ultimately evidence regarding those issues was not presented at trial. For example, the parties received documents from the DA's office late in discovery indicating that the victim had obtained a gun from his

brother-in-law days before the shooting because he was so scared, in contrast to the prosecution's theory that the shooting was the result of a random street altercation. Although the Court ultimately excluded evidence regarding Plaintiff's alternate theory of motive at trial, the Court agreed the matter was relevant to Plaintiff's proof, granting his application for three additional depositions based on the Bronx District Attorney's production (Dkt. No. 98). *See* Freudenberger decl. ¶¶ 12–13.

Furthermore, over the life of the case, there were two rounds of briefing on dispositive motions—for judgment on the pleadings (Dkt. Nos. 63, 78, 80) and for summary judgment (Dkt. Nos. 166, 175, 181). Summary judgment, in particular, was a heavy lift, requiring over 500 hours to put forth the affirmative evidence meeting Plaintiff's burden on several different claims. Plaintiff was ultimately successful, with all his key claims surviving both rounds of briefing. Even so, Defendants repeatedly continued to raise the same arguments, such as whether Mr. Rosario's innocence is relevant to his claims—an issue that Defendants brought to the forefront during the trial—which required many hours of briefing. *See* Freudenberger decl. ¶ 14.

To be sure, a successful verdict in this case was never guaranteed. Proof of Defendants' misconduct, and by extension, Mr. Rosario's innocence, relied on alibi witness accounts that contradicted eyewitnesses' identifications and police officers' accounts of those identifications. Plaintiff's counsel had the difficult task of convincing the jury that the science showed that the identifying eyewitnesses were wrong without attacking the eyewitnesses, who due to the suggestive procedures Defendants used, believed they had seen Mr. Rosario commit the murder. To accomplish this, counsel had to present expert testimony on counter-intuitive eyewitness identification science, a rapidly developing field that NSB is familiar with due to our specific expertise in § 1983 wrongful conviction suits. Of note, the City proffered an expert in eyewitness

identifications, Laura Mickes, during discovery, but after her 7-hour deposition elected not to call her at trial. *See* Freudenberger decl. ¶¶ 15–16.

Plaintiff also had to meet the heavy burden of demonstrating intentional police misconduct caused the wrongful conviction. In other words, Plaintiff had to prove that what police said happened during the identifications was not true, despite Defendants' unsurprising denials that they did anything wrong. This required knowledge and expertise regarding both § 1983 claims related to investigative misconduct and historical New York City Police Department procedures concerning identification procedures. *See* Freudenberger decl. ¶ 17.

Moreover, as the Court is well-aware, Plaintiff has significant mental health struggles that created additional complexity at every stage of the litigation. Winning Mr. Rosario's case required not just the technical expertise but also an understanding of the manifestations of complex PTSD directly derived from counsel's familiarity with the impact of wrongful incarceration and its manifestations. Plaintiff's counsel had to continuously adapt and strategize based on the sometimes-extreme fluctuations in Mr. Rosario's mental health. This particularly added complications to aspects of the case in which Mr. Rosario had to be involved or was implicated, such as his depositions, discovery into his electronic communications, and depositions of his family members. Similarly, each time Mr. Rosario and his counsel had to prepare for trial, Mr. Rosario would experience mental health symptoms that made it increasingly difficult for him to trust anyone, including his family and his especially his legal team, complicating counsel's preparations and necessitating many additional hours of work. *See* Freudenberger decl. ¶ 18.

In addition, preparing for and conducting a trial in the middle of the COVID-19 pandemic presented special challenges. For example, the trial was originally set for June 28,

2021, but was then adjourned to early January 2022; after substantial preparation was made for

that trial date the trial was adjourned only a week before trial due to COVID; trial was then reset

for late January 2022, only to be adjourned again at Defendants' last-minute request. (*see* Dkt.

Nos. 195, 227, 228, 310, 314, 358). Trial eventually occurred six months later, on July 25, 2022.

The changes in trial date meant that Plaintiff's counsel had to spend hundreds of hours preparing

for trial multiple times. It also posed special difficulties for Plaintiff's work in other cases, which

had to be repeatedly rescheduled or postponed to accommodate trial dates in this case which

ultimately did not occur. *See* Freudenberger decl. ¶ 19.

The rescheduling presented unique challenges in this case. Many witnesses lived out of

state and thus out of the Court's subpoena power which meant they had to appear voluntarily and

be convinced to travel to New York City, each time—despite the inconvenience it caused them.

Moreover, Defendants continually refused to accommodate alternatives to having live witnesses

such as reading their deposition transcripts or having video testimony. Substantial time was spent

addressing these issues with defense counsel and before the Court. *See* Freudenberger decl. ¶ 20.

As alluded to above, the litigation in this case involved multiple stages of dispositive

motion practice—including on the first day of trial, on July 25, 2022, where Defendants

sought to dismiss the case as a sanction for Plaintiff deleting text messages—and repeated

briefing on a plethora of issues. Plaintiff was ultimately successful at each of these stages,

culminating in the entry of the $5 million judgment in favor of Mr. Rosario. The verdict

exceeded any settlement offer from Defendants over the course of the litigation. *See*

Freudenberger decl. ¶ 21.

