```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RICHARD ROSARIO,                                            :
                             Plaintiff,                     :
                                                            :         18 Civ. 4023 (LGS)
               -against-                                    :
                                                            :         **OPINION AND ORDER**
CITY OF NEW YORK, et al.,                                   :
                             Defendants.                    :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Before the Court are Plaintiff's objections (the "Objections") to the report and recommendation (the "Report") of Magistrate Judge Stewart D. Aaron recommending granting in part and denying in part Plaintiff's motion for attorneys' fees. For the reasons stated below, the Objections are sustained in part and overruled in part.

**I.     BACKGROUND**

Familiarity with the factual background and procedural history, summarized in the Report, is assumed. Plaintiff Richard Rosario brought this action under 42 U.S.C. § 1983 against the City of New York and several New York City Police Department ("NYPD") officers, seeking damages for his wrongful conviction and incarceration. On August 11, 2022, after more than four years of litigation in this case -- which followed several years of state court litigation and advocacy -- a jury returned a verdict for Plaintiff. The jury found that Defendant and former NYPD Detective Gary Whitaker had denied Plaintiff his constitutional rights to due process and a fair trial by fabricating evidence, withholding material favorable evidence and/or using a suggestive identification procedure, and that both Defendant Whitaker and the City had maliciously prosecuted Plaintiff. The jury awarded Plaintiff $5 million in damages.

As the prevailing party, Plaintiff moved for an award of attorneys' fees pursuant to 42 U.S.C. § 1988.  Plaintiff sought $3,833,900 in attorneys' fees for the merits phase, $6,570 in fees for travel, $115,240 in fees for preparing the fees motion -- $3,955,710 in total fees -- and $283,800.99 in expenses.  Defendants opposed Plaintiff's motion.  The motion was referred to Judge Aaron, who issued the Report on January 27, 2023.  The Report recommends $2,529,945.25 in fees and $213,011.75 in expenses.  The Report recommends calculating the attorneys' fee lodestar based on lower hourly billing rates than Plaintiff had requested, reducing the hours requested for the merits phase by twenty percent across the board and reducing billable travel time, but recommends calculating fees for work on the fee petition based on the full amount of hours claimed.  The Report also recommends reducing the requested reimbursement of costs and expenses to remove (1) in-house copying costs, (2) fifty percent of jury consulting expenses and (3) certain insufficiently supported travel expenses.

On February 10, 2023, Plaintiff timely filed the Objections, which dispute the Report's recommended reduction in hourly rates and billable merits hours.  The Objections do not dispute the Report's recommendations to reduce the amount of billable travel time and reduce reimbursement for costs and expenses.  Defendants did not file objections.  On March 10, 2023, Defendant filed a late response to the Objections and requested that the response be accepted nunc pro tunc.  That request is granted.  Both parties' arguments are considered below.

## II.     STANDARD OF REVIEW

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections

are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). For those portions to which no objection is made, a district court need only satisfy itself that "no clear error [is apparent] on the face of the record." *See, e.g.*, *Candelaria v. Saul*, No. 18 Civ. 11261, 2020 WL 996441, at *1 (S.D.N.Y. Mar. 2, 2020). A district court must conduct a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).

### III.    ANALYSIS

Courts calculate fee awards by "determining a reasonable hourly rate by considering all pertinent factors . . . and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). After calculating that fee award, a district court may adjust it only "in extraordinary circumstances" when it does not adequately account for a permissible factor. *Id.*

#### A.    Reasonable Hourly Rate

The rates Plaintiff requests are reasonable under all the circumstances of this case. The Court declines to adopt the reductions recommended by the Report. "[T]he reasonable hourly rate is the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)). Courts must "bear in mind *all* of the case-specific variables" identified by the Second Circuit and other courts, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of

3

> employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 228, 230. Taking those variables into account, after four years of litigation, multiple periods of trial preparation caused by multiple adjournments, and a ten-day jury trial, Plaintiff's requested rates are reasonable.

The requested rates, which are at the high end of the market for civil rights litigation, are reasonable because this case was particularly challenging to litigate. Defendants made it more so with particularly tenacious opposition, and Plaintiff retained particularly experienced counsel to navigate those obstacles. Plaintiff's counsel in effect had to relitigate a decades-old murder trial while fitting Plaintiff's claims into the complex and evolving legal doctrines governing this area of civil rights litigation. This meant refuting testimony of two purported eyewitnesses and the police officer Defendants with both expert testimony and Plaintiff's own fact witnesses. Many witnesses were far from New York and/or unenthusiastic about revisiting this incident on the witness stand. This backdrop, combined with Defendants' vigorous opposition to Plaintiff's tactics, made discovery and trial especially complex. After two rounds of dispositive motions filed by Defendants, the parties repeatedly clashed over myriad evidentiary issues in the lead-up to and throughout trial. Counsel also had the unique challenge of supporting Plaintiff himself through the stress of the trial, given his mental health struggles which complicated both the legal issues and his lawyers' ability to counsel him.