As the prevailing parties in the litigation, Plaintiff seeks the following:

| Name of Counsel | Hourly Rate | Hours | Total |
|---|---|---|---|
| Nick Brustin | $900 | 1010.0 | $909,000.00 |
| Anna Benvenutti Hoffmann | $800 | 739.9 | $591,920.00 |
| Emma Freudenberger | $800 | 759.3 | $607,440.00 |
| Amelia Green | $500 | 182.6 | $91,300.00 |
| Len Kamdang | $450 | 271.0 | $121,950.00 |
| Richard Sawyer | $450 | 1250.3 | $562,635.00 |
| Bettina Roberts | $425 | 116.7 | $49,597.50 |
| Christina Matthias | $425 | 39.2 | $16,660.00 |
| Katie McCarthy | $425 | 18.4 | $7,820.00 |
| Avinash Samarth | $400 | 143.4 | $57,360.00 |
| Katie Haas | $400 | 663.4 | $265,360.00 |
| Kate Fetrow | $375 | 24.9 | $9,337.50 |
| Gerardo Romo | $350 | 381.3 | $134,455.00 |
| Rhianna Rey | $325 | 24.2 | $7,865.00 |
| Paralegals/law clerks | $200 | 2011.0 | $402,200.00 |
| **TOTAL** | | **7635.6** | **$3,833,900.00** |

In addition, Plaintiff requests $283,800.99 in compensable costs, *see* Brustin decl., Exhibit C, and the following for preparation of this fee petition:

## FEE PETITION

| Name of Counsel | Hourly Rate | Hours | Total |
|---|---|---|---|
| Nick Brustin | $900 | 12.3 | $11,070.00 |
| Anna Benvenutti Hoffmann | $800 | 45.7 | $36,560.00 |

| Emma Freudenberger | $800 | 5.2 | $4,160.00 |
| Sona R. Shah | $450 | 55.2 | $24,840.00 |
| Gerardo Romo | $350 | 54.6 | $19,110.00 |
| Paralegals/law clerks | $200 | 97.5 | $19,500.00 |
| **TOTAL** | | **270.5** | **$115,240.00** |

Plaintiff also requests $6,570.00 in travel, which is billed at half rate. *See* Freudenberger decl. ¶60. That makes the total request for fees and costs $4,239,510.99.

## ARGUMENT

I.   **As the prevailing party, Plaintiff is entitled to his attorney's fees and costs.**

Congress passed the Civil Rights Attorney's Fees Awards Act (the "Act") in 1976, "which provided that prevailing parties could recoup 'reasonable attorney's fee[s].'" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting 42 U.S.C. § 1988(b)). The purpose of the Act is to permit plaintiffs with valid claims to attract effective legal representation and thereby encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See Hensley v. Eckerhart*, 461 U.S. 424, 444–45 (1983).[1]

"Both [the Second Circuit] and the Supreme Court have held that the lodestar—the

---

[1] The Supreme Court in *Hensley* quoted from the Senate Report on the Civil Rights Attorney Fees Award Act as follows:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to

product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective [of securing attorneys to take on civil rights cases.]"); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (reaffirming *Millea* holding).

The district court enjoys wide discretion in determining an appropriate fee award under § 1988. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[A]ppellate courts must give substantial deference to these determinations [regarding fee awards], in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." (internal citations and quotation marks omitted)); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("Indeed 'abuse of discretion'—already one of the most deferential standards of review—takes on special significance when reviewing fee decisions.").

Here, Plaintiff's fee request as a whole is reasonable. This is most easily demonstrated by reference to the award of $4,677,897.50 in fees and $320,017.05 in costs that Plaintiff's counsel received the last time they litigated a fee petition on a §1983 wrongful conviction claim in this circuit, *Restivo v. Nassau County*, 06-CV-6720(JS)(SIL), 2015 WL 7734100 at *6 (E.D.N.Y. Nov. 30 2015), which award was affirmed in full by the Second Circuit, *Restivo v. Hessemann*, 846 F.3d 547, 588–92 (2d Cir. 2017). Although that case was litigated in the Eastern District of

---

vindicate these rights in court. Senate Report 2; *see* House Report 1-3, U.S.Code Cong. & Admin.News 1976, p. 5910.

*Hensley*, 461 U.S. at 445 (footnote omitted).

New York, the district court found that NSB overcame the presumption that the lower EDNY rates should apply, which required "persuasively establish[ing] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." 2015 WL 7734100 at *2 (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009)). Specifically, the court found that "NSB has particular expertise litigating § 1983 wrongful conviction suits and has successfully litigated dozens of such cases around the country." *Id.* at *3. The court then awarded the 2014 SDNY rates that NSB requested, including up to $700 per hour for senior partners, which it found was "in line with rates charged for similar complex federal work in the Southern District"—even though it noted that exceeded the highest previous hourly rate award in the Southern District in a § 1983 suit. *Id.* The district court also found the over 11,000 hours expended reasonable given the complexity of the case and rejected nearly all objections defendants raised to the request. *Id.* at *3–6. Similarly, the Second Circuit rejected all defendants' challenges to the award on appeal, affirming the award in full. *Restivo*, 846 F.3d at 588–92.