In sum, this case was of comparable complexity to *Restivo v. Nassau County*, No. 06 Civ. 6720, 2015 WL 7734100 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017). In *Restivo*, the court awarded Plaintiff's firm nearly the same rates

requested here, more than seven years ago. *Id.* at *3. While the *Restivo* case went on longer, that is accounted for fully in the "reasonable hours" inquiry below. Defendants' arguments that this case required less of the attorneys on an hourly basis than *Restivo* did are unconvincing. Since 2015, market rates for top New York firms have continued to climb. Plaintiff's firm and the individual lawyers involved have also gained specialized experience. A modest increase from the top rates awarded in *Restivo* is warranted. *Id.* ($700 for senior partners, $600 for mid-level partners and $500 for junior partners).

In addition to those higher partner rates, the rates requested for associates and paralegals have ample precedent in cases from this District and Circuit, many of which are cited by Plaintiff. *See, e.g.*, *Rosenfeld v. Lenich*, No. 18 Civ. 6720, 2022 WL 2093028, at *4 (E.D.N.Y. Jan. 19, 2022). High-end rates are warranted for those professionals for similar reasons, including for the very experienced associates who bill at the highest associate rates. Both Defendants and the Report cite numerous cases awarding lower rates, but as the Report notes, many of those are several years old, and many involve more "garden variety" civil rights cases. *See, e.g.*, *Lilly*, 934 F.3d at 231. In order to "attract competent counsel" to enforce civil rights laws even in difficult cases, *Blum v. Stenson*, 465 U.S. 886, 897 (1984), rates must reflect both evolving market realities and the challenges of particular cases.

The rates Plaintiff requests are slightly less or comparable to those charged by -- and awarded to -- similarly top-of-the-market civil rights firm Emery Celli Brinckerhoff Abady Ward & Maazel LLP. *See Rosenfeld*, 2022 WL 2093028, at *4. The requested rates are also approximately half of the rates charged by lawyers in Manhattan at large firms that typically represent corporate entities in complex commercial disputes. As Defendants and the Report note, firms like Cravath, Swaine & Moore LLP and Morrison & Foerster may have different cost

structures and operate in a different sub-market of the New York legal market. Still, those differences are fully accounted for by the large gap between Plaintiff's requested rates and those larger firms' analogous rates. The skills required to win a complex civil rights case like this one are comparable to, but different from, those required in a complex commercial case.

Defendants opposed Plaintiff's requested hourly rates based on Plaintiff's degree of success at trial, an argument that the Report adopted at least in part. As discussed below, no reduction in Plaintiff's requested fees is warranted based on the level of success achieved. It is therefore unnecessary to address Plaintiff's legal argument that success (or lack thereof) is never appropriately considered in determining the reasonable hourly rate, as opposed to the reasonableness of the hours expended. There is no objection to the Report's consideration of any other case-specific variables, and the Report did not clearly err in declining to alter the requested rates based on any other consideration. Having considered the attorneys' experience and all of the other relevant factors, Plaintiff's requested rates are reasonable. *See Zhang v. Zhang*, No. 16 Civ. 4013, 2021 WL 1154084, at *2 (S.D.N.Y. Mar. 26, 2021) ("A court does not need to make specific findings as to each factor as long as all are considered.").

### B. Hours Reasonably Expended

The Report recommends reducing the number of hours used to calculate the presumptively reasonable lodestar fee by twenty percent across the board. Defendants argued for reducing Plaintiff's counsel's hours for many reasons, including the degree of success achieved and various purported problems with the billing records, including vague entries, block billing, duplication of effort and non-compensable activities. The Report relied on the degree of success and some of Defendants' arguments about counsel's billing records. The Report specifically rejected Defendants' arguments that time spent on precursor state proceedings is not

compensable, all of Defendants' block billing-based arguments and most of Defendants' vagueness and duplication arguments. As Plaintiff objected to the recommended reductions of hours, and Defendants did not object to the Report's rejection of their unsuccessful arguments, only the former are reviewed de novo.