The *Restivo* award provides a useful benchmark for the reasonableness of Plaintiff's request here; even though this award was made based on rates from almost a decade ago, the total awarded in both fees and costs is substantially higher than what is requested here. Similarly, in 2018, after NSB won another § 1983 wrongful conviction trial in the Northern District of California, the defendants (after reviewing NSB's requested rates and hours) stipulated to a reasonable fees and costs award of $4.5 million—also substantially higher than the request here. *See* Freudenberger decl. ¶ 52. And after yet another successful § 1983 wrongful conviction trial 13 years ago in the Southern District of Texas, NSB and co-counsel were awarded nearly $3.5 million in fees and costs—only slightly less than the request here. *See* Freudenberger decl. ¶ 54.

Furthermore, the over 11,000 hours of time compensated in *Restivo* is over 1.5 times the hours requested here. In addition, from NSB's experience, the total number of hours in this case is relatively low, even taking into account that this is a case that went to trial. *See* Freudenberger decl. ¶ 23. These benchmarks may assist the Court in evaluating the overall reasonableness of Plaintiff's request here. *See Fox*, 563 U.S. at 838 (instructing "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time").

### A.    The time spent by Plaintiff's counsel is reasonable and should be compensated.

The first step in setting the lodestar is to determine the amount of time reasonably expended and therefore compensable. The number of hours reasonably expended is a "factual issue whose resolution is committed to the discretion of the district court." *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (internal citation and quotation omitted). In making this factual determination, the Court may take into account both its own familiarity with the litigation and the attorneys, as well as the general circumstances that apply to contingency-fee civil rights cases. As the Ninth Circuit has noted:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). If the Court does conclude that any hours for which compensation is sought should not be awarded, it must "state its reasons for excluding those hours as specifically as possible." *Gierlinger v. Gleason*, 160 F.3d 858, 876

(2d Cir. 1998) (internal quotation omitted).

NSB has used their professional judgment in determining how much time to spend per task, and the nature of their caseload demands that they do so. The vast majority of NSB's cases settle for a global figure that includes attorney's fees; it is only the rare case in which NSB makes a fee application to a court. At the same time, NSB maintains a full docket of approximately 30 other complex civil rights cases at any given time, with a roster of only 14 attorneys (6 partners and 8 associates) for all of those cases. As a result, NSB's attorneys are kept busy with their caseloads, and have every incentive to work efficiently, spend only the time they judge necessary to the successful prosecution of each case. *See* Freudenberger decl. ¶ 44.

The total number of hours is exceedingly reasonable given the scope of this litigation to date. The Declaration of Emma Freudenberger describes the long path that this case took to the ultimate successful conclusion, encompassing representation spanning six years and over 500 docket entries: a complicated underlying procedural history surrounding Mr. Rosario's exoneration that had to be understood to craft legal claims and theories; a series of discovery issues related to the original police investigation; hostile and hard-to-locate third-party witnesses; 34 depositions, including multiple two-day depositions; successive rounds of briefing on dispositive motions; multiple last-minute adjournments of trial due to the COVID-19 pandemic and Defendants' eleventh-hour requests for adjournment; and ultimately a 3-week trial including the presentation of 20 witnesses. *See* Freudenberger decl. ¶ 45.

Defendants' vigorous opposition at each stage of the litigation increased the time Plaintiff's counsel spent. For example, Defendants both moved to dismiss all claims and then moved for summary judgment on all claims; Defendants also moved to preclude both of Plaintiff's testifying experts. Although these motions were ultimately unsuccessful, they

necessitated substantial time by Plaintiff's counsel. Similarly, Defendants categorically refused to stipulate to anything in advance of or during trial. While Defendants are entitled to choose an aggressive litigation posture, a party must be compensated for meeting the vigorous defense of the opposing party. *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *see also Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 298 (1st Cir. 2001) ("After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field.").

The reasonableness of the staffing by NSB is demonstrated by the rough equivalence to staffing on the defense team. Throughout discovery, day-to-day case management was primarily handled by an NSB associate, supervised at various times by a senior associate or partner who took many of the depositions. Similarly, throughout discovery Defendants had a Senior Counsel managing most day-to-day tasks, assisted by another attorney and supervised by a senior attorney. Both sides ramped up staffing during the run up to and during trial; Defendants had four attorneys participating at trial and at least one supervising attorney in court at all times in addition. *See* Freudenberger decl. ¶ 48. Even though Plaintiff had the burden of proof and presented nearly all evidence, the trial staffing was similar: four partners, two associates and one paralegal. *See, e.g., Restivo*, 2015 WL 7734100 at *4–5 (approving fee award for 10 attorneys, including eight at one trial); *see also Planned Parenthood of Cent. New Jersey v. Attorney Gen. of New Jersey*, 297 F.3d 253, 272 (3d Cir. 2002) (holding fee awards for multiple attorneys appropriate because "the magnitude of the case mandated the help of numerous attorneys for both parties" and because staffing was appropriate given "the

complexity and specialized medical knowledge necessary for the proper presentation of this case"). Moreover, NSB's expertise in § 1983 wrongful conviction suits like this one made its work much more efficient and effective.