### Degree of Success

An across-the-board reduction in the hours used to calculate attorneys' fees based on "the degree of success" obtained by Plaintiff's counsel is unwarranted on this record. The degree of success achieved is "the most critical factor" in reviewing requests for attorneys' fees. *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (internal quotation marks omitted). The Report's recommendation to reduce hours to reflect "limited" success considers that several of Plaintiff's claims did not survive to trial, several Defendants were dismissed before trial, the jury found only one of the three individual Defendants who remained in the case through trial was liable and the jury awarded Plaintiff much less than the nearly $50 million his counsel urged the jury to award during summation. In the context of this lawsuit, however, a $5 million jury verdict and a finding that an NYPD officer denied Plaintiff his constitutional rights, resulting in his wrongful conviction and incarceration for twenty years, is not "limited" success.

The core of all of Plaintiff's claims is that the NYPD violated his rights by fabricating incriminating evidence and withholding exculpatory evidence, including through unconstitutional identification procedures. Redressing that wrong at least arguably required bringing alternative legal theories against several of the officers involved, given the complexity of the law in this area and the likelihood that individual officers would attempt to shift responsibility to others. Plaintiff would not have been entitled to a multiple of the damages he received if he had prevailed on more theories or against more Defendants. The jury found that

Whitaker alone caused Plaintiff's wrongful conviction and incarceration.  The damages award reflects the jury's view of what would remedy that deprivation.  Because "plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for work done on unsuccessful claims as well as successful ones."  *Raja*, 43 F.4th at 88 (cleaned up).  "[C]ounsel's billed time is devoted to the litigation as a whole," so "[t]he court need not determine how much time counsel devoted to each such overlapping claim but should instead look to the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* (cleaned up).  None of Plaintiff's unsuccessful claims, or claims against Defendants who were not held liable, "bore no relation to the grant of relief."  *Id.* (internal quotation marks omitted).

Defendants argue that fees should be reduced because the significant $5 million award is only "limited" success when compared with the nearly $50 million award that Plaintiff's counsel urged during summation.  The Supreme Court has said that where, as here, "recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (cleaned up); *accord Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005).  However, the Second Circuit initially suggested that *Farrar* might apply only when a plaintiff recovers nominal damages.  *See id.* at 254-56.  The Second Circuit has since held that courts have discretion to reduce fees even where a plaintiff recovers a non-nominal damage award, but it has never held that such a reduction is mandatory, particularly where the damages award is substantial, as it is here.  *See, e.g.*, *id.* (collecting cases); *cf. Barbour v. City of White Plains*, 700 F.3d 631, 634-35 (2d Cir. 2012) (rejecting argument that fees should have been reduced because "[t]he combined $30,000 recovery by plaintiffs is not 'nominal' so as

8

to preclude any fee award" (citing *Farrar*, 506 U.S. at 115)); *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007) ("Although the Second Circuit has acknowledged that 'the lodestar figure may be reduced in situations in which plaintiffs receive only nominal damage awards,' such a reduction is inappropriate where a plaintiff receives 'an amount that defies the "nominal" label.'" (quoting *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992)); *Monette v. County of Nassau*, No. 11 Civ. 539, 2016 WL 4145798, at *10 (E.D.N.Y. Aug. 4, 2016) (declining to reduce fees where "plaintiff sought significantly more from the jury" than was awarded, and collecting similar cases in which juries awarded roughly 10% of requested damages). To the contrary, even if not fully successful, "a civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Raja*, 43 F.4th at 87 (quoting *Fox v. Vice*, 563 U.S. 826, 834 (2011)) (cleaned up). "An attorney should therefore 'recover a fully compensatory fee' where the 'plaintiff has obtained excellent results.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

No reduction in attorneys' fees based on "limited" success is appropriate under all the circumstances of this case, even though Plaintiff received less than his lawyer sought in summation. Reasonable people may disagree about whether $5 million is sufficient compensation for twenty years of wrongful incarceration, but it is a lot of money by any metric. Placing a dollar figure on the intangible value of time and suffering is inherently uncertain and subjective. The award here reflects the jury's view that the deprivation of Plaintiff's rights was very serious. It would create seriously perverse incentives if a lawyer's zealous advocacy that a jury should place a high value on their clients' life and liberty meant that the lawyer would get

paid less if the jury awarded a lower, but still substantial, amount. Plaintiff's fee award should not incorporate any across-the-board reduction based on the degree of success.

Defendants' only argument in response to Plaintiff's Objections is that the fee award recommended in the Report is high in proportion to the damages awarded. That is largely irrelevant, since "reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of monetary damages." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *accord Raja*, 43 F.4th at 87 ("We have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." (quoting *Kassim*, 415 F.3d at 252) (cleaned up)). To the extent the amount of the damages award is relevant to the fee award, it is fully accounted for in the analysis above. Plaintiff's Objections therefore are sustained on this issue, over Defendants' opposition.