Plaintiff is also entitled to be compensated for time spent on the few motions and issues on which he did not prevail. So long as the suit as a whole involved a "common core of facts" and involved "related legal theories," all the time spent on the case—including time spent on losing motions—must be compensated. *See Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005); *see also Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) ("[The defendant] wishes to exclude fees incurred for any work performed by Uniroyal's attorneys on motions which were eventually denied. . . . Common sense, however, informs us that such a rule is inappropriate."). Here, all claims and discovery were directly related to the NYPD investigation that caused Mr. Rosario's wrongful conviction, as well as to Plaintiff's innocence, which was directly relevant to both liability and damages. *See, e.g., Restivo*, 2015 WL 7734100 at *3–4 (holding "it cannot be legitimately argued that Plaintiffs' claims related to the conduct of the murder investigation do not contain 'a common core of facts' with" the fair trial and malicious prosecution theories on which Plaintiffs prevailed at trial); *see also Restivo*, 846 F.3d at 592 (affirming that decision).

As demonstrated by the declarations filed with this motion, all of the hours requested are carefully documented in detailed contemporaneous time records. The attorneys seek compensation only for time reasonably expended, and have exercised billing judgment, discounting or excluding time where appropriate. *See* Hoffmann dec.¶ 25.

In addition, time spent in preparing the fee application is also compensable. *See Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995)

("[A] successful applicant for § 1988 attorneys' fees should be awarded the costs of bringing its § 1988 application."). Including the work on this motion, Plaintiff seeks a total of 173 attorney hours and 97.5 paralegal/law clerk hours for preparing the instant fee petition. Freudenberger ¶¶ 60–61.

**B.    The hourly rates that Plaintiff's counsel request are reasonable.**

Plaintiff is seeking reimbursement for time expended at the hourly rates of $900 for Nick Brustin; $800 for Anna Benvenutti Hoffmann and Emma Freudenberger; $500 for Amelia Green; $450 for Len Kamdang, Richard Sawyer, and Sona Shah; $425 for Bettina Roberts; Christina Mathias; Katie McCarthy; $400 for Avinash Samarth and Katie Haas; $375 for Kate Fetrow; $350 for Gerardo Romo; $325 for Rhianna Rey; and $200 for paralegals and law clerks. These rates are reasonable. Consistent with local practice, Plaintiff is requesting fees for travel time at half rate. *See, e.g., Knox on behalf of D.K. v. Poughkeepsie City Sch. Dist.*, No. 17 CIV. 8190 (NSR), 2022 WL 305275, at *10 (S.D.N.Y. Feb. 2, 2022) (noting that "courts in this Circuit generally reimburse attorneys for travel time at fifty percent of their normal hourly rate").

The Supreme Court has declared that the reasonable hourly rate to be applied in awarding fees under statutory fee provisions is the "prevailing market rate," that is, the rate that lawyers of similar skill, reputation, and experience would charge in the legal market of that geographic area. That rate is determined, as the Supreme Court held in *Blum v. Stenson*, 465 U.S. 886, 895–96 & n.11 (1984), by examining the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation." Quoting from the Senate Report on the Civil Rights Attorneys Fees Act, the Supreme Court noted that: "'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" *Blum*, 465 U.S. at 893 (quoting Senate Report No. 1011, 94th Cong., 2d Sess., 5 U.S. Cong. &

Admin. News, p. 5908, 5913 (1976)).

A court must initially determine what lawyers of comparable skill and experience,
handling other complex litigation, charge their private clients, as "the rates charged in private
representations may afford relevant comparisons." *Id.* at 895, n.11. The Second Circuit has
"instructed that determination of a reasonable hourly rate 'contemplates a case-specific inquiry
into the prevailing market rates for counsel of similar experience and skill to the fee applicant's
counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the
court's own familiarity with the rates prevailing in the district.'" *Townsend v. Benjamin Enters.,
Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d
Cir. 2005)).

Plaintiff's counsel's proposed rates are reasonable compared with the market rates for
similarly complex federal litigation in the Southern District. *See, e.g., Restivo*, 2015 WL
7734100 at *3 (finding NSB's requested rates were "in line with rates charged in similar
complex federal work in the Southern District" and citing a fee award in commercial litigation
case). Indeed, rates typically charged by partners for similarly complex litigation in the SDNY
market dwarf the requested rates; for example, Mr. Loewenson notes hourly rates at Morrison
Foerster, where he is a partner are as high as $1,825, and his own rate is $1,650. Loewenson
decl. ¶ 11. Similarly, Rachel Skaistis, a partner at Cravath Swaine & Moore, LLP, also attests
that NSB's requested rates are substantially lower than comparable market rates for similar
services. Skaistis decl. ¶ 9. And Emery Celli Brinckerhoff Abady Ward & Maazel LLP
("ECBA"), which as a litigation boutique with both a complex civil rights practice and a
commercial practice provides the best comparator for NSB, has customary billing rates
comparable to what NSB requests, including rates for senior partners of $900–950 per hour, Celli

15

decl. ¶ 12.