### Vague and Duplicative Billing Entries

Some of Plaintiff's billing entries are vague and suggest duplication of effort. The hours used to calculate the presumptively reasonable fee are adjusted accordingly. The partners' billing records contain very few objectionable entries -- generally no more than an hour or two out of hundreds. Some associates were more lax in their diary entries, but impermissibly vague entries are still a small proportion of their totals. In the paralegal billing records, vague entries are more common but still a relatively small percentage of the total hours. For example, more than 100 paralegal hours were billed to "organizing documents," without elaboration. Contrary to Plaintiff's argument, however, there appear to be quite a few "meetings involving more than four attorneys" -- the cutoff the Report used for potential duplication of effort.

In total, the Report's twenty-percent across-the-board reduction is too steep, particularly since much of it presumably was based on "the most critical factor," the "degree of success,"

discussed above. *Raja*, 43 F.4th at 88.  The Court finds no clear error in the Report's rejection of Defendants' other arguments about deficiencies in Plaintiff's billing records.  After reviewing de novo those arguments that the Report found persuasive for reducing hours, the Court agrees that across-the-board reductions will "do rough justice." *Fox*, 563 U.S. at 838.  A 2.5% reduction in the partner hours, 5% reduction in associate hours and 10% reduction in paralegal and law clerk hours approximate the proportions of inadequately supported entries in the records submitted.

After applying those reductions and multiplying the resulting hours by the requested hourly rates, the total fees for the merits phase are as follows:

| Name of Counsel | Hourly Rate | Hours | Adjusted Hours | Total Fees for Merits Phase |
|---|---|---|---|---|
| Nick Brustin | 900 | 1010 | 984.8 | $ 886,275.00 |
| Anna Benvenutti Hoffman | 800 | 739.9 | 721.4 | $ 577,122.00 |
| Emma Freudenberger | 800 | 759.3 | 740.3 | $ 592,254.00 |
| Amelia Green | 500 | 182.6 | 178.0 | $ 89,017.50 |
| Len Kamdang | 450 | 271 | 257.5 | $ 115,852.50 |
| Richard Sawyer | 450 | 1250.3 | 1187.8 | $ 534,503.25 |
| Bettina Roberts | 425 | 116.7 | 110.9 | $ 47,117.63 |
| Christina Matthias | 425 | 39.2 | 37.2 | $ 15,827.00 |
| Katie McCarthy | 425 | 18.4 | 17.5 | $ 7,429.00 |
| Avinash Samarth | 400 | 143.4 | 136.2 | $ 54,492.00 |
| Katie Haas | 400 | 663.4 | 630.2 | $ 252,092.00 |
| Kate Fetrow | 375 | 24.9 | 23.7 | $ 8,870.63 |
| Gerardo Romo | 350 | 381.3 | 362.2 | $ 126,782.25 |
| Rhianna Rey | 325 | 24.2 | 23.0 | $ 7,471.75 |
| Paralegals/Law Clerks | 200 | 2011 | 1809.9 | $ 361,980.00 |
| Total | | 7635.6 | 7220.6 | $ 3,677,086.50 |

11

And the total fees for the preparation of the motion for attorneys' fees are as follows:

| Name of Counsel | Hourly Rate | Hours | Total Fees for Merits Phase |
|---|---|---|---|
| Nick Brustin | 900 | 12.3 | $ 11,070.00 |
| Anna Benvenutti Hoffman | 800 | 45.7 | $ 36,560.00 |
| Emma Freudenberger | 800 | 5.2 | $ 4,160.00 |
| Sona Shah | 450 | 55.2 | $ 24,840.00 |
| Gerardo Romo | 350 | 54.6 | $ 19,110.00 |
| Paralegals/ Law Clerks | 200 | 97.5 | $ 19,500.00 |
| Total | | 270.5 | $ 115,240.00 |

The Court has reviewed the remaining portions of the Report as to which there was no objection and found no error, clear or otherwise.

IV.     **CONCLUSION**

For the foregoing reasons, the Objections are SUSTAINED in part and OVERRULED in part. The Report is ADOPTED as modified to award Plaintiff $3,677,086.50 in attorneys' fees on the merits and $115,240 in fees for preparing the fee petition. When added to the Report's recommended $3,206.25 in travel fees, Plaintiff is awarded a total of $3,795,532.75 in fees, plus $213,011.75 in expenses.

The Clerk of Court is respectfully directed close the motion at Dkt. No. 508.

Dated: March 15, 2023
        New York, New York

                                                    LORNA G. SCHOFIELD
                                                    UNITED STATES DISTRICT JUDGE