In recent years, courts in this district have found reasonable attorney's fees at rates as high as $1,125 per hour for complex federal litigation. *See, e.g.*, *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021) (adopting an hourly rate between $300 and $1,030 per hour, based on the age and experience of attorney in a "highly contested and complex bankruptcy and commercial litigation among sophisticated commercial actors on a multi-million dollar loan obligation"); *Rudman v. CHC Grp. Ltd.*, No. 15-CV-3773 (LAK), 2018 WL 3594828 (S.D.N.Y. July 24, 2018) (finding an hourly rate of $985 per hour reasonable in all circumstances for lawyers at a financial litigation firm); *Tanski v. AvalonBay Communities, Inc.*, No. 15-CV-6260 (AKT), 2020 WL 2733989, at *2 (E.D.N.Y. May 26, 2020) ("[C]ourts have approved . . . lode- star[s] based on billable rates of between $405 and $790 for partners and between $270 and $500 for associates."); *In re BioScrip, Inc. Securities Litigation*, 273 F.Supp.3d 474 (S.D.N.Y. 2017) (finding partner rates of $834 to $1,125 and associate rates of $411 to $714 to be well within the reasonable range and not reflecting a contingency risk), *aff'd sub nom. Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (noting that rates for attorney and support time ranging from $125 to $880 per hour "are not extraordinary for top New York law firms").

NSB's past fee awards also support the rates requested. Although the *Restivo* court found that NSB attorneys merited compensation at the rates requested, which were at the high end of the relevant range, *see Restivo*, 2015 WL 7734100 at *3, market rates have increased substantially in the intervening 8 years. *See, e.g.*, *Jones v. Treubig*, No. 16-CV-8080 (JGK), 2022

WL 1223215, at *2 (S.D.N.Y. Apr. 26, 2022) ("Courts look to 'current rates, rather than historical rates, . . . to compensate for the delay in payment,' because rates tend to 'increas[e] over time.'" (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) and *Tatum v. City of New York*, No. 06-cv-4290 (PGG)(GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010), respectively). For example, at the time NSB submitted the *Restivo* fee request, Plaintiff's counsel cited to a 2013 NLJ survey in which 16 of 25 New York firms included the top partner billing rate was at or just over $1000 per hour; the rest were below that mark. Now, equivalent top billing rates are close to double that. *See, e.g.*, Loewenson decl. ¶ 11. (top billing rate $1825); *Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder,'* Bloomberg Law (June 9, 2022), https://tinyurl.com/5ahzns3p (chronicling billing rates at multiple firms at or close to $2000 per hour). Thus the *Restivo* award supports substantially higher rates now, 8 years later, when adjusted for market inflation. Moreover, in addition to the inflation in market rates, Plaintiff's counsel have gained substantial experience since the *Restivo* award. For example, at the time of the *Restivo* request Ms. Hoffmann was 10 years out of law school and had only recently been made a partner; now she is close to double that—18 years out of law school. *See* Hoffmann decl. ¶ 12. NSB has also had considerable additional experience and success in § 1983 suits around the country in the intervening 8 years. *See* Freudenberger decl. ¶¶ 33–37.

The requested rates are within the range of what has been awarded in this district for similarly complex civil rights litigation. *See, e.g., Rosenfeld v. Lenich*, No. 18CV6720NGGPK, 2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) (using hourly rates ranging from $400 to $900 for civil rights firm Emery Celli to calculate the lodestar in a class action settlement); *Houser v. Pritzker*, No. 10-cv-3105, ECF No. 377 (S.D.N.Y. Sept. 20, 2016) (awarding hourly rates of $875 for partner; $850 for a senior counsel; $450 for an eighth-year associate); *Williams v.*

*Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *7–8 (S.D.N.Y. June 28, 2018) (recommending rate of $800 per hour for experienced partner in civil rights case), *report and recommendation adopted,* No. 17 CIV. 3847 (JGK), 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

In addition, the $500 rate sought for junior partner Ms. Green is reasonable; indeed, it is below the customary billing rate at ECBA of $550-650 for junior partners. *See* Celli decl.¶ 12; *see also Restivo*, 2015 WL 7734100 at *5 (approving $500 per hour for Ms. Hoffmann, then a junior partner, based on 2014 rates); *Demonchaux v. Unitedhealthcare Oxford*, No. 10 Civ. 4491(DAB), 2014 WL 1273772, at *7 (S.D.N.Y. March 27, 2014) (approving $500.00 per hour for senior associates); *Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344 MHD, 2014 WL 2514705, at *2 (S.D.N.Y. June 2, 2014).

The rates Plaintiff seeks for associates (from $325 to $450) are also below the corollary rates customarily charged at ECBA ($450 to $500). *See* Celli decl.¶ 12. The highest associate rate Plaintiff seeks—$450—is for Len Kamdang, Richard Sawyer, and Sona Shah, who have 16, 8, and 25 years' of experience, respectively. *See Demonchaux*, 2014 WL 1273772, at *7 (approving $500.00 per hour for senior associates); *Houser v. Pritzker*, No. 10-cv-3105, ECF No. 377 (S.D.N.Y. Sept. 20, 2016) (awarding $450 per hour for an eighth-year associate); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CIV. 8414, 2022 WL 3442148, at *4 (S.D.N.Y. Aug. 11, 2022), *report and recommendation adopted*, No. 96-CV-8414 (KMW), 2022 WL 3371226 (S.D.N.Y. Aug. 16, 2022) (finding a rate of $400 per hour for senior associates to be reasonable). In addition, rates of $325 to $400 per hour have been approved for associates with three to five years' experience, like Avinash Samarath (4 years' experience, seeking $400), Katie Haas (5 years' experience, seeking $400), Kate Fetrow (4 years' experience, seeking

$375), and Gerardo Romo (3 years' experience, seeking $350), and Rhianna Rey (3 years' experience, seeking $325). *See, e.g.*, *Nautilus Neurosciences v. Fares*, No. 13 Civ. 1078(SAS), 2014 WL 1492481, at *2–3 (S.D.N.Y. April 6, 2014) (approving hourly rate of $337.50 for an associate with three years of experience); *Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing, Inc.*, No. 11 Civ. 4308 (PGG), 2013 WL 6171660, at *2–3 (S.D.N.Y. Nov. 25, 2013) (approving hourly rates of $330–350 for a New York-based fifth- year associate); *Kim*, 2014 WL 2514705 at *2 (awarding $300 to a third-year associate). For example, in 2007, the Central District of California awarded a rate of $300 to Ms. Hoffmann, a junior associate at the time. *See* Hoffmann decl. ¶ 12.

Lastly, the $200 hour a rate for the paralegals and law clerks is reasonable. *See, e.g.*, *Charles v. Seinfeld*, No. 18-CV-1196 (AJN), 2022 WL 889162, at *5 (S.D.N.Y. Mar. 25, 2022) ("Courts in this district generally find that reasonable hourly rates for paralegal and litigation support staff range from $150 to $250.").

### C.     The relevant *Johnson* and *Blum* criteria support the rate requests.

Other factors relating to the determination of hourly rates were suggested in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and accepted by the Supreme Court as relevant to arriving at the appropriate rate. *See Hensley*, 461 U.S. at 430–31. These include (1) the experience, reputation, and ability of the attorneys; (2) the customary fee charged by counsel and actual billing practice, to the extent they support the request; and (3) previous awards to the counsel seeking fees. Courts have also noted: (4) "the complexity and difficulty of the case." *Tatum*, 2010 WL 334975, at *3 (quoting *Arbor Hill*, 522 F.3d at 184). The Second Circuit has instructed district courts to "bear in mind all of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190.

     *i.*    *Experience, reputation, and ability of the attorneys*

As of the time of the *Restivo* fee award, the Second Circuit recognized that NSB had

"particular experience litigating wrongful conviction suits and has successfully litigated dozens

of these cases nationwide," justifying not only rates at the top of the market but also out-of-

district rates. *Restivo*, 846 F.3d at 590. In the eight years since NSB submitted the record in

support of that fee request, the experience, reputation, and ability of NSB and its attorneys has

only increased.

Since the *Restivo* award, NSB has had additional trial victories all over the country. *See,*

*e.g.*, *Trulove v. D'Amico*, No. 16-cv-00050 (N.D. Cal.) (jury awarded $10 million in damages to

plaintiff who spent six years in prison after being wrongfully convicted of murder); *Gates v.*

*District of Columbia*, No. 1:11-cv-00040 (D.D.C.) (jury found that District of Columbia police

officers had fabricated evidence and hid exculpatory evidence during plaintiff's trial for rape and

murder, resulting in 28-year wrongful conviction, with the government subsequently settling

claims for $16.65 million); *Howard v. City of Durham*, No. 1:17-cv-00477 (M.D.N.C.) (jury

awarded $6 million to plaintiff after he spent decades in prison for two murders he did not

commit). *See* Freudenberger decl. ¶ 34. NSB has also had additional appellate victories in this

evolving area of the law. *See, e.g.*, *Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020);

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018); *Fogle v. Sokol*, 957 F.3d 148 (3d Cir. 2020). *See*

Freudenberger decl. ¶¶ 24. NSB has also had a number of substantial settlements in § 1983

wrongful conviction cases in the intervening years, both within New York City[2] and elsewhere

---

[2] *Fernandez v. City of New York*, No. 1:20-cv-10498 (S.D.N.Y.) ($12 million settlement in
§ 1983 wrongful suit); *Ruiz v. City of New York* (S.D.N.Y.) ($8.99 million prefiling settlement in
§ 1983 wrongful conviction suit); *Weeks v. City of New York*, NYC Comptroller Claim No.
2019P1035602 (E.D.N.Y.) ($8.3 million in § 1983 wrongful conviction suit); *Denny v. City of*

around the country.[3]

NSB's successes are due in large part to the exceptional quality of the work by the firm's leadership. Mr. Brustin, a named partner at NSB, has tried more § 1983 wrongful conviction cases as any lawyer in NYC, including *Restivo v. County of Nassau*, No. 06-cv-6720 (E.D.N.Y.) ($36 million jury verdict) and *Deskovic v. City of Peekskill, et al.,* No. 07-CV-8150 (S.D.N.Y.) ($41.65 million jury verdict) and is responsible for several of biggest verdicts nationally. *See* Brustin decl. ¶¶ 14–16. Ms. Freudenberger, a partner for 9 years, has helped achieve trial and appellate victories, as well as substantial settlements, in approximately thirty other wrongful conviction cases. She was also the lead lawyer in successful settlements in *Sanford v. City of Detroit*, No. 17-cv-13062 (E.D. Mich.) ($7.5 million settlement for plaintiff who spent 8 years in

---

*New York*, Comptroller Claim Nos. 2018P1007300 and 2018P1007309 ($9.75 million prefiling settlement in § 1983 wrongful conviction suit); *Counts v. City of New York,* NYC Comptroller Claim No. 2018P1023022 ($8.246 million prefiling settlement in § 1983 wrongful conviction suit); *Jones v. City of New York*, No. 18-cv-834 (S.D.N.Y.) ($7.5 million settlement in wrongful conviction suit); *Hatchett v. City of New York*, No. 17-cv-1324 (E.D.N.Y.) ($12.25 million settlement in § 1983 wrongful conviction suit); *Connor v. City of New York*, No. 1:15-cv-07079 (E.D.N.Y.) ($7.95 million settlement in § 1983 wrongful conviction suit); *Wilson v. City of New York*, No. 15-cv-4156 (E.D.N.Y.) ($13 million settlement in § 1983 wrongful conviction suit). *See* Freudenberger decl. ¶ 25.

[3] *Coley v. Simi Valley* (C.D. Cal.) ($21 million settlement in § 1983 wrongful conviction suit); *Tapp v. City of Idaho Falls*, No. 4:20-cv-00476 (D. Idaho) ($11.7 million settlement in § 1983 wrongful conviction suit); *Berry v. Las Vegas Metro. Police Dep't*, 19-cv-640 (D. Nev.) ($14.5 million settlement in § 1983 wrongful conviction suit); *Saunders v. City of Chicago*, 12-cv-09158 (N.D. Ill.) ($15.99 million total settlements for § 1983 wrongful conviction suit); *McIntyre v. Unified Government*, No. 18-cv-2545 (D. Kan.) ($12.5 million settlement in § 1983 wrongful conviction suit); *Wright v. City of Philadelphia*, No. 16-cv-5020 (E.D. Pa.) ($9.8 million settlement in § 1983 wrongful conviction suit); *Gonzalez v. City of Waukegan*, No. 16-2906 (N.D. Ill.) ($9.5 million settlement in § 1983 wrongful conviction suit); *Lewis v. City of New Haven*, No. 3:16-cv-1382 (D. Conn.) ($9.5 million settlement in § 1983 wrongful conviction suit); *Courtney v. City of Tulsa*, No. 14-CV-308 (N.D. Okla.) ($8 million settlement in § 1983 wrongful conviction suit); *Allen v. City of St. Louis,* No. 14-CV-01398 (E.D. Mo.) ($14 million settlement in § 1983 wrongful conviction suit); *Bryant v. Baltimore Police Department*, No. 1:19-cv-00384 (D. Md.) ($8 million settlement for plaintiff who spent 17 years wrongfully incarcerated before DNA exoneration as a result of police's suppression of exculpatory evidence). *See* Freudenberger decl. ¶ 36.

prison for quadruple murder, resulting from police misconduct during his questioning as a 14-year-old boy) and *McIntyre v. Unified Government*, No. 18-cv-2545 (D. Kan.) ($12.5 million settlement after plaintiff's wrongful conviction for double homicide based on fabricated evidence and suggestive identification procedures). *See* Freudenberger decl. ¶ 67. Ms. Hoffmann, partner for 9 years, in addition to trial successes in *Restivo* and *Trulove* is responsible for notable appellate decisions in this field, *see, e.g.*, *Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018), and is regularly consulted by other civil rights lawyers as a leading expert in § 1983 wrongful conviction law. *See* Hoffman decl.¶¶ 6–9. Lastly, Ms. Green, partner, has contributed to many notable successes including *Howard v. City of Durham*, No. 1:17-cv-00477 (M.D.N.C.) (jury awarded $6 to plaintiff after he spent decades in prison for two murders he did not commit), and has obtained the two largest wrongful conviction settlements against the City of Philadelphia. *See* Green decl. ¶ 7. Junior attorneys typically have elite academic records from the nation's leading law schools; many have federal clerkships.

As recognized by their peers, the attorneys involved in this case are at the highest level of their profession and are well deserving of the requested rates. *See* Freudenberger decl. ¶ 32. Complete biographies are provided for each attorney in their supporting declarations. *See* Exhibits 4–16.

### ii.   Customary fee charged by counsel and actual billing practice

Because NSB's practice consists entirely of representing victims of civil rights abuses on contingency, as they did here, they do not typically bill paying clients by the hour. But the requested rates are also consistent with the rates NSB attorneys have commanded on the few occasions they have been paid by the hour. For example, Ms. Hoffmann was paid $800 per hour to consult on § 1983 suits—the same rate she seeks now—four years ago, in 2018. *See, e.g, Doe v. Unum Life Ins. Co. of Am.*, No. 12CIV9327LAKAJP, 2016 WL 335867, at *4 (S.D.N.Y. Jan.

28, 2016) ("In determining reasonable hourly rates, the Court must consider the range of rates plaintiff's counsel actually charge their clients . . . [which is obviously strong evidence of what the market will bear." (internal quotation and citation omitted)), *report and recommendation adopted,* No. 12 CIV. 9327 (LAK), 2016 WL 749886 (S.D.N.Y. Feb. 23, 2016)). In 2015—7 years ago—Mr. Brustin was paid $650 per hour, Ms. Hoffmann was paid $550 per hour, and associates were paid $300–350 per hour to litigate a civil rights suit, under an agreement where NSB would have also received a percentage fee in addition contingent on success. *See* Hoffmann decl. ¶ 11.

### iii.   Previous awards to the counsel seeking fees

In 2018, another district court ordered a stipulated fee award in a § 1983 wrongful conviction suit of $4.5 million, based on requested rates of $800 per hour for Mr. Brustin, $650 per hour for Ms. Hoffmann, and $400 for senior associates. *See* Hoffmann decl. ¶ 12. As previously noted, in 2015, the *Restivo* court awarded NSB attorneys hourly rates of $700 for senior partners, $500 for junior partners, $400 for senior associates, and $250–350 for more junior associates. *Restivo,* 2015 WL 7734100, at *2, 6. In addition, 13 years ago the District Court for the Southern District of Texas, awarded NSB attorneys rates of $535 for senior partners and $275 for associates. *See* Freudenberger decl. ¶ 54. Over 15 years ago, the Central District of California awarded NSB attorneys hourly rates of up to $675 for a senior partner, $400 for junior partner, and $300 for Ms. Hoffman, then a third-year associate. *See* Hoffmann decl. ¶ 12.

### iv.   The complexity of the litigation

As described above and in Ms. Freudenberger's declaration, § 1983 wrongful conviction cases are incredibly complex, and this case was complex even for a § 1983 wrongful conviction case. *See* Freudenberger decl. ¶¶ 5–21. Higher attorney's fees are reasonable when a case is

"particularly complex" or "hardly straightforward." *See Abdell v. City of N.Y.*, No. 05-CV-8453(RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (in 2015, finding $650 per hour reasonable for lead counsel in a particularly complex civil rights action). Courts consider not only legal complexity but also "factual and historical complexity" of the controversy in assessing whether rates at the top of the range are merited. *See Medina v. Buther*, No. 15-CV-1955, 2019 WL 4370239, at *10–11 (S.D.N.Y. Sept. 12, 2019) (finding 'factual and historical complexity' of having dealt with, among many other things, handwritten records that were difficult to obtain and decipher in support of higher rate); *Benihana, Inc. v. Benihana of Tokyo*, LLC, No. 15 Civ. 7428(PAE), 2017 WL 6551198, at*4 (S.D.N.Y. Dec. 22, 2017) (finding requested rates reasonable where there was "tangible evidence of the factual and historical complexity of the controversy").

Based on all these criteria, the rates requested are eminently reasonable.

## II.     Plaintiff is entitled to his reasonable costs.

"[A]n award of costs under § 1988 normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *HomeAway.com, Inc. v. City of New York*, No. 18 CIV. 7742 (PAE), 2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) (citing *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). "Recoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees." *Id.* (citing *Arbor Hill*, 369 F.3d at 97–98). Plaintiff is seeking reimbursement for $283,800.99 in costs under § 1988.[4] *See* Brustin decl., Ex. C. This includes $60,008.71 for deposition and discovery expenses; $18,334.00 in copying costs; $1,044.83 for shipping; $13,417.48 for legal research; $8,865.37 for transcripts; $736.77 for

---

[4] Although some of these categories of expenses are compensable under § 1920, for simplicity, Plaintiff seeks them all here.

witness fees; $2,830.57 for process servers; $789.20 for docket, filing, record request, and service fees; $9,459.08 for trial costs; and $44,504.69 for travel expenses. *Id.*

It also includes $34,979.29 for investigation, *see Stinson v. City of New York*, 256 F. Supp. 3d 283, 297 (S.D.N.Y. 2017), and $88,831.00 in jury consultant fees. *See, e.g.*, *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 WL 1080780, at *14 (S.D.N.Y. Mar. 6, 2020)*;* (awarding costs for jury consulting); *BD v. DeBuono*, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) (same); Brustin decl., Exhibit C.

All of these costs, which are normally billed to fee-paying clients under the standard billing practices in this district, were reasonably incurred during this litigation. And given that Plaintiff's counsel were carrying these costs for years—in addition to substantial other costs that are not compensable, such as over $120,000 in expert fees—they endeavored to minimize costs as much as possible. *See* Brustin decl.¶ 38.

## CONCLUSION

For the reasons stated herein, Plaintiff's request for attorney's fees and costs in the amount stated should be granted.

Dated:  New York, New York
          October 7, 2022

                                      Respectfully submitted,

                                      /s/ Anna Benvenutti Hoffmann
                                      Anna Benvenutti Hoffmann
                                      Nick Brustin
                                      Emma Freudenberger
                                      Amelia Green
                                      Gerardo Romo
                                      Neufeld Scheck & Brustin, LLP
                                      99 Hudson Street, Eighth Floor
                                      New York, NY 10013
                                      (212) 965-9081

                                      *Attorneys for Plaintiff Richard Rosario*

25